CBKZENEM                        Motion

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   PETER ENEA, et al.,

4                  Plaintiffs,

5           v.                           12 CV 4656 (GBD)

6   BLOOMBERG, LP,

7                  Defendant.

8   ------------------------------x

9                                        November 20, 2012
                                         10:45 a.m.
10
    Before:
11
                       HON. GEORGE B. DANIELS,
12
                                         District Judge
13
                            APPEARANCES
14
    GETMAN & SWEENEY, PLLC
15       Attorneys for Plaintiffs
    BY:  DANIEL GETMAN
16       ARTEMIO GUERRA

17  WILLKIE FARR & GALLAGHER
         Attorneys for Defendant
18  BY:  THOMAS GOLDEN

19  JONES DAY
         Attorneys for Defendant
20  BY:  MATTHEW LAMPE

21

22

23

24

25

CBKZENEM                           Motion

```
 1              (Case called)
 2              MR. GETMAN:  Dan Getman and Artemio Guerra for
 3     plaintiffs, your Honor.
 4              THE COURT:  Good morning.
 5              MR. GETMAN:  Good morning.
 6              MR. GOLDEN:  Good morning, your Honor, Thomas Golden
 7     from Willkie Farr for defendants.
 8              THE COURT:  Good morning.
 9              MR. LAMPE:  Good morning, your Honor, Matt Lampe with
10     Jones Day for defendants.
11              THE COURT:  Good morning.
12              I have reviewed the motion for class certification,
13     conditional collective action, approval.  Let me hear from the
14     plaintiffs first, and then I'll hear from you.
15              MR. GETMAN:  Thank you, your Honor.
16              All the issues that were raised by the defendant to
17     certification involved, essentially, the cohesiveness of the
18     class; commonality, typicality, predominance, and that's with
19     respect to the Rule 23 class.
20              And with respect to FLSA class, the only question is
21     whether they're similarly situated.  So, essentially, it's all
22     the same issue.
23              And here, you know, the basic facts of this are, this
24     is an extraordinarily cohesive class.  We have one single
25     location.  All the plaintiffs worked in single pit, a single
```

CBKZENEM                    Motion

1   call center in a single room for a single defendant in a single

2   location.  They had the same job title.  They're G-tech reps.

3   They sit and answer calls from Bloomberg customers.  They

4   trouble shoot problems with the Bloomberg terminal, which is

5   the fundamental product of Bloomberg that they worked on.  All

6   the same title, all the same work rules.  They all worked five

7   eight hour shifts, and they had the same management policies.

8   They had the same pay.  They were all paid by salary.  They did

9   receive comp time when they worked weekends.

10          THE COURT:  What do you mean by "same pay"?

11          MR. GETMAN:  Not the exact same pay rate, but they

12   were all paid by a salary at, you know, slightly variable

13   amounts between --

14          THE COURT:  That's true of you and me, so that doesn't

15   make us similarly situated.  I'm not sure what representation

16   you're making with regard to payment of salary that is some

17   commonality.

18          MR. GETMAN:  Well, they all got paid a salary, but no

19   time and a half for any of the hours over 40 that they worked.

20   So they didn't get overtime.  They did get a salary.

21          THE COURT:  You're not claiming that there is any

22   consistency with regard to the salary level.  I'm not even sure

23   whether you're claiming that they're paid an annual salary or

24   they're paid an hourly wage.

25          MR. GETMAN:  No, they're paid an annual salary.

1           THE COURT:  Okay.

2           MR. GETMAN:  There are other ways, obviously, that

3     people can be paid.  They can be paid hourly, they can be paid

4     a day rate.  They can be paid some combination of those rates.

5     They can be paid overtime.  They can be paid straight time for

6     overtime rather than time and a half.  They could be paid

7     commissions.  They could be all of those things.

8           THE COURT:  Well, give me an example of what you say

9     the -- you have three, four, or maybe four named plaintiffs?

10          MR. GETMAN:  Yes.

11          THE COURT:  What's the commonality with regard to

12    their salaries?

13          MR. GETMAN:  The commonality is that they got I

14    think -- I believe it's between 50 and $70,000, but they were

15    not paid any time and a half for any of the overtime hours that

16    they worked.

17          THE COURT:  Yeah, but that in itself is not the

18    commonality.  That's true of any claim that you would bring.

19    That's the nature of the claim, that they didn't get overtime.

20    That's not the commonality.  The commonality is what is it

21    about their jobs that is the same.  To say that they -- say

22    they all have the same claim for not being paid overtime is not

23    the commonality.  The commonality -- particularly with regard

24    to salary, the commonality would be that they were paid the

25    same wage for doing the same work, or they, you know, were -- I

1  mean, I'm not even sure what other commonality you would want

2  me to look at.

3         MR. GETMAN:  Your Honor is correct, that it's not the

4  fact that they, that nobody got paid overtime that establishes

5  the commonality.

6         But it is true that wage and hour cases are really

7  simple in this respect, and particularly when everybody is

8  treated the same.  It is just that they got an annual salary

9  divided up by week, and that they did not -- and that none of

10  the class members got overtime for time and a half, and --

11         THE COURT:  Yeah, but you just probably just described

12  90 percent of the people working, so that's --

13         MR. GETMAN:  Which is --

14         THE COURT:  I mean what -- for example -- and I

15  understand that other elements around salary, but what is it

16  that you claim -- it's unclear to me what, on what basis you

17  claim each individual it was determined they would receive the

18  individual salary that they received, with the commonality is

19  about that.

20         MR. GETMAN:  Judge, we haven't had discovery yet with

21  respect to how Bloomberg set its pay rates or what variability

22  there is in terms of starting pay or ending pay.

23         THE COURT:  Well, that's their argument.

24         MR. GETMAN:  Yeah, they've not --

25         THE COURT:  Their argument is that's what you should

1    have before I certify the class.

2              MR. GETMAN:  No, they did not raise pay as an issue

3    in --

4              THE COURT:  Not pay itself, but they said -- their

5    initial position was always that, look, you don't have enough

6    information to know when you got a class.  That's why we should

7    do some discovery.  That's their argument.

8              MR. GETMAN:  But, your Honor, there's nothing about

9    any of the differences in pay that would defeat the

10   commonality.  There is no -- there is no situation here where

11   some were paid a commission and some were paid a salary; that

12   some were paid some overtime and others were not.

13             THE COURT:  About --

14             MR. GETMAN:  All these people received just one pay

15   structure.  They all worked --

16             THE COURT:  What's the pay structure?

17             MR. GETMAN:  The commonality here is with respect to

18   the overtime hours that they did, all of them --

19             THE COURT:  I'm sorry.

20             MR. GETMAN:  The overtime hours that they worked, they

21   were scheduled for --

22             THE COURT:  But that's not -- we're not talking about

23   salary.  I was just concentrating on salary.

24             MR. GETMAN:  Right.

25             THE COURT:  That doesn't -- that's not a salary

```
 1    element, whether they worked overtime.  I'm trying to figure

 2    out -- you say the commonality is is they worked for a

 3    single -- they worked for a single company, single call center,

 4    they all had the same job title, and you say there was some

 5    commonality with regard to the annual salary.  I don't

 6    understand -- I mean, what's the commonality between a person

 7    who makes $50,000 annual salary and the person who makes

 8    $70,000 annual salary?

 9              MR. GETMAN:  With respect to the claims at issue in

10    the case, it doesn't matter -- several features matter for FLSA

11    claims.

12              THE COURT:  I understand that, but I'm just

13    concentrating right now --

14              MR. GETMAN:  On the salary.

15              THE COURT:  -- on the salary, unless you want --

16              MR. GETMAN:  I understand.

17              THE COURT:  -- to withdraw that.

18              MR. GETMAN:  No, I can identify three things.  Maybe

19    this will be a little clearer.

20              With respect to the claims and defenses, the only

21    things that would matter are if any of the people made a salary

22    of over $100,000, then they would be considered a highly

23    compensated employee who would have resort to a different

24    exemption.

25              THE COURT:  Right, that's --
```

CBKZENEM                    Motion

 1          MR. GETMAN:  Nobody -- that does not apply here.  So

 2     everybody's salary is less than $100,000.  So it's common at

 3     the level that it matters.

 4          Number two is that it's a weekly salary paid the same

 5     amount to each person each time.  Even those amounts -- even

 6     though those amounts themselves may vary, the variability is

 7     not about anything that matters with respect to either a claim

 8     or a defense.  So any variation -- there are thousands of FLSA

 9     cases that are brought for hourly workers where the employer

10     pays someone, I pay you 7.25 an hour as an employer, I pay you

11     $10 an hour, I pay you $9 an hour based on your experience or

12     your history.  That hourly rate does not matter with respect to

13     the Fair Labor Standards Act.

14          And the same is true here when the pay is calculated

15     on a yearly basis  or a weekly basis.  So the differences in

16     the pay just don't matter to either the claims or the

17     defendants.

18          THE COURT:  Right, but not what we're discussing.

19     We're discussing -- you said there's commonality.  One of the

20     issues of commonality is their annual salary.

21          MR. GETMAN:  Yes.

22          THE COURT:  So I'm not asking you about what doesn't

23     matter.  I'm asking you about what why should I look at their

24     salary and what about their salaries that makes me conclude

25     that they're similarly situated.  If I walk in the door and

CBKZENEM                       Motion

1    somebody says I want to pay you $50,000 to do the job, and the

2    next person walks in the door and says -- and they say I want

3    to pay you $70,000 to do the job, what is the element of

4    commonality or similarly situated with regard to annual salary

5    that you're trying to emphasize?

6           MR. GETMAN:  Maybe I got off on the wrong foot in

7    terms of saying commonality about the salary.  It's commonality

8    about the pay.  And the thing that's common about it is that

9    all were paid a salary without time and one-half overtime.

10   There could be variability in each of those -- in each of those

11   elements.  And in many of the cases cited by the defendant in

12   fact that's what occurred.  Some people in the class, in the

13   proposed class did get overtime, some people were paid hourly,

14   some people were paid salary, and the court said I can't

15   certify this because I don't have a cohesive situation.

16          In our situation everybody was paid the same way.

17   It's just simply that it was a salary, that the salary -- that

18   there's no claim that the salary was over $100,000.  There is

19   no evidence that anybody in the class could resort to -- that

20   the defendants could resort to the highly compensated employee

21   exception to any of those plaintiffs.

22          And there is one other aspect, which is minor, but it

23   does go to the same question your Honor is asking.  And that is

24   that they received comp time for weekend work and comp time,

25   meaning that you receive the ability to take other hours off in

1    another pay week rather than receive actual overtime pay in the

2    week in which you worked more than 40 hours.  And comp time is

3    a lawful policy for governmental employees, but it is not

4    lawful in any respect with respect to private employers.  So

5    there is a -- that's a minor aspect of the claims here, but it

6    is another element of the common practices with respect to the

7    plaintiff.

8              THE COURT:  Well, I'm more -- quite frankly, I'm

9    trying to individually assess your class certification

10   application.  Technically, you have class certification

11   applications.  You want FLSA opt in class, then you say that

12   Rule 23 you have independently a basis to conclude that there

13   is a class under Rule 23.

14             With regard to my Rule 23 analysis, it seems to me

15   that that's the one that requires a more specific factual

16   showing at some stage of the proceeding, rather than the opt in

17   claim.  You're telling you 125 people who you claim should have

18   gotten overtime and they didn't get overtime and you want to

19   bring a FLSA claim, you want to conditionally say that, okay,

20   these 125 people should be aware of this litigation, because

21   they have to take an affirmative step to opt in timely in order

22   to prosecute that case.  That's a little bit more compelling at

23   day one to say that, okay, for that purpose maybe it makes

24   sense to notify these people that there is a claim, see whether

25   you get ten, 25, 75 people who say they want to opt in, so then

1   we can get some sense of who really has an interest in

2   participating in this litigation.

3          But it's a different analysis, although sometimes it

4   turns out to be the same analysis, it's a different analysis,

5   and it's a more, much more detailed analysis on the factors

6   under Rule 23.  For me at this stage of the proceeding to say

7   that I know that you have a class of people that you have a

8   representative plaintiff who is, you know, adequate to

9   represent all of these plaintiffs of this class, and that at

10  this point it's real important for you to establish that you do

11  have that class rather than to have some more specific

12  information that is being gathered in discovery before I

13  prematurely certify that as a Rule 23 class, when I don't know

14  anything about who these people are, what exactly is the nature

15  of their hours worked, the differences in their claims, you

16  know, the damages, how those damages have to be assessed.  You

17  know, there's some common defenses.  I mean, they basically say

18  all those people, just exempt employees.  So in that sense

19  there's some commonality right there in terms of what the real

20  issue is with regard to all of these defendants.

21         But, you know, it seems to me that in many cases it's

22  appropriate to go ahead at the time the FLSA opt in notice is

23  sent out to tell them they also have an opt out notice.  I

24  always thought that was a little awkward to tell people sit

25  around and do nothing and you'll get some money, but to get

1    some money you have to tell me you want to do something at the

2    same time.  But that works.  It happens.

3              MR. GETMAN:  Exactly.

4              THE COURT:  And it works.  But I mean you got 125

5    people at the most, so you got no more than -- I mean you'll be

6    lucky if you have -- my experience would be it's unlikely

7    you're going to get 100 people to opt in.

8              MR. GETMAN:  Right.

9              THE COURT:  And, you know, you probably are going to

10   get a certain percentage of people to opt in.  And then the

11   real question then is those people who opt in, they preserve

12   those claims and they could participate to what extent they

13   want to participate in this litigation.

