UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER ENEA, VICTOR MCLEAN, CHANTAY
DINGLE-EL, KENNY ALTIDOR, individually
and on behalf of others similarly situated,

                              Plaintiffs,

              v.

BLOOMBERG L.P.,

                              Defendant.

---

Case No. 12-CV-04656 (GBD)(FM)

DEFENDANT BLOOMBERG L.P.'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ANSWERS TO DEPOSITION
QUESTIONS AND DOCUMENTS

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

PROCEDURAL HISTORY.................................................................................................2

STATEMENT OF FACTS ..................................................................................................4

     I.      Reviews of Bloomberg's Wage and Hour Policies.................................................4

     II.     Discovery Between the Parties in this Case............................................................7

          A.     Document Productions Relevant to this Motion.........................................8

          B.     Testimony From Counsel..........................................................................10

          C.     Plaintiffs' Renewed Motion to Compel ...................................................11

LEGAL ARGUMENT.......................................................................................................12

     I.      The Court Already Has Decided This Issue in Favor of Bloomberg and
          Plaintiffs' Motion to Compel is Untimely, Without Merit and Seeks The
          Wrong Remedy. ....................................................................................................12

     II.     Bloomberg Should Not be Forced to Abandon its Good Faith Defense...............15

          A.     Assertion of the Good Faith Defense Does Not Necessarily Waive
               Privilege. ...................................................................................................15

          B.     Bloomberg's Good Faith Defense Does Not Place Legal Advice
               "At Issue.".................................................................................................17

     III.    Bloomberg Should Not be Forced to Abandon its Denial of Plaintiffs'
          Allegation of Willfulness. ....................................................................................18

     IV.    There Has Been No Selective Disclosure of Privileged Communications
          Because Bloomberg's Witnesses Have Only Testified About Non-
          Privileged Communications...................................................................................19

     V.     Bloomberg's In-House Counsel's Work Product Should Not Be Disclosed.........22

          A.     Documents Prepared by Bloomberg's In-House Counsel are
               Protected by the Work Product Doctrine. ..................................................22

          B.     Plaintiffs Have Made No Showing That Entitles Them to Either
               Opinion or Fact Work Product..................................................................24

CONCLUSION..................................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                         **PAGE(S)**

*Aiossa v. Bank of Am. N.A.*,
No. 10-CV-01275, 2011 WL 4026902 (E.D.N.Y. Sept. 12 2011) ................................... 19

*Arista Records LLC v. Lime Group LLC*,
No. 06 Civ. 5936, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) .................................... 16

*Bituminous Cas. Corp. v. Tonka Corp.*,
140 F.R.D. 381 (D. Minn. 1992) .................................................................................... 24

*Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*,
No. 00 Civ. 9212, 2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002) ................................... 19

*Brackett v. St. Louis Board of Police Commissioners*,
No. 4:12-cv-898, 2014 WL 3451197 (E.D. Mo. July 15, 2014) ............................... 15, 17

*Caidor v. Onondaga Cnty.*,
517 F.3d 601 (2d Cir. 2008) ........................................................................................... 12

*Chase Manhattan Bank N.A. v. Drysdale Secs. Corp.*,
587 F. Supp. 57 (S.D.N.Y. 1984) ................................................................................... 18

*Clay v. City of Winona*,
753 F. Supp. 624 (N.D. Miss. 1990) ............................................................................... 17

*In re Cnty. of Erie*,
546 F.3d 222 (2d Cir. 2008) ...................................................................................... 15, 17

*Garrett v. Metro. Life Ins. Co.*,
No. 95 Civ. 2406, 1996 WL 325725 (S.D.N.Y. June 12, 1996) ..................................... 23

*Green v. Beer*,
No. 06 Civ. 4156, 2010 WL 2653650 (S.D.N.Y. July 2, 2010) ..................................... 18

*Harter v. CPS Sec. (USA) Inc.*,
No. 2:12-CV-00084, 2013 U.S Dist. LEX. 156496 (D. Nev. Oct. 30, 2013) ................. 17

*Henry v. Quicken Loans, Inc.*,
263 F.R.D. 458 (E.D. Mich. 2008) ................................................................................. 15

*Hickman v. Taylor*,
329 U.S. 495 (1947) ........................................................................................................ 22

*Intellectual Prop. Watch v. U.S. Trade Representative,*
No. 13 Civ 895, 2014 WL 852168 (S.D.N.Y. Jan. 31, 2004)....................................12, 13

*John De Co. v. United States,*
350 F.3d 299 (2d Cir. 2003)...........................................................................................14

*Johnson v. Holder,*
564 F.3d 95 (2d Cir. 2009)..............................................................................................13

*Martin v. Bally's Park Place Hotel & Casino,*
983 F.2d 1252 (3d Cir. 1993)..........................................................................................24

*Martin v. Monfort,*
150 F.R.D. 172 (D. Colo. 1993) .....................................................................................23

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC,*
09 Civ. 3255, 2012 WL 2568972 (S.D.N.Y. July 3, 2012) .............................................16

*In re Processed Egg Prods. Antitrust Litig.,*
No. 08-md-02002, 2014 WL 6388436 (E.D. Pa. Nov. 17, 2014)....................................18

*Ramirez v. Garage Mgmt Co. LLC,*
No. 09 Civ. 9325, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012)....................................18

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,*
273 F.R.D. 367 (S.D.N.Y. 2010) ..............................................................................20, 21

*Reich v. Southern New England Telecom.Corp.,*
121 F.3d 58 (2d Cir. 1997)......................................................................................16, 17

*Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.), Inc.,*
111 F.R.D. 76 (S.D.N.Y. 1986) ................................................................................19, 22

*Strougo v. BEA Assocs.,*
199 F.R.D. 515 (S.D.N.Y. 2001) ........................................................................22, 23, 25

*Suss v. MSX Int'l Eng'g Servs., Inc.,*
212 F.R.D. 159 (S.D.N.Y. 2002) ....................................................................................23

*Szulik v. State St. Bank & Trust Co.,*
No. 12 Civ. 10018, 2014 WL 3942934 (D. Mass. Aug. 11, 2014)..................................24

*United States v. Adlman,*
134 F.3d 1194 (2d Cir. 1998).............................................................................22, 23, 24

*United States v. Bilzerian,*
926 F.2d 1285 (2d Cir. 1991)..........................................................................................16

*United States v. Davis,*
  131 F.R.D. 391 (S.D.N.Y. 1990) ................................................................................ 19

*United States v. Int'l Longshoremen's Ass'n,*
  No. 05-cv-3212, 2006 WL 2014093 (E.D.N.Y. July 18, 2006)........................................ 9

*United States v. Nobles,*
  422 U.S. 225 (1975)................................................................................................13, 14

*Urban Box Office Network, Inc. v. Interfase Managers, L.P.,*
  No. 01 Civ. 8854, 2006 WL 1004472 (S.D.N.Y. Apr. 17, 2006).................................... 22

*Wang v. Hearst Corp.*
  No. 12-cv-793, 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012) .................................. 16, 18

## **Rules & Statutes**

Fed. R. Civ. P. 26(b)(3)............................................................................................... 22

Fed. R. Civ. P. 72 ........................................................................................................12

Bloomberg L.P. ("Bloomberg" or "the Company") respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Compel Answers to Deposition Questions and Documents (the "Motion to Compel" or "Brief").

