# EXHIBIT E

1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    PETER ENEA,                        :   12-CV-0456 (GBD)
                                        :
5                    Plaintiff,         :
                                        :
6              v.                       :   500 Pearl Street
                                        :   New York, New York
7    BLOOMBERG LP,                      :
                                        :   July 30, 2014
8                    Defendant.         :
     ------------------------------------X
9

10       TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
                 BEFORE THE HONORABLE FRANK MAAS
11               UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:        DAN C. GETMAN, ESQ.
                               ARTEMIO GUERRA, ESQ.
14                             Law Office of Dan Getman
                               9 Paradies Lane
15                             New Paltz, New York 12561

16

17   For the Defendant:        THOMAS H. GOLDEN, ESQ.
                               ANDREW SPITAL, ESQ.
18                             Willkie Farr & Gallagher LLP
                               787 Seventh Avenue
19                             New York, New York 10019

20

21   Court Transcriber:        MARY GRECO
                               TypeWrite Word Processing Service
22                             211 N. Milton Road
                               Saratoga Springs, New York 12866
23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

```
 1            THE CLERK:  Good morning, everyone.  This is a phone
 2   conference in the matter of Enea v. Bloomberg.  This is
 3   Jennifer, the judge's law clerk, and this phone conference is
 4   being recorded.  Could counsel please state your name for the
 5   record?
 6            MR. GETMAN:  Dan Getman and Artemio Guerra for the
 7   plaintiff.
 8            MR. GOLDEN:  And this is Thomas Golden and Andrew
 9   Spital from Willkie Farr for the defendant
10            THE COURT:  Good morning, counsel.
11            MR. GETMAN:  Good morning, Your Honor.
12            MR. GOLDEN:  Good morning.
13            THE COURT:  The letters -- I guess the only issue is
14   whether there's been a waiver of the attorney-client privilege
15   with respect to the good faith defense, isn't that correct?
16            MR. GETMAN:  I think, Your Honor, we all -- this is
17   Dan Getman for the plaintiff.
18            THE COURT:  Got it.
19            MR. GETMAN:  We also have an issue of discovery
20   cutoff and when discovery will continue until.  I guess that's
21   the same thing.
22            THE COURT:  Okay.  Well, let's deal with the issue of
23   privilege first and then we'll talk about scheduling.  The
24   floor is yours, Mr. Getman.
25            MR. GETMAN:  Okay.  Well, Your Honor, Bloomberg
```

3

1   asserts two affirmative defenses in this case, a good faith

2   defense and statute of limitations which in the case of the

3   FLSA, Fair Labor Standards Act, implicates the willfulness and

4   not the subjective knowledge and intent of the defendant here.

5   Bloomberg, because it has asserted the good faith defense,

6   which is a defense to a substantial portion of the liability in

7   the case, based on the clear law in the Second Circuit and

8   multiple decisions in the southern district that by asserting

9   good faith a corporation which knows only what it knows through

10  its agents, employees, agents within the scope of their --

11  acting within the scope of their agency, has brought its

12  knowledge or the knowledge of its agents into issue in this

13  case.  The <u>Bilvarian</u> [Ph.] decision basically said that -- and

14  the progeny of multiple decisions in the southern district,

15  says that when you raise a good faith defense you are waiving

16  the privilege with respect to attorney/client advice and

17  discussion to the extent that those would show the knowledge of

18  the defendant or the party in this case.

19          Here Bloomberg has identified multiple individuals

20  both inside counsel and outside counsel that have knowledge and

21  information with respect to the FLSA obligations of the

22  company, but Bloomberg has also indicated that it will not

23  provide notes and documents with respect to those

24  communications.  And that's what, you know, that's what we're

25  here to address.

4

 1          This dispute has gone on for a period of time.  Your
 2    Honor initially required Bloomberg to identify counsel at one
 3    of our last conferences, the counsel with information with
 4    respect to Bloomberg's knowledge of its FLSA and state law
 5    obligations.  And then there's the period of dispute between
 6    the parties where we attempted to resolve this.  We had a meet
 7    and confer, and then we filed initially a letter motion and
 8    then -- I'm sorry, initially a motion in accordance with your
 9    rules [indiscernible], letter request for a pre-motion
10    conference.

