UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/20/15
```

-----------------------------------------------------------x

PETER ENEA, et al.,                    :

                Plaintiffs,     :

      -against-                      :

BLOOMBERG L.P.,                        :

              Defendant.     :

-----------------------------------------------------------x

**MEMORANDUM
DECISION AND ORDER**

12cv4656-GBD-FM

**FRANK MAAS,** United States Magistrate Judge.

        This collective and class action is brought by current and former Global Technical Support Representatives ("GTECs") employed by Bloomberg L.P. ("Bloomberg"). The Plaintiffs allege that Bloomberg failed to pay statutorily required overtime in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

        The Plaintiffs have moved to compel Bloomberg to provide discovery concerning matters that Bloomberg asserts are protected by the attorney-client privilege and work-product doctrine. For the reasons stated below, that motion (ECF No. 97) is granted in part and denied in part.

I.      Background

        A.      Relevant Facts[1]

                In June 2008, Matthew Asman ("Asman") began working for Bloomberg as

the company's in-house employment counsel.  (Asman Decl. ¶ 1).  At that time, with the

exception of certain interns, Bloomberg treated its entire workforce as exempt from

FLSA overtime requirements.  (Def.'s Ex. G (Dep. of Matthew Asman, Esq. ("Asman

Tr.")) at 33, 91).  In July 2010, the United States Department of Labor ("DOL")

commenced an investigation into Bloomberg's compliance with the FLSA.  (See Def.'s

Ex. K).  Asman oversaw Bloomberg's response to the investigation working with outside

counsel from Willkie Farr & Gallagher LLP ("Willkie"), including partner Thomas

Golden ("Golden").  (Asman Decl. ¶ 4; Pls.' Ex. 2 (Dep. of Thomas Golden, Esq., dated

October 21, 2014 ("Golden Tr.")) at 11, 22).  Between October 2010 and February 2011,

Bloomberg furnished the DOL with job descriptions for more than 400 positions within

the company, as well as the company's bases for asserting that the positions were exempt

from the FLSA's overtime requirements.  (Asman Tr. 90-91; Golden Tr. 97-100, 106-07).

Willkie attorneys drafted these job descriptions.  (Asman Tr. at 118-20; Golden Tr. at

_____

        [1]      The facts set forth in this Memorandum Decision and Order are based upon the
exhibits ("Pls.' Ex.") annexed to Plaintiffs' Memorandum in Support of Motion to Compel (ECF
No. 102) ("Pls.' Mem."); the exhibits ("Def.'s Ex.") annexed to the Declaration of Deirdre N.
Hykal in Opposition to Plaintiffs' Motion to Compel (ECF No. 105) ("Hykal Decl."); the
Declaration of Matthew Asman in Opposition to Plaintiffs' Motion to Compel (ECF No. 106)
("Asman Decl."), and the Plaintiffs' Reply in Support of Motion to Compel (ECF No. 103)
("Pls.' Reply").  See also Complaint (ECF No. 1) ("Compl."); Memorandum Decision and Order
dated March 17, 2014 (ECF No. 69) ("Class Cert. Decision"); Defendant's Memorandum of Law
in Opposition to Plaintiffs' Motion to Compel (ECF No. 104) ("Def.'s Mem.").

106-07).  The Plaintiffs contend that the job descriptions included a "characterization of the GTEC position which Willkie [] tailored to . . . match[] the FLSA administrative exemption," and which was "significantly altered" from Bloomberg's own GTEC job description used internally and for hiring purposes.  (Pls.' Mem. at 6; see also Pls.' Exs. 15, 18).