14             In terms of the Rule 23, you know, I am always

15   hesitant simply on the lawyers walking in the door saying,

16   Judge, we haven't done anything, we haven't come up with

17   anything other than what we know our five plaintiffs have, and

18   we want you to certify this as a class action on day one.  It

19   is the exception rather than the rule for me to do that.

20             MR. GETMAN:  But, your Honor, if I may, you certainly

21   can do it that way, was to certify FLSA class and then see what

22   is drawn out of that and the commonality of the store is for

23   those who opt in, to determine class action at a later time.

24   So it's certainly possible to hold the class motion in abeyance

25   until there has been discovery, and after people's FLSA rights

1    have been reserved in the sense of a notice going out and they

2    opted in.

3            But -- and I only do wage and hour cases, so I see all

4    sorts of variability.  And in situations where that's

5    appropriate, that is exactly what we do.  Because I don't want

6    to present a class motion that I'm not going to be able to

7    succeed on, that I'm not going to be able to manage, that I'm

8    going to have conflicts, and I'm creating and buying trouble

9    for myself down the road.  It doesn't do my clients any good,

10   it doesn't do me any good, doesn't do anybody, and the court

11   any good, none of it.

12           But I have never seen a more cohesive class involved

13   than a situation where there simply is no variation that has

14   been mentioned by the defendants in their papers that makes one

15   little bit of difference with respect to either the claims or

16   the defenses in this case.  We could hold the class question

17   abeyance till later, but there is no -- but the fundamental

18   attributes of the job they did, of the way they were paid, and

19   of how the hours worked, was the same for everybody.

20           Here everybody was scheduled for 40 hours, and then

21   they had duties that they had to do outside the 40 hours.  They

22   had to take calls, continue with calls after their shift if

23   they were still on the line.  They had to continue with calls

24   during lunch hours if they were still on a phone call.  They

25   had to come in early to boot up and log into the system to be

1    there before the start of the shift.  They had to take

2    certifications and exams and answer questions and do work,

3    e-mails outside of the hours that they were scheduled for.  So

4    we know they got paid a salary.  They got paid a salary for

5    those 40 hours, and then they had all of the these kinds of

6    work that everybody had to do as a G-tech rep.

7            The defendant claims everybody's exempt under the

8    administrative exemption.  The U.S. Department of Labor issued

9    a very clear opinion letter in 2006 that said that people who

10   that, IT people who sit in a call center and trouble shoot

11   computer problems for customers are not administratively exempt

12   and are not computer exempt.  It is the Department of Labor's

13   official position that determines the scope of this exemption,

14   because Congress conferred on the Department of Labor the

15   authority to define the scope of the exemption in the statute.

16   So it's not just a question of them opining about the

17   exemption.  The Department of Labor actually creates the scope

18   of the exemption in this case.  So the opinion letter is not

19   merely an advisory opinion, it is the law with respect to these

20   people.

21           THE COURT:  Well, but it's dependent on what, in fact,

22   are the job responsibilities of the individual plaintiff.

23           MR. GETMAN:  It's true, your Honor, if there was

24   variability from that.  They've not claimed anything is

25   variable with respect to that, that -- the positions that were

1   expressed in that opinion letter, and this position, there are

2   no material differences between them.

3           In this case these employees as a class -- let me also

4   just also go back, because one other aspect of this is, when we

5   first came in here, the defendant asked for discovery with

6   respect to the class before, and your Honor said I don't see --

7   you have access to all of the papers, all of the electronically

8   stored information, all the pay practices, you haven't showed

9   me what the plaintiffs could possibly say that would bear on

10  this question, but if you need some discovery from the

11  plaintiffs, identify it in your papers and tell us what -- me

12  what it is, and if it's premature to rule on class, then I

13  won't do that.

14          The defendant in their papers did not identify a

15  single issue that depends on discovery from the plaintiffs in

16  this case.  They have everything.  They're the employer.  It's

17  a highly sophisticated employer that has all its e-mails, it

18  has all its data, it has its pay practices.  Nowhere did they

19  say that there's some element that they needed that would come

20  from the plaintiffs or other members of the plaintiff class

21  that would make a difference here.

22          Based on what the defendants asserted in their papers,

23  there is no reason to deny the class based on what the

24  plaintiffs say and the defendants say.  And there's a

25  substantial overlap.  They say they sit in the single call

CBKZENEM                    Motion

center and -- I mean, we don't even have differences with

respect to fact here that would play into this.  There's no

dispute.

          I will point out that our people say, my primary job,

and that of a G-tech rep is to sit in a call center and trouble

shoot problems for Bloomberg customers.  That's our primary

job.

          The defendant did not identify any other primary job,

and certainly supplied no evidence that there was any other job

that was considered primary.

          And, lastly, just one final point on this.  Bloomberg

talks about having classified these people as exempt, but they

supplied no evidence that they actually undertook any review,

did a classification process, determined that G-tech reps

qualified as some kind of exemption.  They simply didn't pay

overtime.  That's what happened here.  And there is no evidence

in the record that they did any kind of classification of

audits, no review by counsel, no review by an HR department, no

nothing.  They supplied nothing of the sort on this record.  So

if evidence about some classification and qualification for the

exemption existed, they did not supply it on this motion and,

therefore, I think, based on the evidence that is here before

the Court today, there is more than enough to find that the

hours practices demonstrate that everybody worked more than 40

hours, that no exemption applies based on the Department of

CBKZENEM                    Motion

1    Labor opinion and the other opinions for -- court decisions for

2    call center employees.  And taking all of those together, there

3    is no reason to not to certify a class on this particular

4    record.  It's always within the Court's power, should

5    certification turn out later to have been inadvisable, to

6    decertify once discovery is taken.  And, in fact, if that would

7    be something that I would not oppose in a situation where it

8    was actually validly warranted.  It creates manageability

9    problems for me and -- if that were the case.  We don't have

10   that here.  And if we later turn out to have those kind of

11   manageability concerns where we have multiple people and

12   multiple situations with different primary job responsibilities

13   or different pay practices with respect to anybody, if these

14   able counsel at two of the largest law firms in the world could

15   not find a shred of evidence supporting the view that there is

16   a different primary job than what is out there, I'm willing to

17   bet that that evidence just simply doesn't exist, or it

18   would've been here.

19              THE COURT:  Thank you.  Let me hear from the other

20   side.

21              MR. GOLDEN:  Thank you, your Honor.

22              It's not our burden to show that Rule 23 certification

23   is inappropriate now.  It's plaintiff's burden.  And Mr. Getman

24   is suggesting that we should do it backwards, which is, well,

25   judge, I'm telling you that generally they all do the same kind

CBKZENEM                    Motion

1   of work so let's go ahead and certify the class.  If it turns

2   out that the facts are otherwise, we can always fix it later.

3   That's not their burden, that's not how Rule 23 works.  The

4   Court has to conduct a rigorous analysis of the entire record,

5   and the plaintiffs have to proof by a preponderance of the

6   evidence that each and every element of Rule 23 is satisfied.

7   They haven't done that here.  They chose to move for

8   certification without discovery.  We sought discovery, not

9   because we wanted to determine facts regarding the plaintiffs'

10  employment, but rather as I said at the time, we want to test

11  the plaintiff's assertions regarding how they're in a position

12  to speak for this supposed class of G-tech reps as to what

13  G-tech reps did and how they went about their job.

14          It's clear that the plaintiff, the named plaintiffs

15  are not in a position, or at least they don't say how they're

16  in a position to say, I know that every other G-tech rep went

17  about his or her job in the same way that I went about my job.

18  All they say in that regard is the primary job for me and other

19  G-tech representatives was to provide technical support for

20  defendants customers who leased Bloomberg terminals and were

21  having problems.  They say nothing about how they went about

22  discharging that role.  They say nothing about how other people

23  went about --

24          THE COURT:  What difference does it make?

25          MR. GOLDEN:  It makes a difference, your Honor,

CBKZENEM                    Motion

1   because while --

2           THE COURT:  You know what the facts are.

3           MR. GOLDEN:  We know the --

4           THE COURT:  I'm not sure I understand what you're

5   saying.  You -- this is the scenario you present to me.

6   These -- you don't dispute any of the affirmative facts that

7   they rely on.

8           MR. GOLDEN:  Not true, your Honor.

9           THE COURT:  Well, you don't -- let's -- you're not

10  disputing that they all worked out of the single call center.

11          MR. GOLDEN:  Correct.

12          THE COURT:  You're not disputing that they all have

13  the same job title.

14          MR. GOLDEN:  Correct.  And the regs make explicit, the

15  CFR says job title alone is not relevant.

16          THE COURT:  That's right.  Well, that's why I'm moving

17  past jobs.

18          MR. GOLDEN:  And I understand.

19          THE COURT:  And I didn't start with that.

20          MR. GOLDEN:  Thank you, your Honor.

21          THE COURT:  They all work at a single call center,

22  they all have the same job title.  They all have the same job

23  description, right?

24          MR. GOLDEN:  At a very high level, correct, and very

25  high level --

1          THE COURT:  So in that regard, all of that you agree

2     that they're all similarly situated in that regard.

3          MR. GOLDEN:  In that regard.

4          THE COURT:  Okay.  And they are all compensated with

5     regard to the same formula.

6          MR. GOLDEN:  They're all salaried and they're all

7     entitled to incentive compensation.  But --

8          THE COURT:  Is there any anything different, other

9     than an assessment of some people come in at the lowest salary,

10    other people in at the highest salary, depending on

11    negotiations and their background, is there really some -- in

12    terms of where they worked, the job title, the job description

13    and how they're paid, is there any variable there between one

14    plaintiff, one potential plaintiff and another?

15         MR. GOLDEN:  Yes, your Honor.

16         THE COURT:  What's the variable?

17         MR. GOLDEN:  And the variable -- I'm sorry -- go both

18    to how they perform their job and how they're compensated,

19    because one has -- one is related to the other.

20         THE COURT:  Okay, wait a minute.  Just a second.  Let

21    me write that down.  Okay.  You say the variables are in how

22    they perform their job and how they're compensated.

23         MR. GOLDEN:  Correct.  And how --

24         THE COURT:  Let's start with how they're compensated,

25    because I didn't see anything in any of the papers that were

1    submitted to me that gave me a variable with regard to how

2    they're compensated.

3           MR. GOLDEN:  Well, what I mean by that is every year

4    an employer's, is awarded a salary.  He's awarded incentive

5    comp, and the salary and the incentive comp they're awarded

6    will reflect to a large degree, their own performance over the

7    past year.  Their own performance means not just how proficient

8    they were at their job, but the extent to which they were

9    proactive, to the extent to which they volunteered for special

10   duties, the extent to which they had responsibility for major

11   accounts as some G-tech reps do and others don't, the extent to

12   which they were proactive in managing relationships between

13   Bloomberg and its major account reps, the extent to which

14   G-tech reps were involved in training others.

15          THE COURT:  Well, and how does that reflect in how

16   they're compensated?

17          MR. GOLDEN:  It's part of the total mix of what am I,

18   what salary am I going to award this individual as opposed to

19   individual.

20          THE COURT:  Well, give me an example.  Because I don't

21   get that from your papers.  I understand what you're saying in

22   the abstract, but I got a guy who is hired at $50,000 salary.

23          MR. GOLDEN:  Right.

24          THE COURT:  I've worked there for a year.

25          MR. GOLDEN:  Right.

1          THE COURT:  Tell me how do I get my salary, my next

2     year's salary, and what's it based on, and how would I be

3     compensated and how is it different than you compensate anybody

4     else?

5          MR. GOLDEN:  Okay, so how do I get more money?  Get

6     certified in specific technical areas, which all G-tech reps

7     have the opportunity to get certified in specific areas that

8     show they have particular expertise in a subject matter.

9          THE COURT:  But there's nothing that automatically

10    results from that.

11         MR. GOLDEN:  It's part of the total mix of.

12         THE COURT:  So when you assess whether they're going

13    if get a raise, you determine how advanced -- how they've

14    advanced as an employee and the significance of their handling

15    of their accounts.

16         MR. GOLDEN:  Among other things, that's correct.

17         THE COURT:  That's true of everybody.

18         MR. GOLDEN:  Understood.  But these factors that

19    Bloomberg will be considering, their technical proficiency,

20    their involvement in training, extent to which they volunteer

21    for special projects, the extent to which they are helping to

22    manage an important relationship, those factors all, A, vary

23    from G-tech rep to G-tech rep and, B, are going to go into the

24    analysis as to why each individual G-tech rep is exempt, which

25    is the ultimate question.

CBKZENEM                         Motion

1          THE COURT:  But that's not the analysis, relevant

2     analysis it goes to.  It goes to the relevant analysis of

3     whether they're going to -- how much of a raise they're going

4     to get.

5          MR. GOLDEN:  For purposes of our discussion, agreed.

6          THE COURT:  Right.  So how is that somehow a

7     determinative factor that these people aren't similarly

8     situated?  I mean, you know, when you take -- take your law

9     firm or take some place else.  Just because everybody says at

10    year end, whether somebody is going to get a raise and somebody

11    gets a $5,000 raise and the other person gets a $10,000 raise,

12    that doesn't necessarily say that they're somehow, they're

13    inconsistent as a class if they're raising the same issue about

14    how they're compensated.

15         MR. GOLDEN:  But respectfully, Judge, under Rule 23

16    where the issue is commonality and typicality, not merely we

17    can identify a common question.  Dukes made clear it's not

18    enough to identify a common question.  What you have to do is

19    identify a common question that is going to drive the

20    resolution of the litigation in one fell swoop.