## INTRODUCTION

Plaintiffs completely disregard the Court's prior ruling, legal precedent, and the facts of this case and ask the Court to grant them extraordinary relief that it already considered and rejected. Plaintiffs seek an order compelling the production of privileged documents and information that may relate in any way to Bloomberg's legal advice and analyses from counsel regarding overtime compensation, including advice given in connection with this lawsuit, even though Bloomberg does not intend to rely on advice of counsel or put advice of counsel at issue in its assertion of the good faith defense and its denial of Plaintiffs' willfulness claim under the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). Plaintiffs fall far short of their burden and, in any event, blatantly overreach by seeking production of privileged materials.

In their Motion to Compel, Plaintiffs improperly rehash a series of arguments that a good faith defense must result in a waiver, with no acknowledgement of the fact that the Court already ruled against Plaintiffs on this threshold issue. In July 2014, the Court denied Plaintiffs' prior motion to compel and found that Bloomberg simultaneously could assert both privilege and a good faith defense and defense against willfulness. In particular, the Court held that assertion of the privilege was not undermined by Bloomberg's intention to rely on the results of an investigation by the Department of Labor ("DOL") into Bloomberg's overtime practices for all Company positions, and on the DOL's decision to have Bloomberg reclassify 30 positions – but not the GTEC position at issue in this lawsuit.

1

Plaintiffs have not put forth any new facts or law that should cause the Court to make Bloomberg abandon any of its defenses in order to maintain its privilege. Plaintiffs' only new argument in their renewed Motion to Compel is that Bloomberg selectively waived privilege by permitting testimony that outside counsel relayed to Bloomberg's in-house counsel a statement by the DOL investigator that Bloomberg's self-audit results were "right on the money." But the case law makes clear (and the Court has agreed) that statements of counsel to a client relaying conversations with a third party – without more – are not privileged. Despite Plaintiffs' counsel's written assurance that they would not rely on testimony about non-privileged facts to argue waiver, Plaintiffs now do exactly that to no avail.

Bloomberg has not made any express or implied waiver of privilege. The Company has made clear that it intends to rely on something other than legal advice to support its good faith defense. Moreover, because Plaintiffs bear the burden of proving willfulness, Bloomberg cannot be said to have waived privilege merely by defending against the willfulness allegation and holding Plaintiffs to their burden. As such, no lines have been crossed and the Court's prior ruling that Bloomberg's defenses are compatible with its continued assertion of privilege should remain the law of the case. In addition, Plaintiffs have made no showing entitling them to the opinion or fact work product of Bloomberg's in-house attorney created in response to the DOL investigation. Plaintiffs' motion to compel should be denied in full.

## PROCEDURAL HISTORY

In June 2012, Plaintiffs, four former Bloomberg employees, commenced this class action under the FLSA and the NYLL alleging that Bloomberg failed to pay overtime to GTEC Representatives. In July 2013, after Bloomberg produced in discovery communications with the DOL relating to the GTEC Representative position, the parties appeared for a conference before

2

this Court to address, among other things, Plaintiffs' request for a broader production of documents relating to the DOL investigation. The Court ordered Bloomberg to produce communications with the DOL concerning the other "call center" positions (as Plaintiffs have repeatedly characterized GTEC Representatives, along with GCUS Representatives and Service Desk Representatives), and Bloomberg did so in August 2013.  (Ex. Q[1] (ECF No. 43).)

On July 21, 2014, Plaintiffs filed a motion and subsequently a letter with the Court requesting a discovery conference, arguing that Bloomberg had waived the attorney-client privilege through its assertion of good faith and denial of willfulness, and seeking to compel the production of documents and deposition testimony (the "First Request to Compel").  (Exs. A, B (ECF Nos. 80, 84).)  Bloomberg responded to Plaintiffs' First Request to Compel on July 24, 2014, and Plaintiffs submitted a reply on July 29, 2014.  (Exs. C, D (ECF Nos. 85, 86).)  The parties appeared for a telephonic conference with the Court on July 30, 2014.  The Court heard argument and denied Plaintiffs' First Request to Compel.  (Ex. E (July 30, 2014 Tr. at 2:25-8:9).)  The Court held that the good faith defense is compatible with the assertion of privilege where, as here, the defense relied on something other than legal advice.  (*Id.* at 7:21-8:9.)

Discovery was extended until October 17, 2014, primarily to allow the parties to complete depositions.  (Ex. F (ECF No. 91).)  On October 28, 2014, the parties again appeared for a telephonic conference before Your Honor, during which they addressed certain privilege issues, including ground rules for the deposition of Thomas Golden, a litigation partner at Willkie Farr & Gallagher LLP ("Willkie") and counsel of record for Bloomberg in this case. During that conference, the Court agreed with Bloomberg that quotations or plain summaries of

---

[1] Citations to "Ex. __" refer to exhibits to the Declaration of Deirdre N. Hykal, dated December 15, 2014 and submitted herewith.

3

communications from third parties that are relayed by counsel to his client would be appropriate,

non-privileged topics of questioning, but characterizations of or legal advice regarding such

communications would be privileged. The Court also indicated that a question asking whether

legal advice on exemption status had been followed would invade the privilege in this case, as

even a "yes" or "no" answer would reveal the underlying advice.[2]  Plaintiffs' current Motion to

Compel further testimony is at odds with the Court's guidance and rulings on these issues.

Plaintiffs also ask the Court to revisit its decision that the good faith defense is not incompatible

with the privilege, without presenting new facts or law to warrant reconsideration or a different

result.

## STATEMENT OF FACTS

I.    Reviews of Bloomberg's Wage and Hour Policies

   *1.   Bloomberg Is Advised By Counsel On Wage-and Hour Issues.*

From at least 2006 to the present, Bloomberg has received legal advice from

Willkie, Jones Day, and Fox Rothschild regarding employment law matters, including

compliance with wage-and-hour laws and, at times, compliance with regard to specific job

positions at Bloomberg.  (Ex. G (Asman Tr.) at 66:22-67:7; Ex. H (Oct. 31, 2014 Golden Tr.) at

9:8-12, 62:2-10.)  Beginning in 2008, Bloomberg also received legal advice on these subjects

from in-house employment counsel, Matthew Asman.  (Ex. G at 10:10-17.)  Though Mr. Golden

at his deposition could not recall if the GTEC position was the subject of specific legal advice

provided to Bloomberg prior to 2010, Bloomberg obtained legal advice with regard to the GTEC

position after the DOL began its investigation in July 2010.  (Ex. H at 56:24-57:18, 67:7-24.)