11          I think we've cited the relevant decisions in our
12    letters.  I think Bloomberg has in its response primarily
13    addressed the court's language in the case of <u>In re County of</u>
14    <u>Eerie</u>, but that decision dealt only with a qualified immunity
15    defense and not a good faith defense.  And so the language in
16    that decision is a little misleading when applied to the
17    question of what waiver occurs with an assertion of a good
18    faith defense.

19          <u>County of Eerie</u> did talk somewhat about reliance on
20    the advice of counsel but it was in the context of an entirely
21    different defense and it did not in any way overrule or alter
22    the Bulvarian [Ph.] decision which specifically held that good
23    faith waives the defense and is not a waiver only if a
24    defendant is raising reliance on the advice of counsel.
25    Bloomberg is claiming not to rely on the advice of counsel but

5

1     that, under Bulvarian is by no means the only predicate or the

2     limitation of the waiver.

3          So I think the decisions are clear if Your Honor has

4     either had a chance to read through our letter or read through

5     the cases.

6          THE COURT:  I've done both.

7          MR. GETMAN:  Okay.  Great.  Then I don't think I need

8     to go further into it.  And that's our position.  If Your Honor

9     has any questions.

10          THE COURT:  No.  Mr. Golden?

11          MR. GOLDEN:  Okay.  Thank you, Your Honor.  First, I

12     want to be clear that at this point Bloomberg has merely

13     asserted as an affirmative defense in its answer to the

14     complaint [inaudible].  And as we then stated, we have a good

15     faith basis for that affirmative defense which does not

16     implicate the advice of counsel but rather it's based on

17     Bloomberg's interactions with the Department of Labor.

18          THE COURT:  Suppose the Department of Labor said

19     [indiscernible] is fine and that's the basis for your good

20     faith defense but your outside counsel said it's good that the

21     Department of Labor came up with this incorrect ruling but in

22     point of fact we think that everything you're doing is wrong?

23          MR. GOLDEN:  Well, Your Honor, respectfully I think

24     you could conjure up any scenario in which a defendant asserts

25     his defense that does not directly implicate the privilege.

6

1   And the plaintiff says yes, but if you receive contrary legal

2   advice that would undermine your defense and I'm entitled to

3   inquire into that.

4            And again, I think the case law makes clear, and

5   certainly Bulvarian makes clear, that there is not a blanket

6   rule that says if you assert a defense that could conceivably

7   be relevant to legal advice that you receive, that that waives

8   the privilege.  Rather, what the court in Bulvarian said, what

9   both the district court said and the Second Circuit affirmed is

10  depending on the specifics as to how the argument is raised, in

11  this case depending on the specifics of Mr. Bulvarian's

12  testimony at trial regarding his state of mind, there may or

13  may not be a waiver.  And I think at this point if Bloomberg

14  has not injected into the case reliance on counsel -- I'm

15  sorry, advice of counsel, or reliance on counsel, but rather a

16  good faith defense based on a very specific issue which is, or

17  set of facts, which is interactions with the Department of

18  Labor.  I don't think there is any basis to hold that an

19  assertion of that affirmative defense results in a waiver of

20  the attorney/client privilege.

21           The only other thing I would add, Your Honor, is that

22  I think the way that I would suggest we look at this is not

23  that by asserting the affirmative defense Bloomberg has waived

24  the privilege, but rather whether Bloomberg is entitled to

25  continue to assert the attorney/client privilege and continue

7

1  to argue good faith.  In other words, from my perspective, we

2  respectfully submit that there is no basis on which to hold

3  that Bloomberg has waived the attorney/client privilege.  I

4  think the issue that Mr. Getman is raising is whether in light

5  of Bloomberg's assertion of the attorney/client privilege it

6  can continue to assert its good faith defense.  And

7  respectfully, I think the question as to whether Bloomberg can

8  assert its good faith defense in light of its assertion of the

9  attorney/client privilege should depend on the specifics in

10  which Bloomberg has argued that good faith defense.

11        And again here the argument is based on a very

12  specific set of facts regarding the Department of Labor.  Mr.

13  Getman may argue, and no doubt will argue to the jury or on

14  summary judgment that those facts are not compelling, that

15  those facts do not in fact support Bloomberg's good faith

16  defense.  But again, I don't think there is any basis on which

17  to hold that Bloomberg has waived the privilege by asserting

18  that affirmative defense.

19        THE COURT:  As I told Mr. Getman, I've read the

20  letters and the cases, many of which I was familiar with in

21  other contexts, and I don't think the issue is was privilege

22  affirmatively waived.  The question is is there an implied

23  waiver or subject matter waiver or some principle of fairness

24  that dictates that Bloomberg not be able to play hard ball with

25  respect to any advice it received.