In August 2011, the DOL concluded that at least six Bloomberg positions were not exempt from the FLSA's overtime requirement.  (Asman Tr. 91-92, 138-39).  As a result, the DOL requested that Bloomberg conduct a "self-audit" of the entire company to determine whether other jobs also were improperly classified.  (Id. at 137-138, 142). Following that review, in October 2011, Bloomberg provided the DOL with a list of thirty positions that the company indicated it would consider reclassifying as non-exempt as part of a comprehensive settlement with the DOL.  (Id. at 145, 148; Pls.' Ex. 17).  The GTEC position was not on that list.  Thereafter, during a November 2011 telephone call, the DOL's investigator allegedly told Golden that Bloomberg's self-audit results "looked 'right on the money.'"  (Golden Tr. at 124).  Golden subsequently related to Asman what the DOL investigator had said.  Based on the investigator's statement, Asman inferred that the DOL "didn't think . . . other positions needed reclassifying" as non-exempt and, therefore, that the DOL agreed with Bloomberg's classification of the GTEC position as exempt.  (Golden Tr. 126; Asman Tr. 93, 160, 163, 184).  Ultimately, Bloomberg reclassified as non-exempt only the thirty positions it previously had identified.  (Asman Tr. 93-94, 163-64).

3

B.    <u>Procedural History</u>

On June 14, 2012, the Plaintiffs initiated this action.  They allege in their Complaint that Bloomberg violated the wage and hour laws by failing to pay overtime to the GTEC Representatives.  (<u>See</u> Compl. ¶¶ 1-2, 14-15, 28-47).  On July 9, 2012, in its Answer, Bloomberg asserted a number of affirmative defenses, including the statute of limitations, its alleged good faith, and its alleged lack of willfulness.  (<u>See</u> Def.'s Answer (ECF No. 5) ("Def.'s Ans.") at 7-9).  Thereafter, Judge Daniels referred the case to me for general pretrial supervision and to resolve an unrelated dispute concerning the proper scope of discovery.  (ECF No. 40).

In July 2014, the Plaintiffs moved to compel the production of documents withheld by Bloomberg on the basis of attorney-client privilege.  The Plaintiffs contended that Bloomberg had waived the privilege by invoking good faith and lack of willfulness as defenses.  (ECF Nos. 80, 84).  The Plaintiffs further asserted that Bloomberg could not allege "that it subjectively believed its conduct was lawful and simultaneously claim privilege to block the discovery of what it knew and understood about its wage and hour obligations through communications with its counsel."  (ECF Nos. 80 at 5, 84 at 3).  In its response, Bloomberg maintained that it could not have waived privilege because it was "not relying in any way on the advice of counsel as the basis of its good faith defense," but, rather, had "articulated a compelling, non-privileged basis for its . . . defense," <u>i.e.,</u> the DOL's decision not to challenge Bloomberg's classification of the GTEC position as exempt.  (ECF No. 85 at 1-2).

4

During a telephone conference on July 30, 2014, I denied the Plaintiffs'

motion, relying, in part, on Brackett v. St. Louis Board of Police Commissioners, 12-CV-

898-JAR, 2014 WL 3451197, at *2 (E.D. Mo. July 15, 2014).  As in that case, I found

that the distinction "between a good faith defense and a potential advice of counsel

defense creates a thin line that the party seeking to put forward the privilege through

testimony may cross," but that Bloomberg had yet to cross that line.  (Def.'s Ex. E (Tr. of

telephone conference on July 30, 2014 ("7/30 Tr.")) at 8).  I also directed Bloomberg to

furnish the Plaintiffs with a privilege log identifying all of the documents it had withheld

on the basis of attorney-client privilege and the work-product rule.  (ECF Nos. 87, 91).

On October 21, 2014, during a pretrial conference before Judge Daniels, the

Plaintiffs' counsel noted that I previously had suggested that a more complete record

might reveal that Bloomberg's assertion of a good faith defense was inconsistent with its

continued reliance on the attorney-client privilege.  Judge Daniels intimated, however,

that this would apply only if Bloomberg "had contrary advice or if there's a possibility

they had contrary advice."  (ECF No. 93 (Tr. of Pretrial Conference on October 21, 2014

("10/21 Tr.")) at 5-6, 8).

During a telephone conference on October 28, 2014, the Plaintiffs asked me

to revisit the question of privilege waiver because subsequent discovery and Bloomberg's

privilege log allegedly had provided a more complete record upon which to rule.  Since

my original ruling was based only on letter briefing, I directed the parties to file formal

papers.  (See ECF No. 92).  Thereafter, on November 21, 2014, the Plaintiffs filed their

motion to compel.  (ECF No. 97).  On December 15, 2014, Bloomberg filed its opposition

papers (ECF Nos. 104-106), and on January 5, 2015, Plaintiffs filed their reply (ECF No.