21         THE COURT:  But isn't that common question, as you've

22    characterized it, whether they are in fact exempt employees or

23    not exempt employees?  Once I make that determination, all the

24    other variables that you're talking about are irrelevant,

25    aren't they.  To the question of whether or not they have a

1   common cause of action, they say that they are, they say that

2   they're entitled to overtime.  Everyone says that they're

3   entitled to overtime.  You say none of them are entitled to

4   overtime.

5           MR. GOLDEN:  Correct.

6           THE COURT:  So what is the variable that has anything

7   to do with the issue that has to be resolved?

8           MR. GOLDEN:  The variable, Judge, is how you get to

9   that conclusion for each --

10          THE COURT:  Right.

11          MR. GOLDEN:  -- plaintiff.

12          THE COURT:  Right.  But what you just laid out, the

13  annual raise is, itself, irrelevant to whether or not they're

14  exempt or not exempt.

15          MR. GOLDEN:  I'm sorry, your Honor, I don't disagree.

16  I was just trying to be responsive to a question.  Whether they

17  get an annual raise is, my only point is it's determinative of

18  a number of factors, and those same factors in many respects

19  are the factors that will go into an analysis as to why --

20          THE COURT:  But I don't understand -- you couched this

21  issue very clearly for me in very, in very succinctly and

22  accurately.  You say the real sole issue here is whether they

23  are in a job -- whether they perform a job which is an exempt

24  classification.

25          MR. GOLDEN:  Correct.

CBKZENEM                    Motion

1              THE COURT:  So that -- you don't say, well, I have 125

2      folks, 75 are exempt, 75 are not.

3              MR. GOLDEN:  Correct.

4              THE COURT:  The whole issue is that you say, you say

5      what -- you say what they all have in common is that they --

6      none of them deserve overtime because they are all in the same

7      exempt classification.  Isn't that what you say?

8              MR. GOLDEN:  That is what I say, your Honor.  But in

9      order to --

10             THE COURT:  How is that not commonality?

11             MR. GOLDEN:  Because it's not, it's not Dukes

12     commonality because there is not a single question that your

13     Honor can answer that will drive the resolution.

14             THE COURT:  But there is.

15             MR. GOLDEN:  But --

16             THE COURT:  The single question is whether or not the

17     exempt, the exempt classification that you say applies to

18     everyone of these employees, whether that in fact applies to

19     everyone of these employees.  I don't understand an analysis

20     that you're arguing that in order to determine whether they're

21     exempt, that we're going to have to examine each individual

22     person as to what they do because they all do something

23     different.  You're saying they're all exempt in the same way

24     because of the similarities of their jobs; right?

25             MR. GOLDEN:  Your Honor, but the FSLA --

CBKZENEM                    Motion

1          THE COURT:  Isn't that commonality?

2          MR. GOLDEN:  It's not commonality, it's not sufficient

3    commonality for Rule 23.  And the reason for is that is the

4    FLSA makes clear in order to determine whether an employee is

5    exempt, the Court must engage in a highly specific granular

6    analysis of that specific employee.  What does he or she do

7    every day.  And --

8          THE COURT:  Right.  But you say everybody is exempt,

9    is exempt.

10         MR. GOLDEN:  I do, but --

11         THE COURT:  You say everybody in this job title is

12   exempt because they all are exempt in the same way.

13         MR. GOLDEN:  They are all exempt.

14         THE COURT:  In the same way, right?

15         MR. GOLDEN:  No, your Honor.  They're exempt --

16         THE COURT:  Tell me, give me an example of how one is

17   exempt using one standard and somebody else is exempt using a

18   different standard.

19         MR. GOLDEN:  It's not different standards, your Honor.

20   It's different facts that the Court would consider.  And I'll

21   give as an example, real examples two declarants whose is

22   declarations are before the Court.

23         So first let's start with Jenn Liguori, who put in a

24   declaration.  Now I think at the merit stage the Court would

25   conclude that she's exempt.

CBKZENEM                         Motion

1          THE COURT:  Okay.  Why?

2          MR. GOLDEN:  First, she -- first, she exercises

3    independent discretion and judgment in terms of resolving

4    customer problems.

5          THE COURT:  That's what you say about everybody, so

6    that --

7          MR. GOLDEN:  Agreed.

8          THE COURT:  That's not an individual assessment that I

9    have to make.

10          MR. GOLDEN:  Second, she's a major account rep, so

11    she, unlike some other G-tech reps, she has been identified as

12    someone who is responsible for managing specific customer

13    relationships, reaches out proactively with them, meets with

14    them, talks about their needs, handles their problems

15    specifically, so when those customers have an issue they go

16    directly to her.  She works with other groups within the

17    company to identify software glitches when she's seen recurring

18    problems, show works with other groups in the company in order

19    to figure out --

20          THE COURT:  Wait a minute, stop let me slow you down.

21    Because the fact is is that you give me no evidence, you

22    proffer no evidence that would indicate that you have made an

23    individual assessment of each individual employee to determine

24    whether that particular employee is exempt.

25          MR. GOLDEN:  Correct.

1          THE COURT:  You haven't made that argument.

2          MR. GOLDEN:  I wouldn't make that representation.

3          THE COURT:  Right.  You're not making that argument.

4    You're not saying that that's the relevant inquiry.  You're

5    saying the nature of their job, the nature of their job title

6    is such that they are all exempt.  And you -- the individual

7    analysis that you're saying that the Court has to go through to

8    figure out whether each individual person is exempt is not even

9    your defense.  You don't claim that that's why you say

10   plaintiff A is exempt.  You say plaintiff A through Z is exempt

11   because they're all exempt in the same way because they're all

12   doing the same job and they're all classified as exempt

13   employees.  And you have made no analysis, which you expect the

14   Court to make, that somehow that you've gone through each

15   individual job, each individual employee's job responsibilities

16   and made an independent judgment that that particular employee

17   is exempt.  That's not the analysis that you argued in the way

18   that they're exempt.  You haven't -- you're right, you don't

19   have -- you couldn't in good faith say that that's the issue

20   because you've never -- you don't have that -- you've never

21   done that analysis.

22          So isn't it kind of artificial to argue that it's the

23   differences that predominate here, when there's no individual

24   assessment that you've made of any individual employee, other

25   than their job classification, to argue that they're exempt as

1    a class?  Isn't that what you're really arguing, that they're

2    exempt as a class of employees?

3          MR. GOLDEN:  We argue that they're exempt.

4          THE COURT:  As a class of employees.

5          MR. GOLDEN:  Yes, but for different reasons.

6          THE COURT:  Which puts them in a class.

7          MR. GOLDEN:  But it doesn't relieve the Court, and the

8    Rubbles case, which we cite, which is at 272 FRD 320, that's

9    out of the Northern District, the Court addressed this exact

10    point.  Because the plaintiffs say, look, the defendant can't

11    be now heard to argue that you need to do an individual by

12    individual analysis, because they never did such analysis the

13    Court said.  It doesn't matter, they're two different

14    questions.  We're now in a litigation where the ultimate

15    question will be, is each and every member of this class

16    exempt, and --

17          THE COURT:  You say every member is exempt regardless

18    of -- your argument is every member is exempt regardless of any

19    individual assessment of their individual responsibilities.

20          MR. GOLDEN:  No.  Your Honor, my argument to the

21    contrary is, in the litigation context we'll have to do that

22    individual assessment, but that individual assessment defeats

23    the purposes of Rule 23.  And if we put forward Jenn Liguori or

24    Kristian Sawyers, who we already have as declarants who, by the

25    way, describe different jobs --

CBKZENEM                    Motion

1           THE COURT:  But you say they're exempt in the same

2     way.

3           MR. GOLDEN:  They're exempt under the same exemption,

4     but --

5           THE COURT:  No, they're exempt under the same

6     exemption, and you argue that they're exempt because of the

7     same set of relevant facts, don't you?

8           MR. GOLDEN:  No, your Honor.  If I could continue, I

9     talked about Jenn Liguori, who had responsibility for major, as

10    major account rep.

11          THE COURT:  Tell me, give me example of two people

12    that you can argue that are not exempt in the same way.

13          MR. GOLDEN:  Are exempt or --

14          THE COURT:  Are not exempt in exactly the same way on

15    exactly the same element that you have made that assessment and

16    that you would put forth.  Isn't it true that every single

17    employee, every one of these 125 employees, it is your

18    position, regardless of the additional arguments that you want

19    to make, it is your legal position that they're exempt in the

20    same way; right?

21          MR. GOLDEN:  Not in the same way.

22          THE COURT:  Well, who is not exempt in the same way?

23          MR. GOLDEN:  Your Honor, if I --

24          THE COURT:  Don't you argue that every one of these

25    people exercises discretion in the job?

1              MR. GOLDEN:  Yes.

2              THE COURT:  That would make them all exempt, wouldn't

3      it?

4              MR. GOLDEN:  Correct.

5              THE COURT:  So they're all exempt in the same way on

6      that issue.

7              MR. GOLDEN:  But they --

8              THE COURT:  Solely on that issue you, if you prevailed

9      on that issue, that would solely make them all exempt.

10             MR. GOLDEN:  Agreed.

11             THE COURT:  Okay.

12             MR. GOLDEN:  But the reality, Judge, is we put forward

13     ten employees, 20 employees.  We say this is what they all do,

14     here's why they're all exempt.  I have no doubt that plaintiffs

15     will say, well, you cherry picked them, those are not

16     representative, we don't think they speak for the class.

17             THE COURT:  But they're all exempt in the same way.

18     You're using the same factor, using the same assessment.

19     Whether you are saying they're exempt because they have a job

20     in which they're supposed to use their discretion, they don't

21     have different jobs.

22             MR. GOLDEN:  They do have different jobs, your Honor.

23     If I --

24             THE COURT:  So give me an example of two people who

25     have different jobs and job responsibilities.

CBKZENEM                    Motion

1          MR. GOLDEN:  Okay.  We talked about Jenn Liguori, who

2    is a major account rep, but talking about Kristian Sawyers, so

3    number two, same position.  He's --

4          THE COURT:  Right.

5          MR. GOLDEN:  G-tech rep.

6          THE COURT:  Same job.

7          MR. GOLDEN:  He's not a major account rep.

8          THE COURT:  So, but he still has the same job.  He

9    could be a major account rep.  That's because he doesn't have

10   every a major account.

11         MR. GOLDEN:  Exactly.  But my point --

12         THE COURT:  But that doesn't change the nature of the

13   job.  It's not as if one job title has a major account and

14   another job title doesn't.  All of these people equally have --

15   their job, their jobs titles themselves make them available to

16   handle a major, a major account.

17         MR. GOLDEN:  Make them eligible.  It depends on --

18         THE COURT:  Right.

19         MR. GOLDEN:  -- Bloomberg's view as to whether they

20   can handle that job.

21         THE COURT:  So you think that the one person who is

22   eligible who doesn't have it, and somebody who is eligible who

23   does have it, the one who does have it is exempt, the one whose

24   job makes them eligible is not exempt.

25         MR. GOLDEN:  No, your Honor.  To be --

1           THE COURT:  That wouldn't be an argument, right,

2      that's not --

3           MR. GOLDEN:  They're all exempt.

4           THE COURT:  They're all exempt because of the nature

5      of their job responsibilities that are available to them.  The

6      fact is that they all -- within their job responsibilities and

7      job titles, they're expected to handle major accounts.

8           MR. GOLDEN:  That's --

9           THE COURT:  Right?

10          MR. GOLDEN:  No, your Honor, I'm sorry.  That's

11     incorrect.  The major account representative is a designation

12     that is bestowed upon a particular G-tech rep when Bloomberg

13     concludes that this person has the right skill set in order to

14     have that responsibility.

15          THE COURT:  Everybody's eligible to do that.

16          MR. GOLDEN:  But that's like saying everybody is

17     eligible to be promoted to a different job.  Everyone's

18     eligible for it, but they have --

19          THE COURT:  But you're not -- but I don't understand

20     the nature of your argument is that you are -- you are going to

21     defend against this lawsuit on the basis of, there are a

22     handful of people who are major reps.

23          MR. GOLDEN:  No.  Your Honor --

24          THE COURT:  Your main defense, the main defense that

25     you put forward is that all of these people are in exempt

1   categories, that their jobs and their job responsibilities put

2   them in exempt categories.  That's your defense, right?

3          MR. GOLDEN:  That's correct, your Honor.

4          THE COURT:  Exempt categories across the board, that

5   it applies to everyone.

6          MR. GOLDEN:  Correct.

7          THE COURT:  Not because they do different jobs, but

8   you're saying it's because they do the same job.  That's what

9   makes them all exempt in the same way.  Isn't that what your

10  argument is?

11         MR. GOLDEN:  My argument is the Court would reach the

12  same ultimate conclusion for all of them.  The factors that the

13  Court would consider would vary from individual to individual,

14  because they don't all do the same thing.

15         THE COURT:  But I don't have -- you really haven't

16  proffered any of that.  You haven't -- the real question is not

17  whether or not I would find them exempt if I went through each

18  individual employee's circumstance.  The question is, in order

19  to resolve the dispute you have over whether these employees

20  are exempt, whether I have to go through that individual

21  analysis and I don't, because you say -- as a matter of fact,

22  their job title, give me the job title again.

23         MR. GOLDEN:  Global technical support representative.

24  That's the job that applies, that's the title that applies to

25  everyone in the putative class.

1            THE COURT:  Wouldn't it be an accurate statement that

2       you claim that simply because you are hired as a global

3       technical support rep, that you are exempt; isn't that your

4       argument?

5            MR. GOLDEN:  Yes, Judge.  Your Honor, I would say it

6       slightly different.

7            THE COURT:  How much more commonality can I have than

8       that?