---

[2] Transcripts of the July 2013 or October 28, 2014 conferences with the Court are not available.

In late 2008, shortly after joining Bloomberg as in-house counsel, Mr. Asman began an analysis of wage-and-hour practices for Bloomberg's employees located in the United States. (Ex. G at 44:2-23.) None of the privileged materials created in connection with Mr. Asman's initial review are the subject of a specific challenge in Plaintiff's Motion. Mr. Asman created or obtained all of the materials underlying the privilege log entries that Plaintiffs now seek to compel in or after July 2010 in response to the DOL's investigation into the Company's overtime practices.[3] (Asman Decl. ¶8)

### 2. The Department of Labor Investigation

On July 19, 2010, the DOL informed Bloomberg that it was investigating Bloomberg's payroll analyst position. (Ex. K (July 19, 2010 Letter); Ex. G at 90:11-25.) Shortly thereafter, the DOL expanded its investigation to include Bloomberg's wage-and-hour practices for the Company's entire U.S. workforce. (Ex. G at 90:11-25.)

The DOL required Bloomberg to provide job descriptions and bases for asserting exemptions as to every job in the Company. (Id. at 90:16-91:16.) Bloomberg worked with Willkie to prepare a job description and exemption chart for review by the DOL investigators. (Id. at 117:25-120:4.) Counsel drafted the job descriptions contained in the chart based on multiple sources, including job postings created by the Company and interviews with Bloomberg employees. (Id. at 134:6-19.) The charts that Bloomberg gave the DOL between August 2010 and February 2011 contained job descriptions for each of its more than 400 positions, including

---

[3] Plaintiffs appear to challenge 23 entries: No. 51 on Bloomberg's October 8, 2014 Privilege Log and Nos. 24, 29, 31, 37, 38, 41, 51, 57, 61, 69, 75, 79, 81, 82, 83, 86, 87, 94, 95, 96, 99, and 103 on Bloomberg's November 15, 2014 Privilege Log. (Br. at 22; Ex. P (Oct. 8, 2014 Privilege Log); Ex. J (Nov. 15, 2014 Privilege Log).) Bloomberg has corrected its November 15, 2014 privilege log to reflect the production of documents underlying No. 79 (Ex. J; Asman Decl. ¶10), thus leaving 22 privilege log entries at issue between the parties.

5

GTEC Representatives. (*Id.* at 90:19-91:16.) Mr. Asman testified to the accuracy of the job description for GTEC, and Plaintiffs do not point to a single inaccuracy. (*Id.* at 124:24-125:3.)

After receiving the list of job descriptions and exemptions, the DOL then conducted a number of on-site interviews with Bloomberg employees in July 2011. (*Id.* at 91:17-22.) Following those interviews, the DOL met with Bloomberg's in-house and outside counsel in August 2011. (*Id.* at 91:23-25.) During the meeting, the DOL informed Bloomberg that it had concluded that at least six of Bloomberg's job positions were eligible for overtime compensation. (*Id.* at 91:23-92:14, 136:22-138:2.) The DOL then requested that Bloomberg conduct a self-audit and further analyze all of its job positions to assess which other employees may be eligible for overtime under the provisions of the FLSA. (*Id.* at 136:22-138:2.)

On October 28, 2011, Bloomberg provided the DOL with a list of 30 positions it was willing to consider reclassifying as non-exempt from overtime compensation as part of an overall resolution of the DOL's investigation. (Ex. L (Oct. 28, 2011 E-mail).) GTEC was not one of those 30 positions. On November 16, 2011, the DOL told Willkie that Bloomberg's list regarding the 30 positions to reclassify appeared to be "right on the money." (Ex. H at 124:5-14; Ex. G at 158:11-17.) Mr. Golden relayed this comment to Mr. Asman. (Ex. G at 93:2-9; Ex. H at 126:3-19.)

The DOL's independent assessment of Bloomberg's compliance with the FLSA apparently led the DOL to conclude that Bloomberg's classifications were correct. (Ex. M at 4 (DOL Report); Ex. G at 159:23-160:17.) The DOL's finding was based, in part, on submissions from Bloomberg, but also on information gathered independently through interviews with Bloomberg employees and an on-site assessment of Bloomberg's job positions. (Ex. M at 1-3; Ex. H at 116:20-117:16.)

6

Following the DOL's investigation into Bloomberg's FLSA compliance, it instructed Bloomberg how to calculate back pay for employees who held the 30 positions. (Ex. G at 93:10-94:25.)  The DOL issued final WH-56 Forms to Bloomberg that listed each of the current or former employees to whom Bloomberg was obligated to make a payment for back wages or liquidated damages. (Ex. R (Feb. 1, 2013 WH-56); Ex. S (Sept. 23, 2013 WH-56).)  Pursuant to instructions from the DOL, Bloomberg reclassified the 30 job positions and issued two payments: one for the 2009-2011 period preceding the conclusion of the DOL's investigation, and a second payment for the subsequent period between 2011 and 2013. (Ex. M at 5; Ex. G at 94:4-25.)  None of the payments the DOL directed Bloomberg to make were for hours worked by, or damages owed to, a GTEC Representative.

The DOL made clear from the start that the goal of its investigation was to bring Bloomberg into compliance with the FLSA. (Ex. G at 141:14-24; Ex. M at 4-5.)  After a lengthy investigation and widespread access to Company information and employees, the DOL did not request or instruct Bloomberg to reclassify the GTEC position as non-exempt.  Bloomberg intends to rely exclusively on the results of the DOL investigation in its assertion of good faith and denial of willfulness.  As to willfulness, Bloomberg also intends to hold Plaintiffs to their burden of proof on that issue and argue that their evidence is legally insufficient to demonstrate willfulness.

## II.    Discovery Between the Parties in this Case

The parties have been engaged in discovery in this case since July 2012. Bloomberg has not, either explicitly or implicitly, waived its privilege in responding to discovery requests from the Plaintiffs.  On the contrary, Bloomberg has repeatedly informed Plaintiffs—in conversations, court conferences, and writing—that it has no intention of waiving privilege and

7

intends to rely solely on non-privileged facts to support its defenses. (*See, e.g.*, Ex. E at 5:11-17, 6:13-20; Ex. C.)