8

1          To my mind, this is a somewhat difficult area that is

2    [indiscernible], Mr. Golden, is inevitably very fact bound and

3    I think District Judge Ross in <u>Missouri</u> got it right when she

4    said that trying to [indiscernible] between a good faith

5    defense and a potential advice of counsel defense creates a

6    thin line that the party seeking to put forward the privilege

7    through testimony may cross, but that in this case that line

8    hasn't yet been crossed and perhaps never will be.  So I'm not

9    going to grant Mr. Getman's application.

10          It strikes me, however, and I'm not the trial judge

11   so this is ultimately Judge Daniel's call, but much the same as

12   would apply to the assertion of the Fifth Amendment in a civil

13   as opposed to a criminal context.  It seems to me it's probably

14   fair game for Mr. Getman to argue to the jury that merely from

15   the assertion of the privilege, continued assertion of the

16   privilege, the jury could draw a negative inference that

17   whatever advice may have been received was adverse to the

18   position that Bloomberg's taking in this case.

19          Just as an aside, I note that your letter, Mr.

20   Goldman, gave me Bloomberg's citations.  I don't know whether

21   that's Bloomberg's policy in order to promote its legal

22   research services, but as far as I know the federal courts

23   don't have access to Bloomberg, so the cites are not terribly

24   helpful.

25          MR. GOLDEN:  Your Honor, I apologize for that and we

9

1  will certainly, number one, make sure Bloomberg knows that and

2  number two, make sure that we're giving cites that are useful

3  to the court.  So I apologize for that.

4          THE COURT:  Does Bloomberg prefer you use their

5  cites?

6          MR. GOLDEN:  It does.  I mean well, it prefers that

7  everyone use their cites and certainly prefers that we use

8  their cites, but certainly not at the expense of

9  inconveniencing the court.  So we'll make that clear to them.

10          THE COURT:  Okay.  I think that probably applies

11  nationwide.  I [indiscernible] down to Bloomberg.  Actually, my

12  understanding which may be inaccurate is every several years

13  they put out to bid, the courts, the legal research contract

14  and since there are or were only two services I was told

15  whichever service loses then provides its service free so in

16  any given year, one of them is being compensated, the other is

17  donating its services.  I'm not suggesting Bloomberg should do

18  the same, but --

19          MR. GOLDEN:  Yeah, I know.  That's very helpful.

20          THE COURT:  Okay.

21          MR. GETMAN:  Your Honor, this is Dan Getman.  If I

22  may have liberty to belabor the point for just --

23          THE COURT:  Well, let me belabor it a minute.

24          MR. GETMAN:  Okay.

25          THE COURT:  I'm not precluding you from asking

1  questions so long as they're not abusive acts of periphery.

2  For example, I don't view it as privilege, or the response to

3  be privilege, if you were to ask the question did Bloomberg in

4  the relevant time period receive legal advice concerning and

5  getting a yes or no answer?  I assume that to the extent that

6  there are writings that relate to this issue, a privilege log

7  has been furnished?

8          MR. GETMAN:  No, it has not been.

9          THE COURT:  It seems to me that if there are

10  documents responsive to requests, Mr. Golden, you need to

11  furnish a privilege log.

12          MR. GOLDEN:  We will do so, Your Honor.  Part of the

13  challenge has been that we've been going back and forth with

14  Mr. Getman on the parameters of an ESI search meaning who are

15  the custodians, what are the search terms.  And obviously this

16  issue has been a gating issue and we have agreed that we will

17  conduct an ESI search for the relevant people in Bloomberg's HR

18  department who are involved in this issue generally and we will

19  certainly log any privileged communications in which those HR

20  people were engaged.

21          What we think would be inappropriate and unwarranted

22  is for us to have to search only -- or have to do a separate

23  search of attorneys' emails just for the purpose of logging the

24  attorneys' communications.  Now again, most of these

25  communications will show up, for example, in an HR person's

1  email, but if there's an email between an in-house Bloomberg

2  attorney and an outside Bloomberg lawyer we argue we should not

3  have to run an ESI search for those emails just for the purpose

4  of identifying them on a log.