103).  The motion consequently is fully submitted.

   In their renewed application, the Plaintiffs seek three categories of

discovery:  (1) "[a]ll relevant documents and information concerning what steps

Bloomberg took to ascertain its legal obligations, what it learned about its obligations

under the FLSA and [NYLL,] . . . and what steps it took to comply with what it learned;"

(2) unredacted versions of "[a]ll documents concerning the DOL investigation;" and (3)

"answer[s to] deposition questions in areas that [Bloomberg] refused to answer on the

basis of privilege."  (Pl.'s Mem. at 25).

II. Legal Standards

  A. Liquidated Damages and Good Faith

   "Under the FLSA, a district court is generally required to award a plaintiff

liquidated damages equal in amount to actual damages" for violations of the FLSA's

overtime provisions.  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d

Cir. 2008) (citing 29 U.S.C. § 216(b)).  Pursuant to 29 U.S.C. § 260, an employer who is

liable for an FLSA overtime violation nonetheless may avoid paying liquidated damages

"where the employer shows that, despite its failure to pay appropriate wages, it acted in

subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or

omissions did not violate the FLSA."  Id. at 150 (quoting 29 U.S.C. § 260) ("Section 260

Defense").  "To establish good faith, the employer must take active steps to ascertain the

6

dictates of the FLSA and then act to comply with them." <u>Herman v. RSR Sec. Services Ltd.</u>, 172 F.3d 132, 142 (2d Cir. 1999) (citing <u>Reich v. S. New Engl. Telecomms. Corp.</u>, 121 F.3d 58, 71 (2d Cir. 1997)). Good faith similarly relieves an employer from paying liquidated damages for violations of the NYLL. <u>See</u> <u>Inclan v. New York Hospitality Grp., Inc.</u>, No. 12 Civ. 4498 (NRB), 2015 WL 1399599, at *11 (S.D.N.Y. Mar. 26, 2015) (collecting cases).

      B.    <u>Reliance on DOL and Good Faith</u>

      The FLSA also permits an employer to avoid liability for failure to pay overtime "if [it] pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the Administrator of the Wage and Hour Division of the Department of Labor. 29 U.S.C. § 259 ("Section 259 Defense"). A Section 259 Defense "requires the employer to establish three interrelated elements: (1) that its action was taken in reliance on a ruling of the Administrator, (2) that it was in conformity with that ruling, and (3) that it was in good faith." <u>Equal Employment Opportunity Comm'n v. Home Ins. Co.</u>, 672 F.2d 252, 263 (2d Cir. 1982). As with a Section 260 Defense, good faith in this context requires that an employer "have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15(a).

7

C.      Statute of Limitations and Willfulness

Under the FLSA, the general statute of limitations for minimum wage and overtime violations is two years.  29 U.S.C. § 255(a).  If an employee proves that the employer's violation was willful, however, the limitations period is increased to three years.  Id.; Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).  To establish a willful violation, the employee must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).

D.      Attorney-Client Privilege

The attorney-client privilege applies to "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011).  "The privilege protects not only the advice of the attorney to the client, but also the information communicated by the client that provides a basis for giving advice."  United States v. Ghavami, 882 F. Supp. 2d 532, 536 (S.D.N.Y. 2012).

The purpose of the privilege is to "encourage clients to make full disclosure to their attorneys" in order to ensure the quality of subsequent legal advice.  Fisher v. United States, 425 U.S. 391, 403 (1976).  By shielding attorney-client communications against disclosure, however, the privilege often forecloses parties from obtaining relevant evidence that would otherwise be discoverable.  For that reason, the privilege is construed

8

"narrowly," and applied "only where necessary to achieve its purpose."  In re County of Erie ("Erie I"), 473 F.3d 413, 418 (2d Cir. 2007) (internal quotation marks omitted). Furthermore, the "burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it."  United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).