9            MR. GOLDEN:  Because --

10           THE COURT:  If you're in that category, you're exempt.

11      If they say, wait a minute, I'm in that category and, no, we're

12      not -- they don't argue that -- they don't argue the individual

13      case as you don't argue the individual case.  They say -- you

14      say that because your job title is global technical support

15      rep, you are exempt.  They say, no.  Because you're a global

16      technical support rep, you're not exempt.  Isn't that the

17      determinative issue for everybody?  If you're right, then all

18      of their cases go away.

19           MR. GOLDEN:  Correct.

20           THE COURT:  If they're right, then they all get to

21      recover similarly.

22           MR. GOLDEN:  Correct.

23           THE COURT:  Right?  So what else in terms of

24      commonality practically do I need at this stage?

25           MR. GOLDEN:  Because the way to determine who is right

1    is to look at what each individual plaintiff class member is

2    doing on a day-to-day basis.

3          THE COURT:  That's not true.  The way to determine

4    what's right is to determine what does a global technical

5    support rep do, and if that job is an exempt job, you're right.

6    Then as you say, because they're a global technical support

7    rep, they're exempt.  If that job is not exempt, then they're

8    right.  Why do I need -- where is the individual analysis that

9    I need?  All I need to know is whether the range of

10   responsibilities of a global technical support rep, and why you

11   say just because I'm hired at that title, I will never get

12   overtime.  That's what you're saying.

13         MR. GOLDEN:  Correct.

14         THE COURT:  That's the dispute.  The dispute isn't,

15   well, we were told that somebody people would get overtime and

16   some people wouldn't, but then we found out that they made an

17   individual assessment of everybody, and nobody got it because

18   they determined that nobody individually was entitled to it.

19         That's not the dispute here.  The dispute here is that

20   you say, look, from day one when we hire you as a global

21   technical support rep, you will never get overtime, because I

22   don't care what the nature of your responsibilities are.  I

23   don't care whether you have, you know, a major account or don't

24   have a major account, you are exempt and will never get

25   overtime.  How is that -- where is the individual analysis that

1   I need to resolve?

2           MR. GOLDEN:  Again, your Honor, at the risk of

3   repeating myself, the case law, the FLSA, the Department of

4   Labor made clear in order to determine that question, are you

5   exempt or are you not, you have to look at what the individual

6   does on a day-to-day basis.  If your Honor juxtaposes the

7   declarations of Jen Liguori and Kristian Sawyers --

8           THE COURT:  Right.

9           MR. GOLDEN:  -- your Honor would read -- would see

10  that there are commonalities, but they do their jobs very

11  differently.

12          THE COURT:  But those commonalities are what you claim

13  make them exempt, isn't it?

14          MR. GOLDEN:  No, your Honor.  It's --

15          THE COURT:  How do you say no?  You don't claim that

16  one person is exempt and another person isn't.

17          MR. GOLDEN:  Correct.

18          THE COURT:  You claim that -- don't you claim that

19  regardless of where I think you're going to be six months from

20  now, regardless of how little or how much you do, how minor or

21  how major your account is, on day one you're exempt and you

22  will never get overtime; isn't that your position?

23          MR. GOLDEN:  That is our position, your Honor.

24          THE COURT:  So what difference does it make how well

25  you advance six months later if whether or not I'm the worst

1    employee, the best employee, I'm the most sophisticated

2    employee, I'm the least sophisticated employee, I have a major

3    account or I have no major account, what difference does it

4    make for any of these plaintiffs -- what individual assessment

5    are you arguing needs to be made, since you categorically are

6    blanketly saying, when I hire you day one, you're never going

7    to get overtime.

8         MR. GOLDEN:  Because, your Honor, the facts that I

9    will point to, the job duties on which I will rely, will look

10   different for each plaintiff.

11        THE COURT:  How?

12        MR. GOLDEN:  The fact --

13        THE COURT:  Give me an example of somebody who could

14   possibly have an appropriate exceptional job responsibility

15   that you say would qualify them for overtime if they have the

16   title of globe technical support rep.  Give me an example -- I

17   shouldn't say that, because the reality is that's a rhetorical

18   question.  The answer to that question is there is no

19   circumstance.  The person, the person could be hired on day one

20   and be out on maternity leave for the next six months, and they

21   still will never get overtime even though they may not have

22   worked a single day at the job; right?

23        MR. GOLDEN:  That's right, if they --

24        THE COURT:  Because you say I hired you in an exempt

25   category.

CBKZENEM                    Motion

1            MR. GOLDEN:  Correct.

2            THE COURT:  An exempt job.  The job that you're

3       fighting about, it's jot not their responsibilities you're

4       responding.  Because you're saying to me, regardless of what

5       your responsibilities are, you're not getting overtime because

6       you're in an exempt job title; isn't that what you're saying?

7            MR. GOLDEN:  Correct, correct.

8            THE COURT:  Then what difference does it make?

9            MR. GOLDEN:  Because now I have to prove it Judge.  I

10      now have to prove --

11           THE COURT:  Right.

12           MR. GOLDEN:  I have the burden of proof, and my proof

13      for employee A will look different from my proof --

14           THE COURT:  No it won't.

15           MR. GOLDEN:  It will, Judge.

16           THE COURT:  How could it be different, unless you can

17      tell me that -- give me an example of a circumstance where

18      someone in this title could be conceded by your company,

19      conceded by the employer to be entitled to overtime?  Is that

20      even possible?  The answer to that is no, right?  It is not

21      possible.  No matter what individual inquiry that I make, there

22      is nothing that I could find from your perspective that would

23      make anybody who gets hired in this job eligible for overtime.

24      Isn't that true?

25           MR. GOLDEN:  If they perform the job the way the

CBKZENEM                    Motion

1    Bloomberg expects them to.

2              THE COURT:  Suppose they don't perform the job the way

3    Bloomberg expects them to.

4              MR. GOLDEN:  So --

5              THE COURT:  Unless they get fired, they're still not

6    going to get overtime.

7              MR. GOLDEN:  They wouldn't get overtime, but that

8    doesn't mean they would be considered exempt or nonexempt.  If

9    we have this hypothetical --

10             THE COURT:  Yes, it does.  You say they're exempt.

11             MR. GOLDEN:  But the question, Judge, is not what is

12   Bloomberg's classification.  The question is is the

13   classification correct.  And so --

14             THE COURT:  No.  The question that we're discussing

15   now is whether or not the classification applies to every

16   single employee.

17             MR. GOLDEN:  If it correctly applies.

18             THE COURT:  If it applies to every -- well, it -- no,

19   that's not true.  It doesn't matter whether correctly or

20   incorrectly, right?  Not the class certification.  It might be

21   matter ultimately whether you win or lose.  But the question is

22   whether or not it is the same or different.

23             Now, I don't care whether it's right or wrong at this

24   point in time.  If it's wrong, it's still a class.  If it's

25   right it's still a class.  The class falls together or they

1    rise together.  It doesn't make a difference whether they're

2    right or wrong.

3             MR. GOLDEN:  But again, your Honor, going back to

4    Dukes, the Supreme Court made clear it's not enough now under

5    Rule 23 to simply say we can identify a common question that

6    applies to the entire class.  Because as the Court said, any

7    class action counsel can identify a common question.

8             THE COURT:  Right.

9             MR. GOLDEN:  The issue is whether the common question

10   will drive the resolution of the litigation to the exclusion of

11   an individualized inquiry.

12            THE COURT:  But it will.  Because your position is

13   that the only thing -- your position is not that you will have

14   in this case any basis to allege as a defense that the reason

15   these people are not getting overtime is because you made an

16   individual determination that the nature of their

17   responsibilities after they were hired in this position

18   developed such that that is what prevents them from getting

19   overtime.  Your position is nobody gets overtime.

20            MR. GOLDEN:  Correct.

21            THE COURT:  Nobody.

22            MR. GOLDEN:  Correct.

23            THE COURT:  The whole universe, the whole class of

24   people who are hired to do this job, regardless of the

25   variations in their responsibilities and their job duties,

CBKZENEM                    Motion

1    you're saying once you get hired in that position, you are in a

2    class of employee that will never get overtime.

3              MR. GOLDEN:  Correct.

4              THE COURT:  Regardless of what your job

5    responsibilities are, right?  So what is the individual

6    analysis that you say is being avoided?

7              MR. GOLDEN:  Well, respectfully I think, your Honor is

8    mixing whether the employer engaged in an individual analysis

9    in making the determination of exempt versus nonexempt -- which

10   I'm not suggesting that my client did -- versus a separate

11   issue, which is in a wage and hour litigation, ultimately the

12   question that the Court's going to have to consider is was the

13   exemption classification correct.  And, respectfully, the

14   Court's going to have to do that on an employee-by-employee

15   basis.  And as a practical --

16             THE COURT:  Why?  You say they all have -- you say

17   none of them -- you say the nature of their computer work, in

18   and of itself, makes them not eligible for overtime.  You say

19   that that's true of everybody.

20             MR. GOLDEN:  Correct.

21             THE COURT:  If you are wrong on that, then your

22   argument is going to be, well, if we're wrong on that, our

23   secondary defense is going to be, well, look at John Smith, we

24   gave him a little extra responsibility, so John Smith shouldn't

25   get overtime.

1           MR. GOLDEN:  No, your Honor, that's not a secondary

2   defense.  That's going to be our defense.  We're going to say,

3   look, these employees are exempt and here's the reason why.

4           THE COURT:  You're saying each of these employees are

5   exempt in a different way for me to say that it's not a

6   class-wide decision.

7           MR. GOLDEN:  We'll say they are exempt in many

8   respects for slightly different reasons.  And the challenge

9   impose --

10          THE COURT:  No.  For the most part your primary

11  argument will be and is, as you've put forth, that they're all

12  exempt in the same way.  That's your primary argument, isn't

13  it?

14          MR. GOLDEN:  Your Honor, it's not that they're all

15  exempt in the same way.

16          THE COURT:  But they are.  They're exempt because they

17  were hired as globe technical support reps.

18          MR. GOLDEN:  But the issue again now is not -- the

19  factual dispute --

20          THE COURT:  Are you backing away from that argument

21  that they all have that common defense that you wish -- you say

22  is your primary defense, and if you prove that that is

23  determinative of this case?

24          MR. GOLDEN:  Certainly not, your Honor.  But the

25  question is there is not a factual dispute as to did my client

1   go through a person-by-person analysis.  That's not a factual

2   dispute.  The factual dispute or the ultimate legal issue here

3   is does the appellation of exempt actually apply to every

4   single person in the class.  And if I put forward an employee

5   as here's an employee, that is what she does as a G-tech rep

6   and this is why she's exempt, plaintiff's counsel will say

7   well, she is not representative.  She had extra

8   responsibilities.  I say, okay, let's go to employee number

9   two.  Here's why he's exempt.  Certainly there will be overlap

10  in terms of responsibilities on which I will rely, but there

11  will be additional responsibilities as well.  They say, well,

12  you're still, you're cherry picking.  Okay, let's go to number

13  three.  We will go down the line and look at what each and

14  every employee does in order to adjudicate the ultimate

15  question as to was this employee properly classified.

16          THE COURT:  Give me the different individual job

17  responsibilities --

18          MR. GOLDEN:  Okay.

19          THE COURT:  -- that you say that you're going to argue

20  that that job responsibility, if you can find that in a

21  particular employee, is going to make that employee exempt,

22  independent of the blanket exemption that you're really

23  arguing.

24          MR. GOLDEN:  And, your Honor, to be clear, it is not

25  that any one of these points will be dispositive.  My point is

CBKZENEM                    Motion

1    is that for each one, there will be a different mix, so here

2    are the --

3              THE COURT:  But, you know, you can't -- you can't win

4    on that argument.  Because the question -- there are two

5    extremes; that each will be determinative; on the other

6    extreme, each is irrelevant.  In between is the mix.

7              MR. GOLDEN:  Correct.

8              THE COURT:  What you got to demonstrate to me that the

9    balance is such that this individual -- give me some indication

10   to conclude that this individual assessment is going to

11   predominate over the commonality of all of these people being

12   hired and being told on day one, that I don't care what you do.

13   I don't care if you sharpen pencils downstairs or you come up

14   with a cure for cancer, you're not going to get overtime,

15   because none of your people are going to get overtime.

16             MR. GOLDEN:  So here's the difference, your Honor, if

17   I could -- here are specific points of distinction.

18             THE COURT:  All right.

19             MR. GOLDEN:  Some G-tech reps are major account reps,

20   not all are.  This is not something that just sort of depends

21   on whether your account is major or minor.  This is --

22             THE COURT:  Okay, stop there.

23             MR. GOLDEN:  Yeah.

24             THE COURT:  What is it about being a major account rep

25   that qualifies it as an exemption?

1          MR. GOLDEN:  Because the plaintiffs argue -- by the

2     way without any support in the record -- that all G-tech reps

3     do is they sit in the same room and they automatically receive

4     tickets for client problems and they sort of respond to them on

5     a random basis.

6          THE COURT:  Right.

7          MR. GOLDEN:  That does not hold true for major account

8     reps who have an independent relationship with their account.

9     And we're talking about --

10         THE COURT:  Yeah, but what is the legal -- being a

11    major account rep -- I understand you're extrapolating to being

12    a major account rep qualifies you as an exempt employee,

13    because you're exercising significant discretion; is that your

14    argument?  What's the legal argument that goes behind --

15         MR. GOLDEN:  Your Honor --

16         THE COURT:  I don't know what a major account rep

17    does.  He could sweep the floor for a major account.  I don't

18    know what --

19         MR. GOLDEN:  It's in the record.  Both Matthew

20    Mignone, who is the manager of this entire group, Jenn Liguori

21    who is a major account rep, they put in declarations.  They

22    described what a major --

23         THE COURT:  I know, but what is it about a major

24    account rep that you say inherently makes that exempt just

25    because you're a major account rep?