### A. *Document Productions Relevant to this Motion*

In June 2013, at Plaintiffs' request, Bloomberg produced communications with the DOL relating to the GTEC position. In August 2013, pursuant to the Court's July 24, 2013 Order to produce communications with the DOL concerning other "call center" positions, Bloomberg produced correspondence with the DOL related to the GCUS and Service Desk positions, and continued to redact or withhold information pertaining to other positions.[4] Plaintiffs raised the issue of the redactions with the Court at the July 30, 2014 conference (Ex. E at 12:15-19), but have never sought to meet and confer on this topic.

Following the July 30, 2014 conference, during which the Court directed Bloomberg to search for and log relevant communications with counsel concerning wage-and-hour advice (Ex. E at 11:5-12:6), Bloomberg provided Plaintiffs with a revised ESI proposal setting forth its plan to search the emails of seven human resources custodians, two in-house attorneys, and reasonably accessible Willkie files likely to have responsive communications with Bloomberg related to good faith and willfulness going back seven years (an additional year beyond Bloomberg's six-year time period for discovery in this case). (*See* Ex. N (Sept. 12, 2014 E-mail).) Plaintiffs did not respond to Bloomberg's proposal. Consequently, Bloomberg moved

---

[4] Bloomberg explained during the July 24, 2013 conference that it had redacted the job descriptions, exemption bases, and employee-specific data concerning non-GTEC representative positions because such information is highly confidential and not relevant. The Court acknowledged Bloomberg's concerns about a fishing expedition and ruled that Bloomberg need only produce documents concerning "call center" positions. Bloomberg's August 2013 production complied with the Court's order.

forward with the review and production of responsive, non-privileged documents from these additional custodians, as well as privilege logs, consistent with that proposal.[5]

Near the close of discovery, at the deposition of Matthew Asman on October 17, 2014, Plaintiffs inquired about *Glass v. Bloomberg L.P.*, and demanded the production of all documents relating to the litigation, including privileged materials. The *Glass* case was filed in California state court in May 2006 by a former Bloomberg employee alleging violations of California's labor laws relating to overtime compensation. (Ex. H at 22:12-25.) Bloomberg sought the assistance of outside counsel, including Willkie, in resolving the matter. (*Id.* at 23:6-24:12.) The case, which did not involve the GTEC position, any "call center" position, or claims under the FLSA or NYLL, was settled. (*Id.* at 24:19-25:6.)

With no connection to the group of employees or legal claims at issue in this case, and consistent with Bloomberg's 2012 objections to the request for documents, including an objection to producing documents from more than six years prior to the filing of the complaint, Bloomberg did not produce materials related to the *Glass* litigation and did not agree to Plaintiffs' unreasonable demand for privileged materials from this unrelated litigation. (Ex. O (Nov. 12, 2014 E-mail).)  Bloomberg did provide Plaintiffs with a courtesy copy of publicly available documents filed in the *Glass* case and permitted its witnesses to testify to non-privileged facts concerning this litigation.

---

[5] Plaintiffs argue that Bloomberg has failed to disclose or even log privileged communications created since the commencement of this case. (Br. at 9.) Plaintiffs also have not logged documents created in connection with this litigation and case law does not require logging such communications. *See, e.g.*, *United States v. Int'l Longshoremen's Ass'n*, No. 05-cv-3212, 2006 WL 2014093, at *1-3 (E.D.N.Y. July 18, 2006) (internal drafts, correspondence, and attorney notes prepared in connection with instant litigation need not be itemized on privilege log). In any event, Bloomberg did log documents from both before and after the complaint was filed in this case to the extent they related to the DOL investigation and GTEC, GCUS, or Service Desk.

9

### B. *Testimony From Counsel*

Prior to the depositions of Mr. Asman and Mr. Golden, the parties agreed that Bloomberg would allow inquiry into non-privileged facts or communications, and that Plaintiffs would not argue that such testimony placed legal advice at issue or otherwise waived the attorney-client privilege as to those or other communications. (Ex. G at 6:23-8:6; Ex. H at 5:2-18; Ex. O.) Consistent with that agreement, Mr. Asman testified that in "November 2011...Mr. Golden called me and told me that he had spoken with the Department of Labor and the Department of Labor, the investigator had indicated to him, specifically stated...that she thought our analysis or our review was spot on or right on the money." (Ex. G at 93:2-9.) This testimony appears to be the sole basis for Plaintiffs' selective waiver argument.

Two weeks later, at Mr. Golden's deposition, Plaintiffs' counsel took the position, contrary to the parties' prior agreement, that this testimony had waived the privilege as to the entire conversation between Mr. Golden and Mr. Asman, and warned Bloomberg that if Mr. Golden testified as to *anything* said in his conversation with Mr. Asman about what the DOL told him, they would take the position that would also waive the privilege. (Ex. H at 127:7-12.) On that basis, counsel instructed Mr. Golden not to respond to questions that Plaintiffs' counsel argued would result in waiver. (*Id.* at 127:22-128:6, 130:16-22.) Shortly thereafter, due to the schedule of Plaintiffs' counsel, Mr. Golden's deposition was adjourned. Bloomberg agreed to resume Mr. Golden's deposition based on Plaintiffs' re-assurance that they "do not contend that mere testimony about non-privileged facts or communications waives the privilege." (Ex. O.) Yet, that is exactly what they contend here.

In light of Plaintiffs' overly aggressive waiver position and repudiation of prior agreement, their claim that Mr. Asman and Mr. Golden "refused to answer at least 34 different

10

inquiries into what steps [Bloomberg] took to ascertain and comply with its legal obligations under the FLSA and state law" is particularly disingenuous. (Br. at 10.) In many instances where Plaintiffs now complain that Bloomberg's witnesses failed to answer, Plaintiffs' inquiries were designed to elicit the disclosure of what Plaintiffs themselves contend is privileged information. (*See, e.g.*, Ex. H at 185:15-17; Ex. I at 133:16-134:14.) After each such inquiry, Bloomberg's attorneys carefully asserted appropriate objections on the record and instructed witnesses to respond only to the extent they were able to do so without revealing privileged communications. (*See, e.g.*, Ex. H at 185:18-23; Ex. I at 126:22-127:6.) While in some instances Bloomberg's witnesses were unable to respond to Plaintiffs' inquiries because doing so would disclose privileged communications or legal advice, Plaintiffs also now complain about instances in which Bloomberg's witnesses in fact responded to Plaintiffs' questions with non-privileged information or were unable to recall the non-privileged details. (*See, e.g.*, Ex. H at 27:20-23; Ex. I at144:11-154:7; 194:4-11 (answering Items 1, 2, 4 of Plaintiffs' "List of Topics Bloomberg Refused to Answer." (Plaintiffs' Br. Ex. 19)).) Messrs. Asman and Golden provided extensive testimony in response to questioning from Plaintiffs' counsel, limited only by memory and good faith objections interposed by defense counsel to preserve privilege.