5          THE COURT:  I'm not sure I buy that because it seems

6  to me the good faith of Bloomberg turns on the good faith of

7  pretty much everybody at Bloomberg such that if employee or

8  officer one had reason to believe that perhaps what Bloomberg

9  was doing was not kosher, then the fact that the HR people who

10  may ultimately have been the decision makers were uninformed

11  about those communications that led to that conclusion

12  elsewhere in the organization I'm not sure salvages what

13  Bloomberg is seeking to do by way of a defense.  So I'm not

14  going to impose unduly burdensome ESI requirements on Bloomberg

15  but as to this specific issue it may in fact be necessary to

16  search, if there was a particular outside law firm, the easier

17  way to do it then, I don't know whether it's your firm or not,

18  but assuming for example that there were particular outside law

19  firms, certainly a search can be done by searching their files,

20  by searching in-house counsel's files for both.  But I'm not

21  sure that I would exclude blanketly the further search we've

22  just been talking about.

23          MR. GOLDEN:  So Your Honor, perhaps what Mr. Getman

24  and I can do is agree on, in light of Your Honor's guidance,

25  agree on search protocol.  I hear Your Honor to say that

12

1  Bloomberg should not limit it to just HR professionals but

2  rather to the extent there were counsel who may have been

3  involved in this issue, they should be included in the search.

4  But to the extent there's a privileged communication involving

5  the counsel, that we should log it rather than produce it.

6         THE COURT:  Absolutely.

7         MR. GETMAN:  And Your Honor, if I may, there's sort

8  of some related questions here which are Bloomberg has now said

9  to you that their good faith defense is based on interaction

10  between Bloomberg and the Department of Labor.

11         THE COURT:  Right.

12         MR. GETMAN:  And I don't know if Mr. Golden is

13  asserting that that is the only basis of the defense.  So

14  that's one question and maybe that can be clarified here on the

15  record.  But I think what we've been given in this case has

16  been communications with the Department of Labor by Bloomberg

17  that have been redacted with respect to other job titles other

18  than the [indiscernible] position which is the plaintiff class

19  in this case.  And in that -- so what happened was there was

20  somewhere contemporaneous with or after our filing this case

21  the Department of Labor began an audit of positions at

22  Bloomberg.  I believe that prior to that audit Bloomberg simply

23  did not pay time and a half overtime to any job positions at

24  Bloomberg or were treated as salaried.  And while there had

25  been no audits with respect to the positions, internal audits

13

1  of the positions, Bloomberg de facto treated the individuals as

2  -- just didn't pay overtime.  I shouldn't say it treated them

3  as exempt.  It just didn't pay overtime.

4          Now, the Department of Labor came in and said we

5  think there are 30 some odd positions that should be entitled

6  to overtime.  There's a lot of back and forth between

7  Bloomberg's counsel and the Department of Labor.  In that

8  context, so far as I know, all of the communications that

9  occurred between Bloomberg and the Department of Labor were

10 conducted by Bloomberg's counsel, and I believe that was

11 Willkie Farr.  So Mr. Golden I believe handled a lot of that, a

12 lot of those discussions with the Department of Labor.

13          In that sense, the communications between Willkie

14 Farr and Bloomberg are kind of now being sliced out of this

15 equation or sliced out of the picture and Willkie Farr becomes

16 the mouthpiece for Bloomberg, and the exclusive mouthpiece for

17 Bloomberg with the Department of Labor.  So there's kind of a

18 number of implications to that.  One is of course the

19 communications between Willkie Farr or what Willkie Farr knew

20 with respect to Bloomberg's obligation to pay overtime

21 irrespective of its communications.  Its knowledge of the

22 overtime law and positions would be relevant to the good faith

23 defense since Willkie Farr is effectively the agent of

24 Bloomberg with respect to FLSA compliance.  So you know,

25 obviously that information kind of becomes relevant and

14

1   important.

2           So at a very specific level, Bloomberg has redacted

3   the Department of Labor's communications with Willkie Farr for

4   everything that does not specifically mention the GTECH

5   position.  And as far as I know, the Department of Labor did

6   not address the GTECH position because litigation was ongoing,

7   and I believe Mr. Golden had expressed that to me previously.

8   So really the Department of Labor --

9           THE COURT:  Wait, let me just interrupt you.  So

10  there's no [indiscernible] that's un-redacted of any conditions

11  because the one position that Bloomberg took the view is

12  relevant specifically to carve out?