The attorney-client privilege can, of course, be waived through the disclosure of confidential communications to third parties.  In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973).  A party also may be held to have waived the privilege impliedly "when a client testifies concerning portions of the attorney-client communication, . . . places the attorney-client relationship directly at issue, [or] . . . asserts reliance on an attorney's advice as an element of a claim or defense."  In re County of Erie ("Erie II"), 546 F.3d 222, 228 (2d Cir. 2008) (quoting Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)).  In such circumstances, Rule 502(a) of the Federal Rules of Evidence requires disclosure if the proponent of the privilege intentionally disclosed the privileged information, the disclosed and undisclosed communications concern "the same subject matter," and both "ought in fairness . . . be considered together."  As the Second Circuit has explained, fairness is thus a principal consideration in determining whether a party has effected a waiver.  Erie II, 546 F.3d at 229.

The concept of fairness has led courts in this Circuit to conclude that a party that "pleads that it 'thought [its] actions were legal,' [] puts its own 'knowledge of the law

and the basis for . . . [its] understanding of what the law required in issue,' including 'conversations with counsel.'"  Scott v. Chipotle Mexican Grill, Inc., 67 F. Supp. 3d 607, 610 (S.D.N.Y. 2014) (quoting United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)) (alterations in original).  For that reason, "the assertion of a good-faith defense[, which] involves an inquiry into state of mind, . . . typically calls forth the possibility of implied waiver of the attorney-client privilege."  Erie II, 546 F.3d at 228-29.  When a defendant has received legal advice contrary to his assertion of a good faith belief or good faith defense, he consequently cannot "fairly both assert testimony that implicitly communicate[s] his version of the legal advice he received and simultaneously withhold disclosure of the legal advice he actually received."  John Doe Co. v. United States, 350 F.3d 299, 304 (2d Cir. 2003).  Moreover, a good faith defense can result in waiver "even without [the privilege proponent] invoking counsel's advice."  Scott, 67 F. Supp. 3d at 611 (quoting Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012)).  Thus, the mere "assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted."  John Doe Co., 350 F.3d at 302.  "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted."  In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000).

E.    <u>Work Product Doctrine</u>

The work product doctrine, originally articulated in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. That rule excludes from discovery "materials 'prepared in anticipation of litigation' by a party or the party's representative, absent a showing of substantial need." <u>United States v. Adlman</u> ("<u>Adlman I</u>"), 68 F.3d 1495, 1501 (2d Cir. 1995) (quoting Fed. R. Civ. P. 26(b)(3)). The protection afforded by the work product rule provides a "zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." <u>United States v. Adlman</u> ("<u>Adlman II</u>"), 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting <u>Hickman</u>, 329 U.S. at 511). To avail itself of that protection, a party must demonstrate that the material at issue is "(1) a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." <u>Gucci Am., Inc. v. Guess?, Inc.</u>, 271 F.R.D. 58, 73-74 (S.D.N.Y. 2010).

Materials "will be found to have been prepared 'in anticipation of litigation' if, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" <u>Clarke v. J.P. Morgan Chase & Co.</u>, No. 08 Civ. 2400 (CM) (DF), 2009 WL 970940, at *7 (S.D.N.Y. Apr. 10, 2009) (quoting <u>Adlman II</u>, 134 F.3d at 1202). A mere "possibility" of litigation, however, is insufficient to obtain work product protection. <u>Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP</u>, No. 03 Civ. 5560 (RMB)

(HBP), 2007 WL 473726, at *5 (S.D.N.Y. Feb. 14, 2007); Gould Inc. v. Mitsui Mining & Smelting Co., Ltd., 825 F.2d 676, 680 (2d Cir. 1987) (work product doctrine requires the "existence of a real, rather than speculative, concern").  To prevail, the non-producing party must show that the document was "prepared because of the prospect of litigation when the preparer face[d] an actual claim or potential claim following an actual event or series of events that reasonably could result in litigation."  Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A., 160 F.R.D. 437, 448-49 (S.D.N.Y. 1995).

        The work product rule is not absolute.  United States v. Nobles, 422 U.S. 225, 239 (1975); In re Initial Pub. Offering Sec. Litig., 249 F.R.D. 457, 459 (S.D.N.Y. 2008).  Consequently, even if a document qualifies as work product within the meaning of Rule 26(b)(3), a party may secure its disclosure by showing that it has a "substantial need" for the document and cannot obtain the "substantial equivalent" through other means without "undue hardship."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Rule 26 further distinguishes between "factual" work product – such as materials obtained through independent factual investigation – which requires the ordinary showing of "substantial need," and "opinion" work product – materials containing an attorney's mental impressions, conclusions, opinions, or legal theories – which receives special protection and is not discoverable absent a "highly persuasive" showing of need.  Adlman II, 134 F.3d at 1199, 1204.