CBKZENEM                    Motion

1          MR. GOLDEN:  Not -- again, to be clear, not just

2     because, but it certainly heightens and makes even more

3     prominent the argument that I think applies.

4          THE COURT:  The common argument.

5          MR. GOLDEN:  The common argument that --

6          THE COURT:  The common argument.

7          MR. GOLDEN:  It enhances the common argument.

8          THE COURT:  But that gives me commonality.  That

9     doesn't give me -- you can't -- if you want to give me

10     something that isn't commonality, you have to give me some

11     independent individual basis to conclude that one person is

12     exempt and another person is not.  Otherwise, I don't have a

13     problem with deciding this.  If you say, well, it adds to all

14     of the common factors, what's the common factors that

15     predominate here?

16          MR. GOLDEN:  Your Honor, if my -- if your Honor

17     perceives my burden --

18          THE COURT:  I don't perceive your burden at all.  It's

19     my burden.  I'm trying to articulate for myself, but I have no

20     basis to articulate.

21          MR. GOLDEN:  Your Honor, if the question to me is can

22     I point to a factor that will differentiate some G-tech reps as

23     exempt and some as not exempt --

24          THE COURT:  Right, given --

25          MR. GOLDEN:  -- I cannot, your Honor.

CBKZENEM                    Motion

1          THE COURT:  Right.  But see, I'm not saying that's

2     your burden.  But I'm saying you want me to make the decision

3     on this issue in face of their showing that simply because

4     you're hired as a global technical support rep, you will never

5     get overtime.  And their position is that violates the law.

6     Because being a global tech sport rep, in and of itself, does

7     not deny you overtime.

8          Now, your response is, well, you know, they don't

9     really know exactly what each individual person does.  Well, I

10    don't either.  But I know that each individual person,

11    regardless of what they do, is never going to get overtime, and

12    that seems to be the question, here.  So if you can justify, if

13    you can justify why nobody gets overtime, that's what the issue

14    is.  The issue is, it's not going to take, as I say rocket

15    scientist for me to figure out that the main dispute here is if

16    you're hired in this category, just like everybody else,

17    regardless of the job responsibilities you have, you will never

18    be eligible for overtime, that's the presumption I see here.

19    You don't dispute that.

20          MR. GOLDEN:  Correct.

21          THE COURT:  You simply say, well, yeah, that's true,

22    but, you know, a lot of these people, they have some other

23    duties that would make them exempt anyway.

24          Well, I mean, that's a defense.  That's not their

25    burden, you know.  Their burden is to show me the commonality

1    and show me that that's what they're going to show.  And they

2    basically said, we're going to show you, Judge, that every one

3    of these people are hired in a position where it has been --

4    the nature of the their job description, the job title that

5    they're in, nature of that job description is such that all of

6    these people should not be exempt employees.  The other side

7    won't pay them because they say they're all exempt employees

8    regardless of what they do.  That's what you say.  That's your

9    argument, that's your main argument.

10         MR. GOLDEN:  Not regardless of what they do, Judge,

11   because of what they do.  I mean, it's not a -- it's not a

12   blind designation.  It's because of what they do.  And these

13   points of differentiation, they're not additional exemptions or

14   additional reasons why they are exempt.  They all go into the

15   fundamental question of the total mix of responsibilities.

16   And, your Honor --

17         THE COURT:  But there is no mix.  Every single, every

18   single individual that you look at, regardless of all of the

19   other factors that you argue for that particular individual,

20   every single individual you will say, regardless of whether

21   those factors exist or those factors don't exist, those

22   employees are exempt; right?

23         MR. GOLDEN:  We will say that for each employee.

24         THE COURT:  Right.  That's fairly common.  That's your

25   common theme, commonality --

1      MR. GOLDEN:  But again, your Honor, if your Honor were

2  to go back to the Second Circuit's decision in Meyers V.

3  Hearse, 624 F.3d, 530, Second Circuit instructed that the

4  assessment of whether an employee is exempt or nonexempt,

5  necessitates an evaluation of the duties that the employee

6  actually performs.

7      THE COURT:  Right.

8      MR. GOLDEN:  And the Second Circuit affirmed a

9  decision denying a motion to certify a class where the district

10  court held, we are going to have to go through an

11  employee-by-employee analysis to determine what every employee

12  actually does.

13      And, your Honor, the plaintiffs don't cite to a case

14  post Dukes in which a Rule 23 class was certified on a wage and

15  hour issue where the central dispute was are the employees

16  exempt or not.  They cite cases where classes were certified in

17  the context of approving a settlement, and they cite to cases

18  in which a class was certified where the issue was not whether

19  an exemption applies.  The fact --

20      THE COURT:  But your argument, you know, I don't

21  see -- you probably did make the argument, but I don't see -- I

22  didn't really focus or notice any argument that you are really

23  making that your defense would be that you're going to go

24  employee by employee and demonstrate that the nature of that

25  unique employee's responsibilities would independently make

CBKZENEM                    Motion

1   that employee exempt.  That's not your argument.

2              MR. GOLDEN:  That is how we will -- we intend to

3   address this case, your Honor.  Because, again, I can come up

4   with a job description of a G-tech rep.

5              THE COURT:  Tell me what is it about -- pick one of

6   the named plaintiffs, tell me what is it about the named

7   plaintiff that makes them exempt.

8              MR. GOLDEN:  Each of the named plaintiffs exercised

9   independent discretion and judgment with respect to resolving

10  customer inquiries.

11             THE COURT:  In the same way as all other employees.

12             MR. GOLDEN:  Incorrect, your Honor.

13             THE COURT:  How is that incorrect?

14             MR. GOLDEN:  Because not all the named plaintiffs were

15  major account reps and so --

16             THE COURT:  Wait a minute.  No, no no.  You want to

17  say -- make major account rep is irrelevant.  That's why I went

18  to what are you saying is behind your major account argument.

19  There is no legal argument if you are a major account rep

20  you're exempt.

21             The question is whether or not they exercised

22  discretion.  Isn't that the real legal basis on which you could

23  argue they're exempt?

24             MR. GOLDEN:  That is the ultimate question.

25             THE COURT:  And you argue that every single person who

1    gets this job exercises discretion, regardless of whether

2    they're a major rep or not a major rep.  So, therefore, none of

3    them -- therefore, all of them are exempt.  So it's irrelevant

4    whether they're a major rep or minor rep, because you say they

5    all exercise discretion.  You say that's the nature of the job.

6          MR. GOLDEN:  That's correct, your Honor.  But

7    plaintiff --

8          THE COURT:  So then if I can resolve that, isn't that

9    determinative of the issue?

10         MR. GOLDEN:  No, your Honor.  Well, let's take a named

11   plaintiff, a named plaintiff, whom I believe was correctly

12   classified as exempt.  Your Honor may disagree, and your Honor

13   may say --

14         THE COURT:  I don't say I disagree.  I don't know

15   whether they are exempt or not exempt.

16         MR. GOLDEN:  Understood, your Honor.  I'm only

17   saying -- my point is when we get to the merits determination,

18   we'll have an argument as to whether the named reps were exempt

19   or nonexempt.

20         Now, obviously I don't know how your Honor will come

21   out on that issue, but your Honor's determination of that

22   issue -- your Honor could say, Mr. Golden, I disagree with you,

23   I think Mr. Enea is not exempt.  I think otherwise, but it's

24   not my call, it's your Honor's call.  But your Honor's

25   determination regarding Mr. Enea will not necessarily apply to

1    your Honor's determination regarding Ms. Liguor, because your

2    Honor may say, as best I can tell, really all Mr. Enea did was

3    he sat there, he received random tickets, he didn't really have

4    any independent relationship with a customer.  I think under

5    the total mix, I don't think Mr. Enea is except.  But with

6    respect to Ms --

7         THE COURT:  Why would I say that?  You're not making

8    that argument.  You're not even going to make that argument.

9    You're going to make the argument that every single person is

10   exempt, whether or not they exercised any discretion because

11   the nature of their job is that their job duties and

12   responsibilities require that, when necessary, they exercise

13   that discretion, right; isn't that the argument?

14        MR. GOLDEN:  That is.  But the point --

15        THE COURT:  So why would I go -- what do I care

16   whether or not they did exercise it or didn't exercise it?  If

17   you can demonstrate that the job -- that that was part of their

18   authority and duties and that -- and as you argue, you don't

19   argue that some people's responsibility and duties and not

20   others.  As a matter of fact, your argument, your argument

21   would not prevail if your argument was, it's not a requirement

22   that everybody exercise their discretion, but some do and some

23   don't.  That's not a legal argument; right?

24        MR. GOLDEN:  That's not my argument.

25        THE COURT:  Right.  And that's not your argument.  So

your argument has got to be, that's what's inherent to the job

title, isn't it?  The individual inquiry that you're saying you

want me to make is not an individual inquiry whether or not Joe

Smith exercised discretion on Tuesday and Susan Jones didn't

exercise any discretion on Wednesday.

          The question is are they in a job where that's their

job responsibility.  And your defense is, every single person

is in that job and that job responsibility is to exercise that

discretion.  So it is irrelevant to my analysis who did it and

who didn't do it; who had a major account and who didn't have a

major account.  Because your argument is, I assume -- and

unless you want to abandon that today -- your argument is even

for those people who don't have major accounts, even for those

people who they -- that you cannot demonstrate that they

exercised any discretion, the nature of the job requires it

when it is necessary, so that is why they don't get overtime.

And my analysis is not going to be driven by your arguing that,

Judge, well, give the people overtime who never exercised any

discretion and deny the people overtime who we can demonstrate

did exercise some discretion, because those -- the ones who

exercised it are exempt, and the ones who didn't exercise it

are not exempt.  You're saying all of them were in the same job

with the same job title, and all of them were required to do so

when necessary, right?

          MR. GOLDEN:  Correct.  But the evidence -- I'm sorry,

1    your Honor.  I think, your Honor, the position in which

2    defendants will find themselves then is that your Honor will be

3    only looking at, or the Court will only be looking at the, sort

4    of the most common denominator, the employees who were at all

5    I'll call it the base line.

6            THE COURT:  No.

7            MR. GOLDEN:  And ignoring the fact that there will be

8    even stronger arguments regarding other G-tech reps.  In other

9    words --

10           THE COURT:  Wait a minute.  But how is it a stronger

11   argument that you have evidence that a certain individual

12   exercised a great deal of discretion, when your argument is

13   that it's irrelevant whether they exercised that discretion.

14   The legal question is whether that discretion is part of the

15   job responsibility; right?

16           MR. GOLDEN:  Correct.

17           THE COURT:  So I assume you would agree and your

18   argument will be -- as I say, regardless of the fact that

19   Mr. Jones had a major account and exercised a lot of discretion

20   on a daily basis, Ms. Smith, the nature -- they had the same

21   job.  So the nature of her job is also exempt regardless of

22   whether she exercised more, less, none or some discretion.

23   Because that's what is required of her to be able, willing and

24   available to do that if she is a global technical support rep.

25   So by definition a global tech -- your argument is by

CBKZENEM                     Motion

 1  definition, a global technical support rep exercises

 2  discretion, has to be ready to exercise discretion.

 3          MR. GOLDEN:  Correct.

 4          THE COURT:  That is the determinative issue.  If

 5  you're wrong on that, you lose.  If you're right on that, you

 6  win.

 7          If you're right on the fact that it's not necessary to

 8  do that, but we have some people who do do that and some people

 9  who don't, you still don't win as to those people who do that,

10  because that's not the nature of the job responsibility.

11  That's not required by the job.  It's what's required by the

12  job.  If you say they have a different job, you can't say they

13  do a different thing.  You have to say they have a different

14  job.  They have a different job, set of job responsibilities.

15          Your argument is that the only basis for denying

16  overtime is that everybody has a job whose job responsibilities

17  are that they must be able and willing to exercise significant

18  discretion.

19          Those people -- I mean, you know, if we're working at

20  McDonald's and the manager exercises discretion and then the

21  guy who is making french fries is sitting there trying to

22  decide whether he's going to put salt or pepper on the french

23  fries, that doesn't make him exempt just because he exercised

24  some discretion.  The question is whether the job requires him

25  to exercise that discretion, whether the job duties,

1   responsibilities and titles come with it that kind of

2   responsibility that would give them the exemption.  The

3   exemption doesn't go individual by individual.  It goes job by

4   job.  And you're saying all these people have the same job.

5            MR. GOLDEN:  Your Honor, I disagree that it goes job

6   by job.  I think that's the same as saying it goes by job title

7   by job title, which the law clearly says no.  The question is,

8   based on what this person does --

9            THE COURT:  No.

10            MR. GOLDEN:  -- each and every day.

11            THE COURT:  No.  Based on what this person is required

12   to do.

13            MR. GOLDEN:  Respectfully, your Honor, and maybe this

14   is the crux of the disagreement, I think it's what does the

15   person actually do.  And my point --

16            THE COURT:  Wait a minute.  If I hire you to cook

17   french fries and you decide to exercise discretion in other

18   areas, why does exemption apply?

19            MR. GOLDEN:  Well --

20            THE COURT:  The job responsibility doesn't require you

21   to do that.  You could be in the back coming up with a cure for

22   cancer, but it doesn't matter because that's not your job.

23            MR. GOLDEN:  Your Honor, I didn't mean to suggest

24   people were straying from what the employer expected of them.