### C. Plaintiffs' Renewed Motion to Compel

The Court ruled in July that the simultaneous assertion of privilege and Bloomberg's defenses is permissible, that Bloomberg had not crossed the line, and that the line may never be crossed. (Ex. E at 7:21-8:9.) Since then, Bloomberg's supplemental productions and testimony have revealed only non-privileged facts, and Bloomberg has been steadfast in its assertion of privilege. Plaintiffs nevertheless seek in their current motion to revisit the underlying ruling and to compel documents and testimony on the legal advice Bloomberg

11

received in connection with the *Glass* litigation, the Company's review, the DOL investigation, and the current litigation. Plaintiffs also seek to compel twenty-two entries on Bloomberg's privilege logs designated as work-product. (Br. at 22.) The motion should be denied.

## LEGAL ARGUMENT

I.     The Court Already Has Decided This Issue in Favor of Bloomberg and Plaintiffs' Motion to Compel is Untimely, Without Merit and Seeks The Wrong Remedy.

Plaintiffs' instant motion is a thinly-veiled motion for reconsideration that is both untimely *and* without merit. Several months ago, the Court rejected Plaintiffs' First Request to Compel, finding that Bloomberg's good faith defense and denial of willfulness based on the results of the DOL investigation do not place advice of counsel at issue and are, therefore, compatible with the assertion of privilege. (Ex. E at 8:3-9.) Specifically, following review of the parties' written and oral argument, the Court agreed with Bloomberg, saying "I don't think the issue is was privilege affirmatively waived," and went on to hold that "trying to [distinguish] between a good faith defense and a potential advice of counsel defense creates a thin line that the party seeking to put forward the privilege through testimony may cross, but in this case that line hasn't yet been crossed and perhaps never will be." (*Id.* at 7:21-22, 8:4-9.)

If Plaintiffs disagreed with the Court's July 30 ruling, they had fourteen days to seek relief. Plaintiffs could have filed a motion for reconsideration of the Court's ruling pursuant to Local Rule 6.3. Alternatively, they could have filed an appeal for review by the District Court. *See* Fed. R. Civ. P. 72(a); *see also* Fed. R. Civ. P. 72 Advisory Committee Notes. They chose not to, and their request for a do-over comes four months too late. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) (failure to timely appeal from the magistrate's ruling on a non-dispositive discovery matter waives the right to appellate review of that order); *Intellectual Prop. Watch v. U.S. Trade Representative*, No. 13 Civ. 895, 2014 WL

12

852168, at *1 (S.D.N.Y. Jan. 31, 2004) (reconsideration motion denied as untimely if made more than fourteen days after order). And discovery into Bloomberg's defenses has simply confirmed what the parties and the Court knew in July – Bloomberg continues to rely exclusively on the DOL investigation and its results for its good faith defense, and Bloomberg received legal advice on wage-and-hour issues over which it is asserting privilege. In short, Bloomberg's legal advice is no more "at issue" today than it was in July. The Court's prior ruling should not be disturbed as it is already the law of the case. *See, e.g., Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'") (internal citation omitted).

The only matter appropriate for consideration on Plaintiffs' instant motion is whether they have identified any new evidence to show that Bloomberg has "crossed the line" in a way that would put advice of counsel at issue or operate as a selective waiver and, therefore, make Bloomberg's defenses incompatible with its continued assertion of privilege. They have not. Plaintiffs point only to Mr. Golden's relaying of the DOL's "right on the money" quote to Mr. Asman. But counsel's relaying of factual information regarding statements by the DOL is not a privileged communication and neither places counsel's advice "at issue" nor constitutes a selective disclosure. (*See* Section IV, *infra*.)

Plaintiffs, thus, have not put forth any evidence to cause the Court to reconsider its prior ruling. Moreover, Plaintiffs' are mistaken in their assertion that the appropriate remedy here would be to compel Bloomberg to produce privileged documents and testimony. It would be premature to force Bloomberg to forfeit its privilege at this juncture because Bloomberg has not yet presented evidence of its defenses to a decision maker. *See, United States. v. Nobles*, 422

U.S. 225, 229 (1975) (affirming denial of motion to compel a privileged report, but holding that *if* defense witness testified about the report, *then* the privilege would be forfeited); *John Doe Co. v. United States*, 350 F.3d 299, 304-05 (2d Cir. 2003) (reversing trial court finding of waiver based on plaintiff's pretrial presentation of its good faith defense to the government where not yet presented to the grand jury, noting that future testimony "in all likelihood" would result in a waiver). Thus, as the Court previously agreed, the question at this stage of the proceedings is whether Bloomberg's privilege may be maintained alongside certain defenses, not whether privilege has been forfeited. (Ex. E at 7:19-25); *John Doe*, 350 F.3d at 303 ("The unfairness courts have found which justified forfeiture generally resulted from a party's advancing a claim to a court or jury...."). In the unlikely event that the Court is persuaded to change its mind on this issue, Bloomberg should not be deemed to have forfeited its privilege but, rather, should be permitted to determine whether to abandon its good faith defense.[6] *See, e.g.*, Endorsed Letter, *Wang v. Hearst Corp.*, 12-CV-793 (S.D.N.Y. Jan. 8, 2013), ECF No. 81 (permitting defendant to drop good faith defense in order to preserve privilege after court's ruling that defendant's good faith defense was incompatible with the assertion of privilege because defendant had not presented a "concrete" non-privileged basis for the defense). This is particularly so because Bloomberg has not affirmatively injected the non-privileged "right on the money" communication into the case but, rather, simply responded in good faith to questions put to its witnesses by Plaintiffs' counsel, and Plaintiffs' counsel agreed that having Bloomberg's counsel sit for depositions and testify to non-privileged facts would not result in a waiver. (Ex. O.)

_____

[6] Plaintiffs' suggestion that they may later move the District Court to strike Bloomberg's defenses (Br. at 1, n.1) further supports the conclusion that forfeiture of privilege is not an appropriate remedy at this stage, when it may yet be determined that Bloomberg will not put forth its good faith defense and, thus, Plaintiffs' supposed harm will never come to pass.

While nothing Plaintiffs present in their untimely Motion warrants reconsideration, in light of Plaintiffs' extensive briefing on the general matter of waiver, Bloomberg is compelled – once again – to explain why Plaintiffs are wrong.