13          MR. GOLDEN:  Your Honor, this is Mr. Golden.  We have

14  produced to Mr. Getman all documents reflecting Bloomberg's

15  communications and Willkie's communications with the Department

16  of Labor with respect to the various jobs on which he had sued.

17  So we had communications with the Department of Labor on a

18  number of different positions.  As Mr. Getman indicated, those

19  discussions resulted in some 30 jobs being reclassified.  GTECH

20  was the job at issue in this case, was not among the positions

21  reclassified.  So we have shared with Mr. Getman the

22  communications with the Department of Labor insofar as they are

23  relevant to the GTECH positions and a number of other positions

24  on which he has sued in other cases.

25          This issue was previously raised with Your Honor last

15

1   year on this very issue and I think Your Honor agreed that we

2   only had to produce the documents that are relevant to the job

3   issue in this case.

4           THE COURT:  And I think that ruling is still correct

5   but there's case law to the effect that once a document is

6   relevant, redactions for relevance as opposed to privilege are

7   inappropriate and I'm not sure why that rule would not apply

8   here particularly because I suppose if they wish to do so, Mr.

9   Getman could file a Foyer request, and I'm not sure there's a

10  Foyer exemption that would preclude him from getting the entire

11  file.

12          MR. GOLDEN:  Your Honor, I appreciate that.

13  Candidly, Mr. Getman has not raised this issue with us I don't

14  believe in several months and so it was not something I had

15  candidly given any thoughts in preparation for this call.  I

16  think, you know, at this point I don't think there are really

17  any surprises with respect to the DOL.  If Mr. Getman wants to

18  see all of our communications with the DOL even on jobs that

19  are not relevant here, I would like to discuss that with

20  Bloomberg again because it's being raised for the first time.

21          THE COURT:  Your view -- let me just cut it short.

22  If you're being blind sighted by this in that there was no

23  discussion in preparation for this call indicating it would

24  come up, we can discuss it at some other time.

25          MR. GOLDEN:  Yeah.  And again, I understand that --

16

1   I'm not criticizing Mr. Getman.  I'm just saying, you know, it

2   wasn't something that we had discussed and so I haven't been

3   able to discuss it with Bloomberg.  I'm hopeful that we can,

4   you know, reach agreement with Mr. Getman but I'm just not in a

5   position on this call to speak for Bloomberg on it.

6           THE COURT:  Right.  And I'm not being critical of Mr.

7   Getman either.  I just want to give the two sides an

8   opportunity to work it out if it can be resolved without me

9   getting involved [indiscernible] discussion about it.

10          THE COURT:  Earlier, Mr. Getman, when you were

11  explaining the chronology it seems to me you were getting into

12  a second area which is scheduling, so tell me about that.

13          MR. GETMAN:  Sure.  Your Honor, if I may just go back

14  for one aspect just to make clear on the question of the DOL

15  investigation --

16          THE COURT:  Right.

17          MR. GETMAN:  -- I do believe that all of the

18  communications with the Department of Labor are relevant in

19  their entirety to this case.  Bloomberg does have a number of

20  positions which are functionally very, very close to each

21  other.  And so advice that pertains to one may very well apply

22  to others.

23          THE COURT:  And that may be, but again, that's

24  something you should first discuss with Mr. Golden and then if

25  you're unable to resolve it, I'll certainly get in the loop.

 1          MR. GETMAN:  Absolutely.  But I think Mr. Golden was

 2   suggesting that Your Honor had already decided that issue and I

 3   don't believe that there has been a decision that only the one

 4   position is relevant and the others are not.  I just wanted to

 5   go back and correct that.  And I'm happy to speak with Mr.

 6   Golden further about it.  We have been talking literally since

 7   the case was filed.  Since we learned of the DOL investigation

 8   we have been haggling to obtain the very heavily redacted

 9   information we've received so far.  But I'm happy to continue

10   that process and present it when the positions are solidified.

11          THE COURT:  Okay.

12          MR. GOLDEN:  Your Honor, if I'm mis-recalling the

13   prior discussions with Your Honor on the subject, I apologize.

14   But Mr. Getman and I will no doubt go back and look at the

15   proceedings and we'll try to figure this out.

16          THE COURT:  I don't know whether -- I think that was

17   in court, right, not on the phone?

18          MR. GETMAN:  Yes.  And I believe we have a

19   transcript.

20          THE COURT:  That was going to be my question.  I know

21   I have notes in my file but I wasn't sure whether there was or

22   was not a transcript.