III.    <u>Discussion</u>

        The Plaintiffs contend that Bloomberg's claims of privilege "as to every single document and every single conversation about what it learned about wage and hour laws" have stymied their ability to probe and impeach Bloomberg's assertion that the company acted in good faith and non-willfully.  (Pls.' Reply at 5-6).  In their view, fundamental fairness requires the disclosure of <u>all</u> materials as to which Bloomberg has asserted privilege.  Bloomberg counters that this issue has already been decided, and that the Plaintiffs' motion does little more than "improperly rehash a series of arguments that a good faith defense must result in a waiver."  (Def.'s Mem. at 1).

        If Bloomberg were relying on opinions rendered by its counsel as a basis for its good faith and lack of willfulness defenses, Rule 502(a) of the Federal Rules of Evidence would govern the scope of any further required disclosures.  Pursuant to that Rule, a partial intentional disclosure of attorney-client information waives the privilege for other undisclosed communications if "the disclosed and undisclosed communications or information concern the same subject matter" and "they ought in fairness to be considered together."  As the Advisory Committee Note explains, "a subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Rule 502(a) Advisory Committee's Note.  Thus, even when a disclosure of attorney-client privileged information is intentional, the scope of any subject matter waiver ordinarily is quite

13

"narrow."  Seyler v. T-Systems N.A., Inc., 771 F. Supp. 2d 284, 287-88 (S.D.N.Y. 2011).

Similar principles apply when a party expressly disclaims reliance on the advice of

counsel, but seeks to rely on other evidence of its good faith and lack of willfulness.

    Although Bloomberg asserts that the Plaintiffs are seeking to reopen an

issue that has definitively been decided against them, it is quite clear that my prior ruling

was tentative and subject to being revisited at a later date.  (See 7/30 Tr. at 8).  Since the

July 30 phone conference, as the Plaintiffs correctly observe, discovery has established

that there may be privileged or work product materials that call into question the

reasonableness of Bloomberg's reliance on the statement of a DOL investigator or the

outcome of her investigation as bases for its belief that it was proper to classify the GTEC

Representatives as exempt employees.  For example, during his deposition, Asman

testified that he conducted an internal review of Bloomberg's wage and hour practices in

2008, soon after he joined the company.  (Asman Tr. at 38, 44).  As part of that

undertaking, Asman reviewed a memo previously prepared by the law firm of Grotta,

Glassman & Hoffman, P.C., in 2006.  (Id. at 47).  Notably, that memorandum may have

been drafted in response to a wage and hour suit filed against Bloomberg in California,

which Bloomberg settled by making a payment to the plaintiff employee.  (Id. at 59-61;

Golden Tr. at 25, 31-32).[2]  As noted previously, the Plaintiffs also have established that

---

   [2]  Bloomberg notes that the California lawsuit "did not involve the GTEC position,
any 'call center' position, or claims under the FLSA or NYLL."  (Def.'s Mem. at 9).
Nonetheless, at the time that suit was filed, Bloomberg evidently took the position that all of its
employees other than interns were exempt from the laws relating to overtime compensation.

              (continued...)

the job descriptions furnished to the DOL were prepared by outside counsel and thus were not the ones that Bloomberg previously had employed for those job titles.  (Asman Tr. at 91, 117-19).  Given these recent revelations, it is appropriate to revisit my prior discovery ruling.

    Bloomberg has served (albeit in stages) a lengthy privilege log reflecting its FLSA-related communications, other than those that are contained in documents solely in the possession of its outside counsel.  Although the documents set forth in that log have not been reviewed in camera, they logically could fall into only one of two buckets: documents that are consistent with Bloomberg's affirmative defenses of good faith and lack of willfulness and documents that are inconsistent with those defenses.[3]  To the extent that the documents on Bloomberg's privilege log are consistent with its affirmative defenses, there is no reason to invade the company's attorney-client privilege or work product protection.  On the other hand, if Bloomberg is relying on an alleged finding by the DOL or its investigator that is contradicted by Bloomberg's own internal documents, a finder of fact is entitled to know about that discrepancy since it obviously would speak to Bloomberg's good faith.