25   My --

1         THE COURT:  But what they expect of them is what the

2    job, what the employer says the job that they're hired for

3    requires.  That's the analysis.  It's not whether or not I

4    think one guy is smarter than the other, so I gave him some

5    extra responsibilities.  The question is whether the job that

6    I'm hired in is such that I am entitled to overtime or the

7    employer is entitled to withhold that overtime from me.  It

8    doesn't depend on whether or not I exercised discretion last

9    week so I get paid extra, and I didn't exercise discretion next

10   week so I have to get paid overtime.  It has nothing to do with

11   that.  It has to do with the job itself, what the job duties

12   are that I am doing.  You don't agree with that?

13         MR. GOLDEN:  I agree with that.  But my point, your

14   Honor, is if you look at all these 125 G-tech reps over the

15   past six years.

16         THE COURT:  Right.

17         MR. GOLDEN:  If you were to look at what they actually

18   do on a day-to-day basis, how they go about their job --

19         THE COURT:  Right.

20         MR. GOLDEN:  -- the things that they do that are

21   indicia of exercising discretion and judgment, there would be a

22   continuum.  It's not everyone is clustered right here.  Some

23   people are here, here, here, here.  My point is they're all

24   exempt.

25         THE COURT:  Right.  In the same way.

1        MR. GOLDEN:  In the same way.  But my factual

2   arguments and legal arguments would vary from person to person.

3   My point is, your Honor could say, Mr. Golden, I actually

4   disagree with you with this group.  This group of people I

5   actually think are nonexempt for the following reasons.  But

6   that --

7        THE COURT:  Who is that going to be?  Give me a

8   category that's even possible in your defense.

9        MR. GOLDEN:  In fairness, your Honor, I don't think

10  your Honor will reach that conclusion, but I --

11       THE COURT:  So why should I think that's a persuasive

12  argument.

13       MR. GOLDEN:  Because that's the analysis that the

14  Court will have to undertake.

15       THE COURT:  Yeah, but --

16       MR. GOLDEN:  The Court will have to look at every one

17  on that spectrum.

18       THE COURT:  Give me a scenario where in this -- give

19  me a scenario based on these facts where it would make a

20  difference.

21       MR. GOLDEN:  An individual is hired as a G-tech rep.

22  They never, never actually exercise any discretion or judgment.

23  A call comes in and they say, I can't find a written answer to

24  the particular problem that you're posing and, therefore, I

25  cannot help you.

1          THE COURT:  Okay.

2          MR. GOLDEN:  Good-bye.  That person, whom I don't

3     believe exists, but could the plaintiffs find someone among the

4     125 over the past six years?  I don't know.  But arguably that

5     person would have a claim that I was misclassified, because in

6     fact --

7          THE COURT:  No, no.  Not if the person was hired in

8     the job that you can demonstrate requires that they exercise

9     discretion; right?

10         MR. GOLDEN:  Well, but now, so that's different --

11         THE COURT:  Isn't that true?  They couldn't have that

12    argument.  They couldn't make an argument, well, I was hired in

13    a job that didn't require that, but I exercised some discretion

14    that the employer didn't require me to exercise.

15         MR. GOLDEN:  Well, if the plaintiffs are willing to

16    litigate this case based on Bloomberg's expectations, we'll

17    have a much simpler case, including a much simpler discovery

18    program.  I don't think they're willing to say we're just going

19    to base it on Bloomberg's expectation.

20         THE COURT:  No.  They're going to base it on what the

21    nature of the job was, what the job responsibilities are, what

22    people are required to do.  And they say that all every single

23    person was required to do the basic computer tech stuff that

24    everybody does.  Some people, as they say, my tech guy I tell

25    him my computer doesn't work, he comes in and he says either

1    I'm going to take it and it's going to take me six days to put

2    it in the freezer and come back and do all this fancy stuff

3    with it or he's going to say reboot.  So I could care less what

4    he says, as long as he fixes my problem, right.  And sometimes

5    they just say turn it off, turn it back on, that's it.  You

6    know, sometimes they'll say, no, this is more complicated, we

7    got to take it downstairs and our experts will take it apart

8    and, you know, we'll fix it.  You know, the question is

9    whether -- you know, I mean I'm not even sure I understand

10   totally at this point what kind of discretionary decision

11   making you say goes along with having a major account rep.  I

12   mean, I don't understand --

13            MR. GOLDEN:  Well --

14            THE COURT:  -- whether or not if the secretary calls

15   the tech person and says I got a problem, how that's different

16   than if Bill Gates calls the tech people and say I got a

17   problem.  They still got the same problem.  Bill Gates is a

18   major account, the secretary is not.

19            MR. GOLDEN:  It --

20            THE COURT:  All they got to do is fix the problem.

21            MR. GOLDEN:  It may not change the ultimate

22   conclusion.  It will be a factor though in the analysis

23   because --

24            THE COURT:  Why?

25            MR. GOLDEN:  Because --

1          THE COURT:  What difference would it make?

2          MR. GOLDEN:  Because the person who is a major account

3     rep will be proactively communicating with the client to say --

4          THE COURT:  What does that mean in terms of exercising

5     discretion?

6          MR. GOLDEN:  Going to visit them saying, hey, what

7     kind of functions are you using, what are you not?

8          THE COURT:  What is going to visit someone saying what

9     kind of function do you want, have to do with exercising

10    discretion?

11         MR. GOLDEN:  Because that is startly different than

12    the supposed commonality that Mr. Getman claims exists here,

13    which is they're all sitting in a room taking random tickets.

14         THE COURT:  I didn't hear you make that argument.  I

15    didn't hear you make the argument that the reason why I should

16    not certify the class is because we have some people who are

17    not working at the call center who are going out and, you know,

18    sitting in the office of Donald Trump trying to negotiate with

19    him how, you know, what kind of technical support he's going to

20    have.  I don't understand -- I mean, I'm just ignorant of what

21    you say --

22         MR. GOLDEN:  Your Honor, I apologize if we didn't make

23    that point clear, but we intended that to be the crux of the

24    opposition, which is an FLSA analysis requires an

25    individual-by-individual determination.

1          THE COURT:  Right.

2          MR. GOLDEN:  Each individual G-tech rep, while broadly

3     speaking, they have the same general job, they have very

4     different specific duties.

5          THE COURT:  In what way do you say it's determinative?

6     That's what I'm trying to ask.

7          MR. GOLDEN:  Because I think when the Court ultimately

8     determines whether these individuals exercise discretion and

9     judgment on matters of significance involving the general

10    business operations of the company, among the factors that I

11    think the Court might consider is, are they proactively helping

12    to manage a relationship with a particular customer.

13         THE COURT:  Give me an example of what you anticipate

14    will be the factual issue, give me an example.

15         MR. GOLDEN:  Jen Liguori's declaration.

16         THE COURT:  That he did --

17         MR. GOLDEN:  That she says part of my job was to help

18    manage our relationship with a major account.

19         THE COURT:  What does that mean?  I still --

20         MR. GOLDEN:  It means --

21         THE COURT:  Did she send him a Christmas card --

22         MR. GOLDEN:  If I could explain, your Honor.

23         THE COURT:  Right.

24         MR. GOLDEN:  It means getting to know the client,

25    getting to know their particular IT needs, getting to know the

1   particular uses that they make, getting to understand problems

2   that may arise on a recurring basis.

3          THE COURT:  Right.

4          MR. GOLDEN:  Reaching out to them saying we want to

5   tell you about a new functionality, having a point of contact

6   so that when a call comes in with a problem it's not just going

7   to a random cue, it's going to our --

8          THE COURT:  The only thing that arguably what you just

9   said is -- arguably has to do with exercising discretion saying

10  that I have a new functionality, none of that other stuff has

11  anything to do with exercising discretion inherently, does it?

12         MR. GOLDEN:  Yeah, I think it does, your Honor.

13         THE COURT:  Which part of it?  Which part of what you

14  just said is inherently -- means you're exercising discretion?

15         MR. GOLDEN:  Because if you're --

16         THE COURT:  Because I have a personal relationship

17  with you?

18         MR. GOLDEN:  If you're discussing their needs, how

19  their needs could be met, you're necessarily making judgments

20  on the fly.  You're not --

21         THE COURT:  No, you didn't say I made a judgment.  You

22  say I discussed it.

23         MR. GOLDEN:  Well, but, your Honor --

24         THE COURT:  If I discuss it on the phone what your

25  problem is and you call me at the call center, that doesn't

1  necessarily mean you're exercising discretion.  Because I

2  discussed your problems with you.  That's --

3          MR. GOLDEN:  You're offering solutions.  You're saying

4  here's how I think you can fix that problem.

5          THE COURT:  That's why they're there.

6          MR. GOLDEN:  That's not what plaintiffs are saying.

7  The plaintiffs are saying, I didn't have any discretion or

8  judgment, I just had to follow procedures.

9          THE COURT:  Right, a procedure to fix the problem.

10          MR. GOLDEN:  And that's not true, that's inaccurate.

11  But when we get to the merit stage, we're going to show that's

12  inaccurate.  It's inaccurate for person A for reasons that may

13  be different than --

14          THE COURT:  That's the part that you have not been

15  able to effectively articulate to me, why it's different for

16  one employee than the other when you say that I don't care what

17  you do, you will never get overtime because this job is such

18  that it will never give you overtime regardless of what you do.

19          MR. GOLDEN:  I think, your Honor, if someone is

20  providing responses over the phone to a random caller, I

21  believe that that person is exercising independent discretion

22  and judgment.

23          THE COURT:  That's true of everybody.

24          MR. GOLDEN:  Correct.

25          THE COURT:  All right, so then that's the commonality.

1            MR. GOLDEN:  But your Honor is presupposing that --

2     your Honor's analysis, respectfully, makes sense if ultimately

3     the Court were to say, I agree that for the reasons that

4     Bloomberg articulates with respect to this cluster of reps,

5     what they all have in common is sufficient to render them

6     exempt, then I would agree with your Honor's assessment.

7     Because you can say we don't need to worry about anything else,

8     we have the commonality that answers the question.

9            But what if your Honor says, with respect to those

10    what I'll call base line employees, I don't think they're

11    exempt.  Okay, but that still doesn't answer the exempt versus

12    nonexempt question for individuals who are not fairly

13    characterized as part of that cluster of base line employees.

14    What about the people who are way over here who are helping to

15    develop new functionalities, who are proactively managing the

16    relationship with a customer, visiting the customer -- not

17    everyone does that.  My point is, sure, if what I'll call the

18    base line employees are all -- if the Court concludes that base

19    line employees are all properly classified as exempt, okay, we

20    don't need to worry about the variations.  But I recognize that

21    the Court might disagree with that with respect to what I'll

22    call the base line employees.  But that --

23            THE COURT:  I could decertify the class if that turns

24    out to be the case.

25            MR. GOLDEN:  I'm sorry?

1          THE COURT:  I could decertify the class if that turns

2     out to be the case.

3          But what you're arguing is driven by what your

4     possible defenses, alternative defenses might be, not by what

5     the claims are that the plaintiffs have.  The plaintiffs have a

6     common claim.  Their common claim is very similar; you hired me

7     into a job category that you refused to pay me overtime, even

8     though I am legally entitled to overtime, and you do that with

9     every single person, regardless of what they do or how they do

10    it and we think that we are aggrieved in that respect.  They're

11    not here arguing that, well, I'm the only person that has the

12    this kind of job, and you told me that because what I do is

13    different than what the guy sitting next to me does, you're not

14    going to give me overtime.  That's not the nature of the issue.

15    Now, if that turns out to be the nature of the issue, then the

16    whole class will scatter.  They will have their own claim.  But

17    that's not the claim that they brought and that's not the

18    defense that you articulated, you have articulated the

19    individual defense as to any individual plaintiff that should

20    predominate over everybody.  If I decide that they -- if it is

21    decided that they don't -- that they're not entitled to

22    overtime because they are in a job which is an exempt job, then

23    that's it.  They go home.  They all go home, they all go home

24    together.  If I decide that they're not in that job category,

25    and they're denied -- they're denied the overtime even though

1   they're not in an exempt category, then you're right.  Unless

2   you come up with a different reason to deny an individual

3   plaintiff their overtime, they all win.

4           Now, you're saying I should assume that there's going

5   to be enough individual cases that we can look at that's going

6   to indicate that that particular person has a job position and

7   responsibilities that even if you were wrong in denying

8   everybody overtime because you categorically said they were all

9   exempt, that you have a secondary argument that you can show

10  this particular person is exempt and shouldn't recover,

11  shouldn't get overtime.  Well, you know, that could end up

12  being ultimately the dispute, and that could destroy their

13  clients.  But that's not the nature of the claim that they're

14  making, and that's not the nature of your primary defense.

15  Your primary defense is that, look, we didn't even bother to

16  look at any individual -- make distinctions between individual

17  employees.  We hired them and we knew that regardless of what

18  the actual work is that they're doing, that the nature of what

19  we hired them, the position in which we hired them, exempts

20  them from overtime.  That's our position, that's still our

21  position, and that continues to be our position unless you,

22  Judge, are going to tell us something different.  And even if

23  you tell us something different, we still may take that

24  position and decide we're going to the circuit and have them

25  tell you something different.

1          But your argument here is not -- well, your defense is

2     that you've lined up every one of these 125 individual

3     plaintiffs, and you have an individual argument to make -- that

4     you intend to make as to each individual plaintiff to

5     demonstrate how they're different than some other plaintiff in

6     terms of why they are exempt.  You don't say they're exempt in

7     different ways.  You say they're exempt in the same way, you

8     know.  And you say different degrees, I guess.  But you say

9     they're exempt all in the same way, because they all have the

10    same job expectation and category.