II.   Bloomberg Should Not be Forced to Abandon its Good Faith Defense.

A.   *Assertion of the Good Faith Defense Does Not Necessarily Waive Privilege.*

As this Court has already held, mere assertion of good faith does not necessarily place legal advice at issue, and Bloomberg's defenses have not done so in this case. Where, as here, a defendant relies exclusively on evidence other than legal advice to support the defenses, privilege is not waived. (Ex. E at 7:19-22.) This Court found particularly persuasive the reasoning of *Brackett v. St. Louis Board of Police Commissioners*, in which Judge Ross ruled that privilege was not waived by a FLSA good faith defense that relied on prior litigation and an investigation by the DOL. No. 4:12-CV-898, 2014 WL 3451197, slip op. at 2 (E.D. Mo. July 15, 2014).

Despite this Court's ruling, Plaintiffs continue to take the overly broad position that any assertion of the good faith defense necessarily implicates legal advice and waives the attorney-client privilege. (Brief at 16-17.) Courts, however, have repeatedly rejected this argument. "[T]he mere assertion of a defense of good faith, as opposed to a defense of good faith reliance on the opinion of counsel, does not waive the privilege as to communications with counsel." *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 463 (E.D. Mich. 2008). Plaintiffs do not cite to a single case that supports their claim that assertion of the good faith defense under the FLSA, in and of itself, waives privilege. Instead, Plaintiffs rely on cases in which the good faith defense involved affirmative reliance on privileged communications with legal counsel. *See, e.g., In re Cnty. of Erie*, 546 F.3d 222 (2d Cir. 2008) (finding waiver based on testimony by

15

defense witnesses that they relied on communications with the County Attorney's Office, already deemed privileged by the court); *United States v. Bilzerian*, 926 F.2d 1285, 1292-3 (2d Cir. 1991) (finding waiver based on defendant's good faith defense where defendant did not put forth any basis for believing his actions were permissible other than his privileged conversations with counsel); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 09 Civ. 3255, 2012 WL 2568972, at *7-8 (S.D.N.Y. July 3, 2012) (finding waiver of attorney-client privilege where party sought to introduce affidavits from its attorneys reflecting attorneys' intent in drafting the contract in dispute, therefore placing "the opinion of counsel at issue"). Unlike the defendants in the cases cited by Plaintiffs, Bloomberg has not based its defense on the advice of counsel.[7]

Plaintiffs also rely heavily on *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir. 1997), a case that does not even address the issue of waiver. *Reich*, like many of the cases relied upon by Plaintiffs, deals with the sufficiency of the evidence presented to support a good faith defense, and not whether the assertion itself is compatible with a claim of privilege. Furthermore, contrary to the misrepresentation made in Plaintiffs' Brief, the court did not rule in *Reich* that a DOL letter is necessarily insufficient as a basis for a good faith defense, nor did the court rule that the defendant needed to rely on legal advice to establish good faith. The *Reich* court simply found that although the DOL letter was "probative evidence" of the defendant's good faith, it was insufficient because the opinion letter "[did] little more than repeat [the] regulatory provision" in

---

[7] Plaintiffs also rely on *Wang v. Hearst Corp.* to support their waiver argument. In *Wang*, however, the court did not rule that the assertion of the good faith defense necessarily waived privilege, but only that it did in that case because defendant had not provided "any concrete examples" of a non-privileged basis for the good faith defense. No. 12-CV-793, 2012 WL 6621717, at *2 (S.D.N.Y. Dec. 19, 2012). Plaintiffs also selectively quote Judge Wood's opinion in *Arista Records LLC v. Lime Group LLC*, to give the misimpression that fairness requires disclosure of privileged communications whenever a good faith defense is raised. No. 06-CV-5936, 2011 WL 1642434, at *1 (S.D.N.Y. Apr. 20, 2011). But *Arista* is distinguishable because there, unlike here, the defendants' good faith defense was based, in part, on the advice of counsel. *Id.*

16

question. *Id.* at 72. The facts in this case are much different than those presented in *Reich.* And more fundamentally, *Reich* is irrelevant here because the sufficiency of Bloomberg's evidence in support of its good faith and willfulness defense is not presently before the Court and has nothing to do with the issue of waiver.

### B. *Bloomberg's Good Faith Defense Does Not Place Legal Advice "At Issue."*

The case law is clear that unless Plaintiffs prove that Bloomberg placed legal advice "at issue" by "rel[ying] on the privileged communication as a claim or defense or as an element of a claim or defense," there is no implied waiver. *In re Cnty. of Erie*, 546 F.3d at 228. They cannot meet their burden here because Bloomberg's intent to rely on communications with, and findings by, the DOL to support its good faith defense, without more, does not cross the line and place privileged communications at issue. (*See* Ex. E at 8:4-9.) Other courts likewise have held that communications with the DOL may form the basis for a non-privileged good faith defense under the FLSA. *See Brackett*, 2014 WL 3451197, slip op. at 2 (privilege not waived where good faith defense under the FLSA relied on prior litigation and an investigation by the DOL); *Harter v. CPS Sec. (USA) Inc.*, No. 2:12-CV-00084, 2013 U.S Dist. LEXIS 156496, at *1-3 (D. Nev. Oct. 30, 2013) (privilege not waived where good faith defense under the FLSA relied on communications with consultant and DOL staff); *Clay v. City of Winona*, 753 F. Supp. 624 (N.D. Miss. 1990) (reliance on DOL communications and FLSA handbook deemed sufficient basis for good faith defense).

Without addressing contrary legal precedent or this Court's prior ruling, Plaintiffs repeat their already-rejected argument that even though Bloomberg does not rely on advice of counsel, the legal advice received by Bloomberg must nonetheless be disclosed because it is relevant to the good faith defense and is, therefore, "at issue." (Br. at 18.) However, advice of

17

counsel is not placed in issue merely because it might be relevant, and does not become relevant just because the attorney's advice might affect the client's state of mind. *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-02002, 2014 WL 6388436, at *10 (E.D. Pa. Nov. 17, 2014); *see also Green v. Beer*, No. 06 Civ. 4156, 2010 WL 2653650, at *6-7 (S.D.N.Y. July 2, 2010). Rather, legal advice is only "at issue" if a defendant explicitly or implicitly relies on it to defend its case, which Bloomberg has not done here and does not intend to do.

III.    Bloomberg Should Not be Forced to Abandon its Denial of Plaintiffs' Allegation of Willfulness.

Unlike good faith, Plaintiffs bear the burden of proving a willful violation of the FLSA and NYLL. *Ramirez v. Garage Mgmt Co. LLC*, No. 09 Civ. 9325, 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012). Bloomberg cannot be said to have placed legal advice "at issue" merely by defending itself against the willfulness allegation and putting Plaintiffs to their burden of proving a willful violation of the labor laws. *See Chase Manhattan Bank N.A. v. Drysdale Secs. Corp.*, 587 F. Supp. 57, 59 (S.D.N.Y. 1984) (finding that a party's defense against an affirmative pleading cannot, in an of itself, constitute waiver of privilege); Order, *Haas v. Verizon New York, Inc.*, No. 13-CV-8130 (RA)(JLC), slip op. at 3 (S.D.N.Y. Oct. 20, 2014) (refusing to find waiver of privilege based on denial of willfulness by defendant who engaged counsel prior to litigation to conduct a legal review of the same issues in dispute in litigation).