23          MR. GOLDEN:  Okay.

24          THE COURT:  Okay.  Scheduling?

25          MR. GETMAN:  With respect to scheduling, Your Honor,

18

1   this is Dan Getman again, we have some remaining items.  This

2   was obviously a good faith defense and communications related

3   to good faith have been a critical point that we have been

4   waiting to hold depositions and we were awaiting an ESI

5   production which involved negotiation of keywords, a lot of

6   disputes and months of disputes between the parties on what

7   keywords were going to be run.  Our requests apparently were

8   run and on Monday we received a production from Bloomberg.

9   Apparently our keyword search yielded only two documents and we

10  now have those and we have two email boxes of the plaintiff

11  which the defendant provided as well on this past Monday.  You

12  know, if this is all the production is, you know, I think we'll

13  be in a position to go through those email boxes.

14          I had expressed to Bloomberg that I'm out of the

15  office for most of August, returning at the very beginning of

16  September and had proposed that we have a discovery cutoff of

17  the end of September so that we can do the discovery during the

18  month of -- do the depositions, excuse me, during the month of

19  September.

20          We don't have a full witness list from Bloomberg and

21  I would like to have clarity on who its witnesses are with

22  respect to the issues in the case so we can take the

23  appropriate depositions and know that we have the right people

24  as well.  So you know, my proposal would be that we get a list

25  of witnesses and that we schedule those depositions for

19

1    September and we should be ready to go.

2            I think there are a couple of issues that have not

3    been discussed with respect to how trial is going to take place

4    in the case, whether the trial is going to be bifurcated on the

5    issue of damages and such.  And neither Judge Daniels nor the

6    parties have really weighed in on that at this point.

7            THE COURT:  I take it there's no opposition to the

8    application, Mr. Golden?

9            MR. GOLDEN:  No, there's not.  Mr. Getman may be

10   confused about some of the facts regarding what we've produced

11   but fundamentally if Mr. Getman wants till the end of September

12   and Your Honor is okay with that, we don't have any problem

13   with it.

14           THE COURT:  No, you folks have been getting along and

15   that counts for a lot.  So I also have no problem.  I'm still

16   trying to get my arms around an ESI keyword search that only

17   yields two documents.  But putting that to the side --

18           MR. GOLDEN:  Your Honor, that's one of the things I

19   alluded to.

20           THE COURT:  I saw that.

21           MR. GOLDEN:  It was something like 3,000 documents.

22   So I'm not sure why Mr. Getman thinks there was only two, but

23   perhaps we need to make sure that we've got a complete

24   production.

25           THE COURT:  Well, it gives you more to talk about if

20

1  nothing else.

2          And there's no expert discovery in this case?

3          MR. GETMAN:  There has not been.  We don't anticipate

4  using an expert.

5          THE COURT:  Okay.

6          MR. GETMAN:  And Bloomberg hasn't identified anyone.

7          THE COURT:  Okay.  So the end of September as a

8  discovery cutoff is fine.  Do we have any further conferences

9  scheduled?

10         MR. GOLDEN:  I don't believe so, Your Honor.

11         THE COURT:  Then at the end of this call we'll put

12 you on hold and find a date in early October for a further

13 telephone conference call.  Have there been any settlement

14 discussions?

15         MR. GETMAN:  Your Honor may recall that we actually

16 had a stay for a discussion of settlement and a mediation was

17 proposed and I believe was scheduled but we served our damage

18 calculations.  Bloomberg indicated that they weren't interested

19 in I guess making a further proposal and the discovery stay was

20 then lifted at that time.  So there's been no further

21 discussion since that time and that's where we are.

22         MR. GOLDEN:  Right, Your Honor.  Mr. Getman made a

23 settlement demand, we countered, and the parties both recognize

24 that at the moment we're just too far apart.  And I think after

25 the depositions perhaps we can revisit that when both sides

21

1   have a better sense for the record.

2           THE COURT:  That's fine.  And we'll talk about that

3   in October when we next have a conference.

4           If there's nothing further, we'll put you on hold and

5   my law clerk will give you a date for a further phone

6   conference.

7           MR. GOLDEN:  Thank you, Judge.

8           THE COURT:  Thank you both for all of --

9           MR. GETMAN:  Thank you, Your Honor.

10          THE COURT:  Thank you.  Take care.

11                          * * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1     I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                   _____

6                          Mary Greco

7  Dated:   August 1, 2014

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25