---

[2](...continued)
(See Asman Tr. at 33).  Any review that addresses that policy is therefore potentially relevant.

  [3]  In contrast to its position regarding the California lawsuit, Bloomberg does not appear to be asserting that any of the documents on its privilege log are irrelevant to those affirmative defenses.  (See Def.'s Mem. at 8-9).

Bloomberg protests that any decision with respect to its affirmative defenses at this juncture would be premature because the company has yet to rely on the advice of counsel as a basis for its defenses.  (Def.'s Mem. at 13).  Such reliance, however, is not a necessary predicate to the disclosure of otherwise-protected information.  Indeed, in <u>Scott</u>, Magistrate Judge Netburn noted that an employer may not avoid the disclosure of otherwise undiscoverable documents through "artful pleading" of "only some of the necessary elements" of the statutory defense of good faith.  67 F. Supp. 3d at 614.  The defendant employer therefore was required to disclose its privileged documents despite its express disclaimer of any reliance on counsel as part of its affirmative defense of good faith.  <u>Id.</u> at 614-16; <u>see also</u> <u>Wang v. The Hearst Corp.</u>, No. 12 Civ. 793 (HB), 2012 WL 6621717, at *2 (noting that it is "difficult to imagine that a good faith defense regarding the FLSA raised by a [large] corporation . . . would not involve the advice of its legal department").

In <u>Scott</u>, Judge Netburn considered the disoverability of privileged documents, but was not asked to rule with respect to any documents for which work product protection was claimed.  <u>See</u> 67 F. Supp. 3d at 609.  In this case, however, Bloomberg not only relies on the work product doctrine, but asserts that all but one of the documents alleged to constitute work product reflect the "mental impressions, conclusions, opinions and legal theories" of Mr. Asman and hence are discoverable only upon a showing of "extraordinary" need.  (Def.'s Mem. at 24-25).  While this arguably may up the ante somewhat, whether the requisite showing can be made cannot be decided

in the abstract.  Rather, the Court will need to consider both Bloomberg's work product documents and the remaining documents on its privilege log to determine the Plaintiffs' entitlement to the production of work product documents.

Accordingly, unless Bloomberg withdraws its defenses of good faith and lack of willfulness, it will be required to turn over to the Court by September 5, 2015, for in camera review, any previously unproduced documents in its possession, custody, or control that concern the classification of its employees as exempt under the FLSA or NYLL.  Also, because Bloomberg's privilege logs do not have any Bates or other identification numbers, Bloomberg will be required to assign each document or email thread a unique identifier and reflect that identifier on a revised privilege log before submitting the documents to the Court.  Although the Plaintiffs ask that the look-back period for the review include numerous years prior to the limitations period, I previously limited an interrogatory regarding the persons who advised Bloomberg about wage and hour issues to the seven years before this suit was filed.  Accordingly, I will impose that same start date for purposes of the documents to be produced in camera.  In addition, Bloomberg will not be required to produce any documents created after this lawsuit was filed.

Once I have had an opportunity to review Bloomberg's in camera production, the Plaintiffs will be permitted to reopen deposition discovery to ask any further questions reasonably suggested by any documents that Bloomberg is directed to

produce.  How much time, if any, will be allotted for that purpose is something that can

be determined only once the <u>in camera</u> review is complete.

IV.   <u>Conclusion</u>

   For the reasons set forth above, the Plaintiffs' motion to compel, (ECF

No. 97), is granted in part and denied in part.  Unless Bloomberg withdraws its defenses

of good faith and lack of willfulness, it shall submit its revised privilege log and the

documents identified therein to the Court by September 5, 2015, for <u>in camera</u> review.

   SO ORDERED.

Dated:  New York, New York
    August 20, 2015

                 _____
                 FRANK MAAS
           United States Magistrate Judge

Copies to all counsel via ECF

18