11         Now my last question really is that -- I mean this is

12    helping to discuss it this way.  My last question is, what's

13    the prejudice to you at this point?  You know, I understand you

14    want to resist it and you like to keep them down and you know

15    and it's easy for you to defend, but if you can keep it out of

16    the class.  But what's the prejudice to you in -- why are we

17    better over my not certifying this class and proceeding

18    efficiently as if the main issue is a class wide issue?  Why is

19    it more efficient for me to simply say, no, I'm not going to do

20    that; what is the prejudice that you suffer?

21         MR. GOLDEN:  Well, your Honor, with respect to Rule

22    23, a few things.  Plaintiffs will say we now want to take

23    discovery, presumably not with respect to our own situations,

24    although they know what they did, we want to take discovery

25    into 125 employees over the past six years.  Now I --

CBKZENEM                     Motion

```
1              THE COURT:  That's going to happen no matter what.
2              MR. GOLDEN:  But why, your Honor?  If there is no
3    class certified, I'm not sure --
4              THE COURT:  Because they still -- why would I deny
5    them that discovery?  You want me to -- you don't want me to
6    put off class certification, you want me to deny class
7    certification.  Do you really think I'm in the position right
8    now to categorically say that there is no way that they can
9    demonstrate --
10             MR. GOLDEN:  No, fair enough.
11             THE COURT:  -- a class at the end of discovery?
12   Because your argument is that you wanted discovery.  You know
13   better than them what --
14             MR. GOLDEN:  Fair enough.  If they want to re-move
15   again on a more complete --
16             THE COURT:  Then what's the prejudice to you?
17             MR. GOLDEN:  It's still going to be a different
18   looking discovery.
19             THE COURT:  Why?
20             MR. GOLDEN:  And separately it gets to the ultimate
21   issue --
22             THE COURT:  How is it a different looking discovery?
23   If anything, if I certify the class, it probably would be less
24   complicated discovery than if I don't certify the class because
25   then you want to start digging around trying to figure out you
```

1    can find discovery to deny certification of the class, right,

2    rather than dealing with what is clearly the substantive issue.

3           MR. GOLDEN:  Well, let me get to the ultimate issue,

4    then, your Honor, which is I think it still has the burden

5    backwards, in that I don't think the plaintiffs have satisfied

6    their burden under Rule 23, and so the Court is really saying,

7    look, I think ultimately they might get there.

8           THE COURT:  No, I'm just -- no, I'm not saying that.

9    I'm not saying that.  I'm saying that it is their burden, and

10   it's their burden here.  But I want to make sure that I am very

11   cautious to not -- to think that -- to make sure that I don't

12   make a decision that has some great prejudice to you that I

13   should consider in terms of whether or not, you know, it's

14   appropriate to make this decision now.  You know, now you say

15   this -- I think this may be different six months from now that

16   will give you a better opportunity to decide this, then you can

17   articulate it.  And then if you do it now, then you're going to

18   irreversibly preclude us from, you know, making some progress

19   in our favor if the merits are on our side, then, you know, I

20   will be much more cautious about it.  But, you know, I don't --

21   I'm not quite sure -- I mean, I want to make sure that I'm not

22   missing something.  If you're strenuously objecting to this, I

23   want to make sure that, you know, it's not just your lawyer

24   tactic.  I want to make sure that there's not something that's

25   terrible that's going to happen to you that I'm unaware of if I

1    certify this class.

2            MR. GOLDEN:  Well, your Honor, again I think that it

3    is -- certification would be inconsistent with Dukes.  I think

4    it would flip the burden, because in a sense, you know, the

5    burden would, essentially, be flipped on us in some way, shape

6    or form to move down the road to decertify.  Now, I understand

7    under the FLSA it's a different analysis, but for Rule 23

8    purposes I really think it relieves the plaintiffs of their

9    burden -- it's not ours, it's their burden -- and the Court has

10   to conduct a rigorous analysis.

11           THE COURT:  But if you say, if you're not strenuously

12   objecting to the FSLA certification as you are to Rule 23

13   certification, I mean then what's your argument that I

14   shouldn't do the FSLA certification?

15           MR. GOLDEN:  They're different standards, they're --

16           THE COURT:  No, I understand the different standards.

17   But I'm saying that the standard is not as difficult on the

18   FSLA as it is Rule 23.

19           MR. GOLDEN:  Correct.

20           THE COURT:  So I'm asking you, I'm trying to figure

21   out what your argument is.  Are you asking me not to certify

22   either or conditionally approve the FSLA and not to certify

23   Rule 23 or are you asking me to do both?

24           MR. GOLDEN:  Your Honor, I'm asking you to deny both

25   aspects of the motion.  I recognize that under the FLSA, it's a

CBKZENEM                    Motion

1    much lighter burden and --

2              THE COURT:  Right.

3              MR. GOLDEN:  And obviously I've read the cases and I

4    understand how the courts typically come out.  I think that

5    though if your Honor looks at those FLSA cases, they make clear

6    it's an entirely different standard under Rule 23 and I think

7    plaintiffs have, in effect, tried to conflate the two.  Let's

8    just go forward and see what happens.

9              THE COURT:  What's the efficiency of doing the FSLA

10   conditional approval and not doing Rule 23?

11             MR. GOLDEN:  FLSA, the notice could go out -- and by

12   the way if I could correct the record -- for the FLSA, I don't

13   that it's 125.  The 125 individuals refers to the entire six

14   year period.  So if you're -- just earlier your Honor referred

15   to, well, if we have an FLSA opt in, the most is going to be

16   125.  I think it's actually going to be fewer people because we

17   are looking at a shorter time period.  However many

18   individuals.  So if they want to send out their notice, shake

19   the trees and see how many people raise their hand and say,

20   yeah, I want to be part of this class, my prediction is it's

21   going to be a small number and we will deal with those people,

22   as opposed to having an opt out class of 125 individuals that

23   we're stuck with today on what I think is plaintiff's failure

24   to have met their burden of showing certification is warranted,

25   particularly in light of Dukes where the Court says every class

1   action counsel can identify some question in common.  That's

2   not the issue.

3           THE COURT:  Well, what's the efficiency of sending out

4   the notice now than having to send out another notice later?

5           MR. GOLDEN:  Well, first of all, I don't think the

6   plaintiffs are ever going to get there in terms of Rule 23.

7   But if you have an opt out notice going out -- I'm sorry, an

8   opt in notice going out now, so some number of individuals,

9   let's just say they say I want to be part of this case.  If

10  down the road the plaintiffs renew their motion for Rule 23 and

11  they can carry their evidentiary burden and a different notice

12  goes out to a wider group of people, I don't think anyone is

13  prejudiced there, and the case can proceed the way it ought to

14  now, which is individuals who have indicated a desire to be

15  part of this case.  And right now, as far as I know, we're

16  talking about four people, and it hasn't been for lack of

17  plaintiff's counsel trying, we'll deal with the facts as

18  opposed to hypotheticals.

19          THE COURT:  Okay, all right.  Thanks.

20          MR. GOLDEN:  Thank you, Judge.

21          THE COURT:  Let Mr. Getman respond.  Mr. Getman.

22          MR. GETMAN:  Your Honor, under the defendant's

23  argument, because they've asserted a defense, there could never

24  be a class.  I've been doing FLSA cases for about I think now

25  25 years, and I've never seen a FLSA answer that did not have

1    some kind of defenses.  Under their argument, you would never

2    be able to certify a class because the FLSA defenses are

3    purportedly individual.

4             That totally misunderstands the standard for Rule 23.

5    And I think exactly the difficulty that I was hearing your

6    Honor raise, that the defendant was not getting, is that the

7    question here on Rule 23 is are there common claims and are

8    there common defenses.  And clearly, clearly there's a common

9    defense.  That defense is the administrative defense that they

10   say applies to everyone in the class.  That is now a

11   commonality.  They've established the commonality.  That's only

12   one of the common elements.  As your Honor points out, there

13   are also common claims with respect to the defendant's

14   policies.

15            This is not Dukes where there were multiple issues

16   that were necessary to show whether discrimination had occurred

17   in thousands of work sites across the country.  The plaintiffs

18   in Dukes could point to no common policies that were at issue.

19   Here we have pointed to the common policies.  Those are common

20   pay practices across the board, a common defense, a common

21   determination that nobody gets overtime.

22            Here we're not flipping the burden.  The burden is,

23   are there common claims and are there common defenses.  Your

24   Honor asked the defendants, is there some harm here if I grant

25   certification.  In fact, there's a common benefit here, and

1     it's the very benefit that Rule 23 is designed to get at.  If

2     we do a FLSA case for individuals only, and it comes out

3     against us, new people get to come in and raise FLSA claims and

4     say I'm in a different boat, I get to do different -- I have

5     different claims, I get a different Judge, I get a different

6     jury possibly, I get -- I handle it differently, and maybe they

7     win.  And maybe we have 20 such cases, maybe we have five

8     cases, maybe we have 125 cases.

9           The point here, and I would think that the benefit to

10    the defendant outweighs the harm here.  And the benefit is, we

11    all rise together, we all fall together.  And if the defendants

12    got the lock step defense it thinks it's got, great.  And it

13    benefits by a class ruling, which is then preclusive to all of

14    those individuals.

15          The practical concerns for litigation about beating

16    the plaintiffs at this stage and maybe picking off the named

17    plaintiffs or something like that, to try to resolve it, the

18    point here is that the common benefit to the court system, to

19    the parties and to the goals of FLSA, which are all that all

20    individuals who are entitled to overtime receive overtime.

21          THE COURT:  Isn't that -- I mean, that's a

22    determination that I can make at any point.  As a matter of

23    fact, in most cases it ends up being the -- if there is a

24    settlement in this case or a judgment in this case, it ends up

25    being the defendant who bears the cost of notifying all the

1      class members and indicating that they have a right to recover.

2      Why is that such a -- there is such an urgency under Rule 23 at

3      this point to make that determination?

4              MR. GETMAN:  It's not an urgency -- I mean, there are

5      lots and lots of cases out there that suggest that the

6      plaintiff's job is to move for class certification as soon as

7      they can do that.  And we have complied with that because we

8      have identified common claims and common defenses which they

9      have actually supported here by fully fleshing out the common

10     defense applicable to everyone.  And that's what your Honor and

11     Mr. Golden have been discussing for the last hour.  There is a

12     common defense to everyone.  They talk about variability within

13     that, but there is a common defense, and they've asserted it

14     and they've explained it thoroughly here today.

15             The Second Circuit says, and the district courts often

16     highlight that language, that in the second circuit class

17     actions are favored devices for resolving efficiently all

18     claims, rather than encouraging sporadic and fragmented

19     litigation that uses up the Court's time, that uses up

20     litigants' time, that runs up attorney bills with respect to

21     each claim.

22             The class action device exists because there is

23     efficiency.  And particularly here the nature of modern

24     business I think really, this underlies the rise of class

25     actions and the rise of corporate America where you have vast

1   scales of behaviors which are done the same way with respect to

2   large groups of people.  It has to be done as a class action,

3   or we're left with piecemeal litigation, we're left with a

4   terrific amount of time.  I could handle an individual FSLA

5   case for not a lot less time than it takes to handle the class.

6   That doesn't benefit my clients, it certainty doesn't benefit

7   the group who has the problem here, and it doesn't benefit the

8   Court system and, ultimately, it doesn't benefit the

9   defendants.  Thank you.

10            THE COURT:  This is what I'm -- did you want to --

11            MR. GOLDEN:  May I just very briefly, your Honor?  Two

12   things.

13            First, with respect to the Bloomberg employees who are

14   supposedly benefited, who would benefit by Rule 23, I can tell

15   you that there are a number of G-tech reps who would say I do

16   not want to rise and fall based on the named plaintiffs.  And I

17   don't mean to disparage them, but they do not want to be --

18            THE COURT:  They always have the opportunity to opt

19   out.

20            MR. GOLDEN:  But they also could have the opportunity

21   under the FLSA and all of the policy considerations to which

22   Mr. Getman points would be fully satisfied by an FSLA opt in

23   class, if people want to be part of this, if they think they've

24   been aggrieved, they know what their job is.  If they think in

25   any way, shape or form they've been treated unfairly, they can

1    raise their hand and say I want to be part of this class.

2            And the last thing, and I know Mr. Getman is eager to

3    interrupt as he has been at various points, but the last thing

4    I would like to say is if your Honor reads Judge McMahon's

5    decision in Romero, which is at 212 Westlaw 1514810, Judge

6    McMahon says, after Dukes the fact that plaintiffs came up with

7    a list of common questions is no longer sufficient.  The issue

8    is whether the common questions predominate other the

9    individual ones.  And in Romero Judge, as various other courts

10   in this circuit have held, with respect to the applicability of

11   exemptions, the Court has to do an individualized determination

12   as to what each putative class member does and that defeats

13   Rule 23.

14           THE COURT:  All right.

15           MR. GETMAN:  Judge, lastly, just on Romero, Romero

16   involved nearly a dozen job titles.  Let me just read you some

17   of them.  Service managers, mechanics, service writers,

18   porters, cashiers, parts counter persons, receptionists,

19   salespersons, general sales managers, assistant sales managers,

20   finance managers, office managers, inventory managers.

21           THE COURT:  Slow down.

22           MR. GETMAN:  They worked in six different locations,

23   and some of them received overtime, I believe.