This is clear even from Plaintiffs' own cases. For example, in *Wang v. Hearst Corp.*, the defendant withdrew its good faith defense following the court's ruling that the defendant had failed to provide a "concrete" non-privileged basis for its good faith defense. 2012 WL 6621717, at *3. Plaintiffs then requested that the court order the production of privileged communications on the basis that willfulness was still in dispute, but the court denied that request, permitting defendant to defend against willfulness, even where an assertion of good

18

faith would have resulted in waiver. Endorsed Letter, *Wang v. Hearst Corp.*, 12-CV-793
(S.D.N.Y. Jan. 8, 2013), ECF No. 81.

A finding of waiver is improper if it is predicated on the actions of the non-
asserting party, and it is *Plaintiffs* who are asserting willfulness here. *See, e.g.*, *Bovis Lend
Lease, LMB, Inc. v. Seasons Contracting Corp.*, No. 00 Civ. 9212, 2002 WL 31729693, at *17
(S.D.N.Y. Dec. 5, 2002); *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.), Inc.*, 111
F.R.D. 76, 84-85 (S.D.N.Y. 1986). To hold otherwise would effectively provide FLSA plaintiffs
with the ability to force every defendant that has received wage-and-hour legal advice to either
waive privilege or concede that any violation was willful. Such a result is contrary to the case
law, contrary to the foundations of the attorney-client privilege, and contrary to basic principles
of fairness and common sense.

IV.   There Has Been No Selective Disclosure of Privileged Communications Because
      Bloomberg's Witnesses Have Only Testified About Non-Privileged Communications.

The party seeking to establish a waiver of the attorney-client privilege bears the
burden of proof. *See Aiossa v. Bank of Am., N.A.*, No. 10-CV-01275, 2011 WL 4026902, at *5
(E.D.N.Y. Sept. 12, 2011). "Because the purpose of the attorney-client privilege, the 'oldest of
the privileges for confidential communications,' is to 'encourage full and frank communication
between attorneys and their clients and thereby promote broader public interests in the
observance of law and administration of justice,' the burden of breaching the privilege, once it is
determined that the protection applies, is particularly high." *United States v. Davis*, 131 F.R.D.
391, 398 (S.D.N.Y. 1990) (internal citation omitted).

Plaintiffs do not come close to meeting this high burden because they do not and
cannot point to a single instance in which Bloomberg has disclosed privileged information.
Indeed, Plaintiffs' selective disclosure argument relies entirely on testimony relating to purely

19

factual information relayed by Bloomberg's attorneys regarding a statement by a DOL investigator.  Plaintiffs assert that "the statement from Mr. Golden to Mr. Asman is 'legal advice' if Bloomberg relied upon it."  (Br. at 7.)  But that argument is nonsensical; if Mr. Golden told Mr. Asman that certain interest rates had been published, that factual report does not become legal advice even if Bloomberg relied upon it.[8]

At an October 28, 2014 conference, the Court expressed agreement with Bloomberg's position that direct quotes or plain summaries of DOL communications that Willkie relayed to Bloomberg are not privileged, but characterizations of any DOL communications or advice given in connection with such communications are privileged.  And, in fact, in a November 12, 2014 email to Bloomberg's counsel, Daniel Getman (Plaintiffs' counsel) made clear that he was "not contend[ing] that mere testimony about non-privileged facts or communications waives the privilege."  (Ex. O.)  With complete disregard for both the prior agreement between the parties and the ample legal precedent to the contrary, Plaintiffs now argue that testimony about non-privileged communications does constitute a waiver.  They are wrong.

This exact issue was addressed in *Ritchie Risk-Linked Strategies Trading Ltd. v. Coventry First LLC*, where the plaintiffs argued for selective waiver of the attorney-client privilege based on deposition testimony by the defendant's witnesses regarding communications with a government regulator.  In *Ritchie*, defendants' outside counsel and their Rule 30(b)(6) witness testified regarding defendants' knowledge of an investigation by the New York Attorney

---

[8] Tellingly, Plaintiffs do not cite any cases in support of their theory that factual information conveyed from an attorney to a client becomes privileged if the client "relied upon" it.  (Br. at 7.)  Instead, their cases discuss the scope of waiver in instances in which a party reveals privileged information.  None of those cases is relevant because Bloomberg has not revealed any privileged information.

20

General's Office ("NYAG"). 273 F.R.D. 367, 371 (S.D.N.Y. 2010). Both witnesses partially

disclosed only the non-privileged attorney-client communications relaying defense counsel's

communications with the NYAG. The court found that no waiver of attorney-client privilege

had occurred because the defendants' witnesses testified "as to unprivileged communications

with the NYAG, and then conscientiously, with guidance from counsel, asserted the privilege

throughout the depositions as to any privileged information." 273 F.R.D. at 371. Accordingly,

the court found that "the witnesses did not disclose portions of privileged communications, so as

to justify a finding of waiver." *Id.*

          The facts of *Ritchie* are directly on point here: the testimony by Mr. Asman and

Mr. Golden regarding a factual discussion of communications with the DOL does not disclose

any privileged information, and both witnesses consistently, with guidance from counsel,

asserted privilege over all privileged information. Specifically, Mr. Asman testified to the

following:

> "[In] November 2011...Mr. Golden called me and told me that he
> had spoken with the Department of Labor and the Department of
> Labor, the investigator had indicated to him, specifically
> stated...that she thought our analysis or our review was spot on or
> right on the money." (Ex. G at 93:2-9.)

Mr. Golden testified to the same factual details regarding his conversation with the DOL:

> "Well, [Bloomberg] submitted a – the listing of jobs... I recall
> having a phone conversation with Ms. Thompkins-Lewis shortly
> after we made that submission, and she said that they had received
> the list. I'm going to give you a quote, because I remember certain
> precise words. And the precise words that I recall were, she said
> that it looked 'right on the money.'" (Ex. H at 124:5-14.)

> "Q: And did you have a conversation with Mr. Asman about what
> the Department of Labor told you about the positions that it
> was...offering to reclassify?
>
> A: I believe I did. (*Id.* at 126:3-15.)

21

As the testimony makes clear, Bloomberg's witnesses have testified only to the non-privileged relaying of facts, while preserving the privilege with regard to any communication of legal advice and mental impressions. Thus, testimony about Mr. Golden's relaying of the DOL's "right on the money" comment to Mr. Asman does not constitute a selective waiver.[9] *See, e.g.*, *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at \*3 (S.D.N.Y. April 18, 2006) ("[W]here the attorney or client is merely conveying the substance of what a third party has conveyed, the communication is not privileged."); *Standard Chartered Bank*, 111 F.R.D. at 80 ("[T]he privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client.").