24           THE COURT:  This is what I'm going to do, I think

25   that -- I think the plaintiff, you know, has demonstrated that

1    there is -- that the conditional certification as to if there

2    is a collective action for the class, is appropriate.  I think

3    that the plaintiff has demonstrated that those, the claims

4    under FLSA are, on this record, the kind of questions for all

5    of those plaintiffs.  So I think that that demonstration has

6    been made under the FLSA claim of action standard.

7            With regard to the Rule 23 class certification, I'm

8    going to deny that without prejudice.  I think that there is

9    still some question -- although, quite frankly, I don't think

10   significant question -- but there's still some question as to

11   whether the common questions predominate over the individual

12   questions.  I've heard the nature of the defendant's arguments

13   with regard to that.  I don't have a great deal of confidence

14   that the nature of the issue, as it quickly starts to focus as

15   the discovery proceeds, that the -- it really is going to

16   appear that the nature of the individual, questions with regard

17   to individual plaintiffs will predominate over the common

18   questions.  I think the common questions are demonstrated with

19   regard to the FLSA claim.  I think the appropriate thing

20   clearly is to notify all the potential FLSA, preserve their

21   rights and notify all of the potential plaintiffs that they

22   have an opportunity to opt in.  I don't think that that is

23   going to -- I think it's appropriate.  I think it's appropriate

24   under -- I don't think reserving the -- putting off the

25   decision or making a decision later as to whether or not Rule

CBKZENEM                    Motion

1    23 class certification is appropriate prejudices either party.

2    I think this case will proceed as a collective action.  If it

3    turns out that at an appropriate time that the Rule 23

4    certification is renewed, and if it's appropriate in light of

5    the facts that are being developed in discovery, go ahead and

6    prove that.  Then I think that the appropriate time to do that,

7    in any event, I think the critical thing is particularly since

8    it's going to proceed as a collective action, is to at least

9    notify people of the nature of this lawsuit, indicate that they

10   have rights, if they want to participate -- FLSA rights.  I

11   think that it's appropriate if the plaintiff wants to renew the

12   application under Rule 23, once some discovery has been done

13   and the issues have become clear as to the clear commonality or

14   in actual distinctions that the defendant can really draw with

15   regard to its defense, I think it's appropriate to renew it at

16   that time, and to certify that class, if appropriate, on that

17   appropriate record.

18        Furthermore, I think that the Rule 23 class

19   certification may not end up being of great significance,

20   unless and until this case is either settled or resolved in

21   plaintiff's favor by summary judgment or trial, if that is what

22   occurred at that time.

23        If the defendant is determined to be liable under FLSA

24   to the opt in plaintiffs, it's very likely that a determination

25   will also be made that they're liable to a class.  Otherwise,

1    they have rights as class members rather than opt in members

2    that could preserve and can be at the appropriate time, those

3    individuals can be notified not only of a potential claim, but

4    of a successful claim.

5          I think the FLSA notification is sufficient to notify

6    most of the class, the opt in class, whoever that appropriately

7    is, that they have a claim.  I think that at a later

8    proceeding, point in this proceeding, we can determine whether

9    or not others who are not opt in plaintiffs, who may or may not

10   have been -- received original notice, whether they want to

11   participate to the extent that they want to make a claim if

12   there is a judgment obtained or settlement obtained by the

13   plaintiff against the defendant.  So I think that that issue on

14   this record is a closer question.  And I find that given the

15   arguments that are made by the defense -- although I don't have

16   a great deal of confidence that discovery is going to

17   ultimately allow them to somehow have an individual defense

18   against 125 individuals who have all different circumstances, I

19   think that, you know, it is likely that the nature of the

20   progress of discovery will quickly indicate that the sole, the

21   primary, if not the sole issue, will be whether or not all of

22   these individuals who are similarly situated are either exempt

23   or not exempt as a class of individuals.  But not having any

24   more specific indication that there is a set of individual

25   plaintiffs whose individual questions would predominate over

1    the common questions under Rule 23, I think it's appropriate to

2    defer the determination of certification of Rule 23 class until

3    later in the litigation and, at the latest, to do so and send

4    out notice upon either a settlement or a judgment obtained in

5    plaintiff's favor, and make that judgment applicable to the

6    entire class.

7              So I think that you should refashion the notice, send

8    out the rule -- FLSA opt in notice to the potential class of

9    opt in plaintiffs, and then start moving forward with

10   discovery.  And if at an appropriate time we can discuss

11   further the Rule 23 class certification based on some sampling

12   of what could possibly be individual claims and whether or not

13   there is a realistic argument not in the abstract to be made

14   that somehow there are individual claims that predominate, then

15   if it becomes clear that that will not be the case, I would

16   consider certifying the class at that point and we can send out

17   the appropriate additional notices.  But as I say it could turn

18   out that the case by settlement or by judgment is the

19   appropriate time to send out the notice, not just of a

20   potential claim, but of an actual claim, that those who wish to

21   take advantage of, can take advantage of in terms of

22   participating in a settlement or a judgment, or deciding to opt

23   out and pursue their own potential claims if they wish to do

24   so.

25             So the defendant should do what's necessary to either

```
 1    help the plaintiff to send out the notifications or give them

 2    the specific independent information so they can independently

 3    reach out to the FLSA opt in plaintiffs, potential plaintiffs,

 4    and notify the group of the potential claims.

 5           MR. GETMAN:  Your Honor, if I may, a couple of

 6    somewhat thorny issues result from this splitting.  One is the

 7    notice form.  We submitted a proposed notice form.  Defendants

 8    did not object to that form.  However, they never agreed to

 9    tolling of the Statute of Limitations with respect to the FLSA

10    class.  So every bit of delay benefits the defendants because

11    they don't have to pay, because claims expire until an

12    individual files a consent to sue in a FLSA.

13           THE COURT:  But that doesn't change -- I didn't see

14    how what I just said changed --

15           MR. GETMAN:  The change is this.  If we can strip out

16    the Rule 23 aspects of the notice and if we can get this out

17    promptly --

18           THE COURT:  Right.

19           MR. GETMAN:  -- then there is a minimal amount of

20    prejudice to the individuals in getting out the notice.

21           THE COURT:  I --

22           MR. GETMAN:  If I have to submit that form to the

23    defendants, they want two weeks to review it, but they never

24    will agree -- I've had it happen over and over, we have to come

25    back to the Court, we have to do motion practice, we have to
```

CBKZENEM                    Motion

1    get the notice out two months from now.  Now two months' worth

2    of claims have expired.

3              THE COURT:  How quickly will you be prepared to send

4    out notice?

5              MR. GETMAN:  I will get the notice out to the

6    defendants by -- tomorrow's Wednesday -- we'll have that notice

7    to the defendants by Wednesday.  If they can have a response by

8    Monday and we can get it to the Court, if there is any dispute

9    with our respective versions on Monday and the Court's willing

10   to look at it quickly.  My concern is only that people are

11   losing their claims.

12             MR. GOLDEN:  That's --

13             MR. GETMAN:  Unless they're willing to toll the

14   limitations here.

15             THE COURT:  Well, look, my attitude at this point is

16   as long as you take out the Rule 23 notice part, then -- I

17   looked at your notice, I don't see any problems with your

18   notice.  If they have some problem, they know what the notice

19   is, unless you're going to change it significantly.

20             MR. GETMAN:  No change.

21             MR. GOLDEN:  Your Honor, I think we would --

22             THE COURT:  They should let you know -- if there is a

23   dispute about it, then let me know on Monday, I'll be here all

24   next week.  I'll act on it as quickly as possible.

25             MR. GOLDEN:  I don't expect to --

1           THE COURT:  Right away, the day I get it.

2           MR. GOLDEN:  I don't expect there will be, your Honor.

3      If they strip out everything on the state law side, based on

4      what we've seen already, I think will be fine and we will

5      respond promptly.

6           MR. GETMAN:  The only one aspect that I would propose

7      to change, and I raise it because I realize in looking at it

8      that through some computer error there is a -- in every

9      standard notice form, there is a statement that says

10     retaliation for participation in the case is forbidden.  And

11     somehow we ommitted that in our proposal, and I assume there is

12     no --

13          MR. GOLDEN:  Again, I would want to see the language,

14     but in concept --

15          MR. GETMAN:  We'll have that to you by tomorrow.

16          THE COURT:  Unless you have something out of the

17     ordinary.

18          MR. GETMAN:  No.

19          THE COURT:  The common language that in how you want

20     to display, just make sure you have an understanding then.  And

21     there is no reason why there should be any delay at all in

22     terms of your moving forward as you had originally planned.

23          MR. GETMAN:  Very good.

24          The second issue has to do with discovery.  And we

25     served discovery immediately in this case.  We have gotten

1   sequential objections, negotiation that don't get raised.  We

2   just got, I believe two days ago, a proposed confidentiality

3   order.  Now suddenly -- now suddenly that's got to be

4   negotiated.  I have seen over and over in my litigation

5   practice that the defendant's strategy is to provide the

6   critical documents just before trial.  In this instance I have

7   a real need, based on your Honor's ruling, to obtain the basic

8   discovery that will go to the class, and that is going to be

9   all the job descriptions, any internal audits with respect to

10  whether this is or isn't exempt, any individual complaints and

11  responses.

12          THE COURT:  Have you already generated those requests?

13          MR. GETMAN:  We have already requested that

14  information, and the defendants now have an incentive to delay

15  provision of that information until just before trial.

16          THE COURT:  They may have an incentive, but they don't

17  have an opportunity.  So I suggest that you look at the

18  confidentiality order.

19          MR. GETMAN:  I will do that.

20          THE COURT:  And if you agree with it, you get right

21  back to them immediately.  I expect both sides to respond to

22  any outstanding document request within 30 days, all right.  I

23  expect it to be done immediately with no -- clearly within 30

24  days, whatever is already outstanding.  And I expect you to go

25  ahead and start scheduling depositions for as early as 30 to 60

1   days out, after that first 30 days exchange of documents, then

2   another 30 to 45 days I expect you to be scheduling

3   depositions.  Unless two of you could come up with a different

4   schedule that you can both agree to, I expect that's the way it

5   should efficiently proceed.  So even if there's disputes about

6   the confidentiality order, I expect both sides to go ahead and

7   start preparing the production they know is appropriate within

8   that 30 day period.  If it takes, you know, some time, days or

9   weeks, so agree upon the confidentiality order, that's not

10  going to put it back the obligation to respond immediately

11  within 30 days, even if the confidentiality order is not signed

12  till the 29th day.  You should get those documents together, be

13  ready to produce.  If there is a genuine dispute about what's

14  being asked for and what's being refused, then give me a letter

15  right away.  I expect if you're going to refuse to produce

16  documents, I expect you to give that refusal in 20 days, all

17  right.  I want the actual documents in the hands of the other

18  side 30 days.  But if you have some objection to producing some

19  documents and you refuse, you should notify them within 20

20  days, and then the other side can make whatever argument they

21  want to make to me by letter application why you should be

22  compelled to turn it over, and you could make a response by

23  letter why you should be entitled to withhold.  So you can move

24  to do --

25           MR. GETMAN:  Your Honor, if we could have the

1   discovery exchanged subject to the confidentiality order

2   however -- whatever form it ultimately takes, then the

3   documents can actually be provided.

4            THE COURT:  Well, it seems to me that there is no

5   reason why you can't look at their proposed confidentiality

6   order, figure out whether or not that's -- immediately whether

7   that's something you want to sign in that form or propose

8   something different.  I think it is appropriate.  I've already

9   indicated that you have -- you're going to have 29 days to

10  agree upon that.  If you can't agree upon the confidentiality

11  order within the next 20 days, then you should propose your --

12  each one of you should propose the language that you say is in

13  dispute and how you say it should be resolved to me and I'll

14  immediately resolve that, so that 30 day delay you can get your

15  documents, all right.  So there is nothing that I anticipate

16  that should -- I would hope production would be done even

17  sooner, but there's nothing I anticipate that can't be done to

18  ensure that document production is done within 30 days of

19  today.

20            I will also schedule a conference after document

21  production next month and depositions in January or February.

22  Why don't I schedule a conference for say February 27th at

23  10:00 o'clock, and we'll see if we need that conference and see

24  where we are at that point in time.  If we need to meet before

25  then, let me know.  But otherwise if you have a genuine

1    dispute, giver it to me by letter so I can resolve that and we

2    can keep moving forward efficiently.  And then at the

3    appropriate time renew your Rule 23 application.  Obviously if

4    it appears you might be able to settle this case, and you can

5    wrap that up into a settlement, then do it that way.  But

6    otherwise make your own judgment about when you think it is

7    appropriate to renew it.  But I want it renewed at the

8    appropriate time when we can talk specifically about the facts

9    as they've been uncovered or beginning to be uncovered in

10   discovery that would either support or detract from the

11   defendant's argument that somehow there are individual issues

12   that are really going to predominate in this case.

13           MR. GETMAN:  And I take it when your Honor says

14   without prejudice to the plaintiffs, that means that there is

15   no prejudice with respect to the Statute of Limitations with

16   respect to the class claims, because those would be --

17           THE COURT:  I'm not sure why there would be any --

18           MR. GETMAN:  Well --

19           THE COURT:  -- statute of Limitations issue if I

20   specified --

21           MR. GETMAN:  If it's certified, that would relate back

22   to the filing of the complaint.

23           THE COURT:  Right.  So I don't think that's an issue

24   with regard to Rule 23.

25           All right, so that's the way we'll proceed, okay.  So

CBKZENEM                          Motion

1   I'll seen you February.  See if you can efficiently move along,

2   all right.

3            MR. GETMAN:  Thank you, your Honor.

4            MR. GOLDEN:  Thank you, Judge.

5            THE COURT:  You're welcome.

6            (Adjourned to February 27, 2013 at 10:00 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25