V.     Bloomberg's In-House Counsel's Work Product Should Not Be Disclosed.

        A. *Documents Prepared by Bloomberg's In-House Counsel are Protected by the Work Product Doctrine.*

The work product doctrine was promulgated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), and later codified in Fed. R. Civ. P. 26(b)(3), to "preserve a zone of privacy in which [his] lawyer can prepare and develop legal theories and strategy…free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998). Its protections apply to materials prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). The Second Circuit has interpreted this requirement "broadly" to apply if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (citation omitted).

---

[9] Plaintiffs also attempt to set up a straw man by making the blatant misrepresentation that "Bloomberg's position is that it may selectively waive privilege." (Brief at 20.) Plaintiffs know well that Bloomberg has never taken the position that selective waiver is permitted, and their argument as to the impact and scope of selective waiver seek only to obscure the fact that there has been no selective waiver here.

Here, the twenty-two documents that Plaintiffs challenge easily satisfy the work-product standard because they were prepared or obtained by in-house counsel in order to render legal advice to Bloomberg in response to the then-pending DOL investigation, and they would not have been so prepared or obtained absent that investigation and the resulting anticipation of litigation.[10]  (Asman Decl. ¶8.)  *See Adlman*, 134 F.3d at 1204.  Materials prepared by counsel to provide legal advice in response to a government investigation are protected by the work-product privilege because such government action presents reasonable grounds for anticipating litigation. *See Garrett v. Metro. Life Ins. Co.*, No. 95 Civ. 2406, 1996 WL 325725, at *3 (S.D.N.Y. June 12, 1996) (holding that "[r]egulatory investigations by outside agencies present more than a mere possibility of future litigation, and provide reasonable grounds for anticipating litigation" and finding documents created in response to examinations by insurance regulators were in anticipation of litigation); *Martin v. Monfort*, 150 F.R.D. 172, 173 (D. Colo. 1993) (applying work product to documents created in response to DOL investigation because "[i]nvestigation by a federal agency presents more than a remote prospect of future litigation, and provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine.").

Plaintiffs mischaracterize these materials and contend that "many of the documents prepared by Mr. Asman" were prepared "in the ordinary course of Bloomberg's business, and at a time when there was no actual or impending wage and hour litigation against Bloomberg"  (Br.

---

[10] Indeed, many of these materials also are protected by the attorney-client privilege, but inadvertently were not identified as such.  Bloomberg has corrected its privilege logs simultaneously with this submission to reflect that entry 51 on Bloomberg's October 8, 2014 privilege log and entries 24, 37, 38, 41, 61, 82, 83, 86, 87, 95, and 103 on the November 15, 2014 privilege log also are protected by the attorney-client privilege.  *See* Ex. J; Asman Decl. ¶¶11-17.  Thus, in addition to the work product protection, these materials also are entitled to absolute protection absent a waiver – which has not occurred here.  *See Suss v. MSX Int'l Eng'g Servs., Inc.*, 212 F.R.D. 159, 163 (S.D.N.Y. 2002) ("[M]aterials protected by the attorney-client privilege are discoverable only upon a showing of waiver.").  Bloomberg's correction of these entries does not cause any harm to Plaintiffs.  *See Strougo*, 199 F.R.D. at 523 (finding no waiver and allowing assertion of additional privilege basis where no harm to other party).

23

at 22-23.) Plaintiffs ignore the fact that many of the entries they challenge are dated *after* the DOL investigation began, and never bothered to ask Defendant for further information about the timing or purpose for creating the undated entries – which also were prepared after July 19, 2010 and in response to the DOL investigation. (Asman Decl. ¶8.) The Company reasonably anticipated litigation in connection with the investigation and sought advice from Mr. Asman and outside counsel regarding the same, giving rise to the materials at issue. Consequently, the twenty-two log entries reflect protected work product. *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993) (materials prepared after commencement of OSHA investigation were protected work product); *Szulik v. State St. Bank & Trust Co.*, No. 12 Civ. 10018, 2014 WL 3942934, at \*4 (D. Mass. Aug. 11, 2014) (documents protected by work product doctrine where they were prepared in anticipation of litigation as a result of subpoena from U.S. Attorney's Office); *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 389-90 (D. Minn. 1992) (holding that documents generated after commencement of investigation by state regulator were work product created in anticipation of litigation).

### B. Plaintiffs Have Made No Showing That Entitles Them to Either Opinion or Fact Work Product.

Plaintiffs argue that they are entitled to Mr. Asman's work product because they have demonstrated a "substantial need" for the materials. (Br. at 24-25.) This argument fails for at least two reasons. First, the "substantial need" test is inapplicable to all but one of the entries because they reflect opinion work product of Mr. Asman, which includes mental impressions, conclusions, opinions and legal theories of counsel, which receive "special protection" from disclosure. (Asman Decl. ¶9). *See Adlman*, 134 F.3d at 1197. Plaintiffs conveniently ignore the requirement that a party seeking discovery of "opinion work product" must show "extraordinary

24

justification." *Strougo*, 199 F.R.D. at 521 (citation omitted). Plaintiffs have not even attempted to demonstrate the requisite need.

Second, Plaintiffs have failed to demonstrate a "substantial need" to compel the production of the one entry that reflects fact work product. Indeed, Plaintiffs' claim is foreclosed by Bloomberg's substantial productions in this case. Bloomberg has produced the documents and information on which it intends to rely for its defenses, including all communications with the DOL regarding GTEC, GCUS and Service Desk Representatives (the so-called "call center" positions), as well as non-privileged internal communications about the investigation or reclassifications as they related to any of those positions. Nonetheless, Plaintiffs seek Mr. Asman's work product because they believe such documents may bear on their claims, but mere relevance is not enough to satisfy their burden of proving "substantial need" to invade Mr. Asman's factual work product.

## CONCLUSION

For the reasons stated above, Bloomberg respectfully requests that the Court deny in full Plaintiffs' motion to compel.

Dated: December 15, 2014
       New York, New York

JONES DAY

Matthew W. Lampe
222 East 41st Street
New York, New York 10017
(212) 326-3939
mwlampe@jonesday.com

WILLKIE FARR & GALLAGHER LLP

By: _____
       Thomas H. Golden
       Deirdre N. Hykal
       787 Seventh Avenue
       New York, New York 10019
       (212) 728-8000
       tgolden@willkie.com
       dhykal@willkie.com

*Attorneys for Defendant Bloomberg L.P.*

25